**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART and MICHAEL DOYLE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 14-cv-10457<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs Heather Wright, Carole Stewart and Michael Doyle ("Plaintiffs") bring this class action complaint against Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar") to stop Defendant's practice of making unsolicited debt collection and other phone calls to the cellular and landline telephones of consumers nationwide without consent and with the use of an automatic telephone dialing system and/or pre-recorded voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for all persons injured by Defendant's conduct.

Plaintiffs, for their class action complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and upon information and belief, including investigation conducted by their attorneys, as to all other matters.

**NATURE OF THE ACTION**

1. Defendant Nationstar is a mortgage lender and servicer.

2. On an ongoing basis, Defendant repeatedly makes unsolicited telephone calls to Plaintiffs' and the other putative Class members' cellular and landline telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

3. By making the telephone calls at issue in this Complaint, Defendant has caused Plaintiffs and the members of the Classes (as defined herein) actual harm.

4. Defendant routinely makes these telephone calls despite the fact that neither Plaintiffs nor the other members of the putative Class have ever provided their:

> (i) consent to be called on the specific telephone numbers that Defendant actually called; and/or
>
> (ii) consent to be called with an automatic telephone dialing system or a pre-recorded voice.

5. In response to Defendant's unlawful conduct, Plaintiffs bring the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the four Classes (defined below) under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6. Plaintiff Heather Wright is a natural person and citizen of the State of Illinois.

7. Plaintiff Carole Stewart is a natural person and citizen of the State of Illinois.

8. Plaintiff Michael Doyle is a natural person and citizen of the State of New Jersey.

9. Defendant Nationstar is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 350 Highland Drive, Lewisville, Texas 75067. Defendant Nationstar is also registered to do business with the

Illinois Secretary of State. Nationstar does business throughout the United States, the State of Illinois, and in this District.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute designed to protect consumers' privacy with respect to their cellular and residential landline telephone numbers and accounts.

11. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant has repeatedly engaged in the wrongful conduct described herein in this District. Additionally, venue is proper in this District because Plaintiffs Stewart and Wright are citizens of the State of Illinois and received illegal telephone calls made by Defendant in the State of Illinois and in this District.

12. In addition, Defendant also transacts significant amounts of business within this District, directs telephone calls here, solicits customers here, and enters into consumer and business contracts here.

## COMMON FACTUAL ALLEGATIONS

**The Telephone Consumer Protection Act**

13. The Telephone Consumer Protection Act was passed by the United States Congress in 1991 and is codified as 47 U.S.C. § 227. The TCPA limits the use of automatic telephone dialing systems, artificial or pre-recorded voice messages, SMS text messages, and faxes.

14. Specifically, with respect to calls made to cellular telephones, the TCPA prohibits the use of any automated telephone dialing system or any artificial or prerecorded voice unless the recipient expressly consents to the receipt of such calls on his/her/its cellular telephone.

15. With respect to calls made to residential telephones, the TCPA prohibits the use of any artificial or prerecorded voice to deliver a message unless the recipient expressly consents to the receipt of such calls on his/her residential telephone.

16. According to the Federal Communications Commission—the agency tasked with promulgating the implementing regulations of the TCPA—to be considered "*express consent*," such consent must: (i) be in writing; (ii) be signed by the person providing the consent; (iii) specify the telephone number to which the person is consenting to be called; and (iv) clearly authorize the calling party to use an automated dialing system or prerecorded voice. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket No. 02-278 (Feb. 15, 2012) ¶ 33, Appendix A, at 34.

**Nationstar Has Repeatedly, Knowingly and Willfully Violated The TCPA by Placing Telephone Calls Using an Automated Telephone Dialing System and with an Artificial and/or Prerecorded Voice Without Obtaining Class Members' Express Consent To Do So.**

17. Nationstar is a "non-bank residential mortgage servicer" that provides "a range of services across the residential mortgage product spectrum." In general, a mortgage servicer is a third-party that is hired by an investor or owner of a loan to perform the mortgage servicing function with respect to a loan or group of loans (called a portfolio). Mortgage servicers send out bills, collect payments, allocate the monies collected in accordance with the servicing agreement, calculate escrow, and, in certain circumstances, engage in loss mitigation efforts and foreclosure and foreclosure alternatives.

18. Defendant placed and continues to place repeated telephone calls to consumers who never provided Defendant (or any third party associated with their respective mortgages) with consent to call such numbers.

19. Defendant's calls are made for the purpose of collecting alleged debts, to purportedly "remind" consumers to pay their mortgages, and for potentially other, non-debt collection reasons.

20. Defendant's calls often come on a daily basis and often, multiple times per day.

21. In making the calls at issue in this Complaint, Defendant, and/or its agents utilize an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, en masse, in an automated fashion without human intervention. The automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers or recordings and disconnecting the rest of the calls (or placing them on hold). Accordingly, consumers receiving calls from Defendant and/or its agents are frequently confronted with dead air or the sound of the call being disconnected (otherwise known as an "abandoned call").

22. Defendant admits that it has been using predictive dialing technology since at least as early as 2012. In Defendant's Form S-1 dated February 24, 2012, Defendant states "[i]n the account resolution group, we use a combination of predictive dialer technology and account level assignments to contact the borrowers." Form S-1 dated February 24, 2012 at 125.

5

23. Defendant's particular automated telephone dialing system is known as the "Avaya Proactive Contact" system. According to Avaya Inc., the "Avaya Proactive Contact" system is a "predictive dialing system" that uses "the most advanced dialing algorithms available to optimize your outbound communication campaigns." In particular, the "Avaya Proactive Contact" system enables Nationstar to "set up campaigns and manage multiple dialers across [its] organization…[and to] define and manage various outbound campaigns for marketing, sales and accounts payable all from a single system."

24. According to Avaya Inc., the "Avaya Proactive Contact" system is built with several features that enable Nationstar to "comply with even the most restrictive regulations." Despite having this capability, however, Defendant does not utilize the compliance functionality of its "Avaya Proactive Contact" system to ensure that the company is "adhering to strict regulatory compliance." Instead, Defendant routinely violates the TCPA by using its "Avaya Proactive Contact" system to call the telephones of Class members without having obtained their express consent to do so.

25. Evidence of the fact that Defendant repeatedly violated the TCPA by utilizing its "Avaya Proactive Contact" automated telephone dialing system to call Class members' telephones without having obtained express consent to do so is maintained in Defendant's records. For example, Defendant's records identify the exact date and time of each and every call made by Nationstar and whether the call was made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system. The specific calls that were made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system are identified within Defendant's records by the labels "**AVAYA**," "**PRE RECORDED DIALER MESSAGE**," "**PRDM**," "**CALL**

6

**ANSWERED NO POSITIVE VOICE ID DETECTED**," or "**CALL DROPPED FROM DIALER HOLD, NO AGENT AVAIL**."

26. Defendant's calls to cellular and residential landline phones also feature artificial or pre-recorded messages instead of live operators.

27. Making Defendant's calls all the more problematic, the pre-recorded messages do not provide Class members with an option to stop the calls. To speak with a live operator and request that the calls stop, a consumer must provide personally identifying information such as a social security number.

28. This barrier is particularly problematic because Defendant places unwanted telephone calls to consumers who do not have a mortgage with or serviced by Defendant.

29. Even when consumers are called and connected to a live operator—and even when they make explicit requests to Defendant to stop receiving telephone calls from Defendant—the calls continue in direct contradiction to those requests.

30. Defendant was and is aware that the above described telephone calls were and are being made to consumers without their prior express consent to receive them.

**Class Members Express Their Outrage Over Defendant's Illegal Telephone Calls**

31. Class members have voiced their outrage over Defendant's repeated violations of the TCPA. A sampling of such complaints is provided below:

    a. "I mailed a pmt. to Nationstar immediately, but I have been getting daily robo calls harassing me. I have never been late on any payments in more than 40 years";

    b. "Since my loan was sold to Nationstar, I received daily (or more) Robo Calls to my cell. As with others, no response when I answered. Tried customer service but gave up after a long wait. Sent email from their website, no response. Finally logged

FCC & BBB complaints";

    c.    "I am getting daily robo calls on my cell phone since my mortgage was sold to them. I tried calling their customer service, but can't find a way to speak to anyone! Will never voluntarily do business with this company. I logged a complaint with BBB";

    d.    "NationStar Mortgage Company… They robo call multiple times day and night. It doesn't matter that you make your monthly mortgage payments.";

    e.    "NationStar will ROBO CALL customers on the 4th or 5th of every month, even with customers that have never been late!!!
This is a very UNPROFESSIONAL company… Having never missed a payment since they purchased my loan from Bank of America, they execute ROBO CALLING starting on the 4th of every month makes them a very sub par company. I CANNOT wait for my Re-finance process to complete (with a different lender of course) so I can move onto a different servicer. They ARE THE WORST.";

    f.    "This company is horrible. They recently assumed my mortgage from a real bank. The mortgage has never been late, not even a day. It has come out electronically for years on the same day, right on time, never bouncing, never rejected, etc. Yet Nationstar subjected me to a barrage of personal and electronic robo calls."

32.    Complaints regarding Defendant's conduct have not been limited to Internet postings. In fact, Defendant has been sued multiple times in various jurisdictions in individual actions for violating the TCPA by routinely placing calls with an automated telephone dialing system or prerecorded voice to Class members' phones without express consent to do so.

33. The fact that Defendant has been sued numerous times in individual actions based on the fact that Defendant has routinely placed calls with an automated telephone dialing system or prerecorded voice to cellular and residential phones without express consent to do so very clearly demonstrates that Defendant's continued violation of the TCPA is knowing and willful.

**FACTS SPECIFIC TO PLAINTIFF WRIGHT**

34. Plaintiff Wright's mortgage is presently serviced by Defendant Nationstar.

35. Since at least February 2014, Defendant has placed numerous telephone calls to Plaintiff Wright's cellular phone without having obtained her express consent to do so.

36. Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Wright to pay her mortgage, even though Plaintiff Wright was still within the grace period for such payments.

37. Plaintiff Wright did not consent to receiving these telephone calls on her cellular phone. Furthermore, Plaintiff Wright expressly revoked any purported consent to call her cellular phone that may have been given.

38. Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Wright's cellular telephone number without her prior express consent to receive them.

39. The last four digits of Plaintiff Wright's cellular telephone number are 1612.

**FACTS SPECIFIC TO PLAINTIFF STEWART**

40. Plaintiff Stewart's mortgage is presently serviced by Defendant Nationstar.

41. Since at least October 2014, Defendant has placed numerous telephone calls to Plaintiff Stewart's cellular phone without having obtained her express consent to do so.

42. Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Stewart to pay her mortgage, even though Plaintiff Stewart was still within the grace period for such payments.

43. Plaintiff Stewart did not consent to receiving these telephone calls on her cellular phone.

44. Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Stewart cellular telephone number without her prior express consent to receive them.

45. The last four digits of Plaintiff Stewart's cellular telephone number are 3040.

## FACTS SPECIFIC TO PLAINTIFF DOYLE

46. Plaintiff Doyle's mortgage is presently serviced by Defendant Nationstar.

47. Since at least July 2014, Defendant has placed numerous telephone calls to Plaintiff's cellular phone without having obtained his express consent to do so.

48. Plaintiff Doyle has received daily telephone calls from the following telephone numbers on his cellular phone: (i) 877-698-9400; (ii) 888-850-9398; and (iii) 866-316-2432. These telephone numbers belongs to and connect directly to Defendant Nationstar.

49. For example, Plaintiff Doyle received telephone calls from one or more of the foregoing telephone numbers on his cellular phone on and at the following dates and times:

    a. September 22, 2014 at 2:39 p.m.;

    b. September 24, 2014 at 11:06 a.m.;

    c. September 25, 2014 at 4:32 p.m.;

    d. September 26, 2014 at 11:34 a.m.;

    e. September 28, 2014 at 6:33 p.m.;

10

   f. September 29, 2014 at 3:32 p.m.;

   g. October 3, 2014 at 6:46 p.m.;

   h. October 7, 2014 at 10:04 a.m.;

   i. October 7, 2014 at 4:55 p.m.;

   j. October 8, 2014 at 10:36 a.m.;

   k. October 9, 2014 at 10:07 a.m.;

   l. October 9, 2014 at 5:18 p.m.;

   m. October 13, 2014 at 4:17 p.m.; and

   n. October 13, 2014 at 8:41 p.m.

50. Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Doyle to pay his mortgage, even though Plaintiff Doyle was still within the grace period for such payments.

51. Plaintiff Doyle did not consent to receiving these telephone calls on his cellular phone.

52. Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Doyle's cellular telephone number without his prior express consent to receive them.

53. The last four digits of Plaintiff Doyle's cellular telephone number are 3493.

### CLASS ALLEGATIONS

54. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and the two Classes defined as follows:

> **Mortgage Class**: All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her cellular or residential landline telephone from February 21, 2010 to the present; (2) that was made utilizing an automatic telephone dialing system and / or by a prerecorded or artificial voice;

11

(3) which related to Defendant's products or services; (4) where Defendant does not have a record of consent to place telephone calls to his or her cellular telephone number; and (5) who had a mortgage loan serviced or owned by Nationstar when the call was made.

**Opt-Out Class:** All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her cellular or residential landline telephone from February 21, 2010 to the present; (2) that was made utilizing an automatic telephone dialing system and / or a prerecorded or artificial voice; (3) which related to Defendant's products or services; (4) and, following such calls, he or she made a request to Defendant that he or she no longer receive telephone calls from Defendant; and (5) thereafter Defendant placed additional telephone calls to his or her cellular telephone.

Excluded from the Classes are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated or otherwise released, (5) the legal representatives, successors, or assigns of any such excluded person, and (6) Plaintiffs' counsel and Defendant's counsel.

55. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to at least thousands of consumers who fall into the definitions of the Classes. Class members can be identified through Defendant's records.

56. **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs are members of the Classes and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

57. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to any of the Plaintiffs.

58. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes as they are the issues at the heart of each claim. Common questions for the Classes are subject to common proof and answerable for the entirety of the Classes within a single stroke include, but are not necessarily limited to, the following:

    a. whether Defendant's calls violated the TCPA;

    b. whether the equipment Defendant used to make telephone calls to members of the Classes was an automatic telephone dialing system or pre-recorded voice as contemplated by the TCPA;

    c. whether Defendant systematically made telephone calls to members of the Classes who did not previously provide Defendant with their prior express consent to receive such telephone calls;

    d. whether Defendant made its calls for emergency purposes; and

    e. whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

59. **Superiority & Manageability**: This case is also appropriate for class certification as class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable. The damages suffered by

the individual members of the Classes will likely be relatively small, especially given the burden and expense required for individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of Plaintiffs Wright, Stewart and Doyle and the Mortgage Class)

60. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

61. Defendant made, or directed to be made, unsolicited telephone calls to cellular and/or residential landline telephone numbers belonging to Plaintiffs and other members of the Mortgage Class without their prior express consent to receive such calls. Although members of the Mortgage had mortgages held or serviced by Nationstar at the time the calls were placed, such consumers had never provided Nationstar with consent to be called using either an ATDS or with a pre-recorded voice.

62. Defendant and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or

14

sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse and/or (2) using a prerecorded or artificial voice.

63. Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Mortgage Class simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

64. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiffs and the Mortgage Class members' cellular and/or residential landline telephones without their prior express consent, and by utilizing an ATDS or pre-recorded voice to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

65. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Mortgage Class have suffered invasions of privacy and actual damages, including in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

66. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Mortgage Class.

### COUNT II
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of Plaintiff Wright and the Opt-Out Class)

67. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

68. Defendant made, or directed to be made, unsolicited telephone calls to cellular or residential landline telephone numbers belonging to Plaintiffs and other members of the Opt-Out Class without their prior express consent to receive such calls.

69. Defendant and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse and/or (2) using a prerecorded or artificial voice.

70. Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Opt-Out Class simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

71. Plaintiff Wright and the members of the Opt-Out Class requested that Defendant cease calling them. However, the Defendant continued to call them following receipt of their requests that Defendant cease placing such calls. Further, Nationstar failed to implement adequate safeguards or internal controls designed to prevent or minimize its re-calling of consumers who have requested that the calls cease.

72. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiff Wright and Opt-Out Class members' cellular or residential landline telephones after the Plaintiffs and Opt-Out Class members revoked any consent or requested that Defendant cease placing such calls, by calling Plaintiff Wright and the Opt-Out Class members without their consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

73.     As a result of Defendant's unlawful conduct, Plaintiff Wright and the members of the Opt-Out Class suffered invasions of privacy and actual damages, including damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

74.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Opt-Out Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

1. An order certifying the Classes as defined above, appointing:

    a. Plaintiffs Carole Stewart, Heather Wright and Michael Doyle as representatives of the Mortgage Class; and

    b. Plaintiff Heather Wright as representative of the Opt-Out Class; and

    c. Their counsel as Class Counsel.

2. An award of actual and statutory damages;

3. Treble statutory damages for any willful or knowing conduct;

4. An injunction requiring Defendant to cease all unsolicited telephone calling activities and otherwise protecting the interests of the Classes;

5. An award of reasonable attorneys' fees and costs; and

6. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

**HEATHER WRIGHT, CAROLE STEWART and MICHAEL DOYLE**, individually and on behalf of classes of similarly situated individuals,

Dated: December 30, 2014

By: /s/ Benjamin H. Richman
     One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominic Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: 312.589.6380
Fax: 312.589.6378

Paul O. Paradis*
Gina M. Tufaro*
PARADIS LAW GROUP, PLLC
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tel: (212) 986-4500
Fax: (212) 986-4501

Jack Landskroner*  
Drew Legando*  
LANDSKRONER GRIECO MERRIMAN LLC  
1360 West 9th Street, Suite 200  
Cleveland, Ohio 44113  
T. (216) 522-9000  
F. (216) 522-9007  

Brant C. Martin*  
WICK PHILLIPS GOULD & MARTIN, LLP  
100 Throckmorton Street, Suite 500  
Fort Worth, Texas 76102  
Tel: (817) 332-7788  
Fax: (817) 332-7789  

Stefan Coleman*  
law@stefancoleman.com  
LAW OFFICES OF STEFAN COLEMAN, LLC  
201 S Biscayne Blvd, 28th Floor  
Miami, Florida 33131  
Tel: 877.333.9427  
Fax: 888.498.8946  

Michael P. Sousa*  
sousam@sbcglobal.net  
LAW OFFICES OF MICHAEL P. SOUSA, APC  
3232 Governor Dr., Suite A  
San Diego, CA 92122  
Tel: 858.453.6122, ext. 15  
Fax: 858.453.2155  

Matthew G. English*  
mgelaw@gmail.com  
LAW OFFICES OF MATTHEW G. ENGLISH  
941 Orange Ave. #344  
Coronado, CA 92118  
Tel: 619.944.8568  

Douglas J. Campion*  
doug@djcampion.com  
Law Offices of Douglas J. Campion, APC  
409 Camino Del Rio South, Ste 303  
San Diego, CA 92108  
Tel: (619) 299-2901  
Fax: (619) 858-0034  

*Pro hac vice admission to be sought