## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, MICHAEL DOYLE, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, ROGER REED, VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated, | Civil Action No. 1:14-cv-10457 |
| | **CLASS ACTION** |
| | JURY TRIAL DEMANDED |
| Plaintiffs, | Hon. Edmond E. Chang |
| v. | |
| NATIONSTAR MORTGAGE LLC, a Delaware limited liability company, | |
| Defendant. | |

## FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Heather Wright, Carole Stewart, Jeanette Childress, Michael Doyle, Robert Jordan, Sean Halbert, Dana Skelton, Roger Reed, Vanessa Ruggles and Rose Somers ("Plaintiffs") bring this class action complaint against Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar") to stop Defendant's practice of making unsolicited debt collection and other phone calls to the cellular and landline telephones of consumers nationwide without consent and with the use of an automatic telephone dialing system and/or pre-recorded voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for all persons injured by Defendant's conduct.

Plaintiffs, for their class action complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and upon information and belief, including investigation conducted by their attorneys, as to all other matters.

## NATURE OF THE ACTION

1. Defendant Nationstar is a mortgage lender and servicer.

2. On an ongoing basis, Defendant repeatedly makes unsolicited telephone calls to Plaintiffs' and the other putative Class members' cellular and landline telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

3. By making the telephone calls at issue in this Complaint, Defendant has caused Plaintiffs and the members of the Classes (as defined herein) actual harm.

4. Defendant routinely makes these telephone calls despite the fact that neither Plaintiffs nor the other members of the putative Class have ever provided their:

   (i) consent to be called on the specific telephone numbers that Defendant actually called; and/or

   (ii) consent to be called with an automatic telephone dialing system or a pre-recorded voice.

5. In response to Defendant's unlawful conduct, Plaintiffs bring the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the four Classes (defined below) under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6. Plaintiff Heather Wright is a natural person and citizen of the State of Illinois.

7. Plaintiff Carole Stewart is a natural person and citizen of the State of Illinois.

8. Jeanette Childress is a natural person and citizen of the State of Washington.

9. Plaintiff Michael Doyle is a natural person and citizen of the State of New Jersey.

10. Plaintiff Robert Jordan is a natural person and citizen of the State of California.

11.     Plaintiff Sean Halbert is a natural person and citizen of the State of California.

12.     Plaintiff Dana Skelton is a natural person and citizen of the State of California.

13.     Plaintiff Roger Reed is a natural person and citizen of the State of Illinois.

14.     Plaintiff Vanessa Ruggles is a natural person and citizen of the State of California.

15.     Plaintiff Rose Somers is a natural person and citizen of the State of Kentucky.

16.     Defendant Nationstar is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 350 Highland Drive, Lewisville, Texas 75067. Defendant Nationstar is also registered to do business with the Illinois Secretary of State. Nationstar does business throughout the United States, the State of Illinois, and in this District.

## JURISDICTION AND VENUE

17.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute designed to protect consumers' privacy with respect to their cellular and residential landline telephone numbers and accounts.

18.     The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant has repeatedly engaged in the wrongful conduct described herein in this District. Additionally, venue is proper in this District because Plaintiffs Wright, Stewart and Reed are citizens of the State of Illinois and received illegal telephone calls made by Defendant in the State of Illinois and in this District.

19.     In addition, Defendant also transacts significant amounts of business within this District, directs telephone calls here, solicits customers here, and enters into consumer and business contracts here.

## COMMON FACTUAL ALLEGATIONS

### The Telephone Consumer Protection Act

20. The Telephone Consumer Protection Act was passed by the United States Congress in 1991 and is codified as 47 U.S.C. § 227. The TCPA limits the use of automatic telephone dialing systems, artificial or pre-recorded voice messages, SMS text messages, and faxes.

21. Specifically, with respect to calls made to cellular telephones, the TCPA prohibits the use of any automated telephone dialing system or any artificial or prerecorded voice unless the recipient expressly consents to the receipt of such calls on his/her/its cellular telephone.

22. With respect to calls made to residential telephones, the TCPA prohibits the use of any artificial or prerecorded voice to deliver a message unless the recipient expressly consents to the receipt of such calls on his/her residential telephone.

23. According to the Federal Communications Commission—the agency tasked with promulgating the implementing regulations of the TCPA—to be considered "*express consent,*" such consent must: (i) be in writing; (ii) be signed by the person providing the consent; (iii) specify the telephone number to which the person is consenting to be called; and (iv) clearly authorize the calling party to use an automated dialing system or prerecorded voice. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Report and Order, CG Docket No. 02-278 (Feb. 15, 2012) ¶ 33, Appendix A, at 34.

### Nationstar Has Repeatedly, Knowingly and Willfully Violated The TCPA by Placing Telephone Calls Using an Automated Telephone Dialing System and with an Artificial and/or Prerecorded Voice Without Obtaining Class Members' Express Consent To Do So

24. Nationstar is a "non-bank residential mortgage servicer" that provides "a range of services across the residential mortgage product spectrum." In general, a mortgage servicer is a

third-party that is hired by an investor or owner of a loan to perform the mortgage servicing function with respect to a loan or group of loans (called a portfolio). Mortgage servicers send out bills, collect payments, allocate the monies collected in accordance with the servicing agreement, calculate escrow, and, in certain circumstances, engage in loss mitigation efforts and foreclosure and foreclosure alternatives.

25. Defendant placed and continues to place repeated telephone calls to consumers who never provided Defendant (or any third party associated with their respective mortgages) with consent to call such numbers.

26. Defendant's calls are made for the purpose of collecting alleged debts, to purportedly "remind" consumers to pay their mortgages, and for potentially other, non-debt collection reasons.

27. Defendant's calls often come on a daily basis and often, multiple times per day.

28. In making the calls at issue in this Complaint, Defendant, and/or its agents utilize an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, en masse, in an automated fashion without human intervention. The automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers or recordings and disconnecting the rest of the calls (or placing them on hold). Accordingly, consumers receiving calls from Defendant and/or its agents are frequently confronted with dead air or the sound of the call being disconnected (otherwise known as an "abandoned call").

29.     Defendant admits that it has been using predictive dialing technology since at least as early as 2012. In Defendant's Form S-1 dated February 24, 2012, Defendant states "[i]n the account resolution group, we use a combination of predictive dialer technology and account level assignments to contact the borrowers." Form S-1 dated February 24, 2012 at 125.

30.     Defendant's particular automated telephone dialing system is known as the "Avaya Proactive Contact" system. According to Avaya Inc., the "Avaya Proactive Contact" system is a "predictive dialing system" that uses "the most advanced dialing algorithms available to optimize your outbound communication campaigns." In particular, the "Avaya Proactive Contact" system enables Nationstar to "set up campaigns and manage multiple dialers across [its] organization…[and to] define and manage various outbound campaigns for marketing, sales and accounts payable all from a single system."

31.     According to Avaya Inc., the "Avaya Proactive Contact" system is built with several features that enable Nationstar to "comply with even the most restrictive regulations." Despite having this capability, however, Defendant does not utilize the compliance functionality of its "Avaya Proactive Contact" system to ensure that the company is "adhering to strict regulatory compliance." Instead, Defendant routinely violates the TCPA by using its "Avaya Proactive Contact" system to call the telephones of Class members without having obtained their express consent to do so.

32.     Defendant's records contain evidence of the fact that Defendant repeatedly violated the TCPA by utilizing its "Avaya Proactive Contact" automated telephone dialing system to call Class members' telephones without having obtained express consent to do so. For example, Defendant's records identify the exact date and time of each and every call made by Nationstar and whether the call was made by Nationstar's "Avaya Proactive Contact" automated

telephone dialing system. The specific calls that were made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system are identified within Defendant's records by the labels "**AVAYA**," "**PRE RECORDED DIALER MESSAGE**," "**PRDM**," "**CALL ANSWERED NO POSITIVE VOICE ID DETECTED**," or "**CALL DROPPED FROM DIALER HOLD, NO AGENT AVAIL**."

33. Defendant's calls to cellular and residential landline phones also feature artificial or pre-recorded messages instead of live operators.

34. Making Defendant's calls all the more problematic, the pre-recorded messages do not provide Class members with an option to stop the calls. To speak with a live operator and request that the calls stop, a consumer must provide personally identifying information such as a social security number.

35. This barrier is particularly problematic because Defendant places unwanted telephone calls to consumers who do not have a mortgage with or serviced by Defendant.

36. Even when consumers are called and connected to a live operator—and even when they make explicit requests to Defendant to stop receiving telephone calls from Defendant—the calls continue in direct contradiction to those requests.

37. Defendant was and is aware that the above described telephone calls were and are being made to consumers without their prior express consent to receive them.

**Class Members Express Their Outrage Over Defendant's Illegal Telephone Calls**

38. Class members have voiced their outrage over Defendant's repeated violations of the TCPA. A sampling of such complaints is provided below:

    a. "I mailed a pmt. to Nationstar immediately, but I have been getting daily robo calls harassing me. I have never been late on any payments in more than 40 years";

b.    "Since my loan was sold to Nationstar, I received daily (or more) Robo Calls to my cell. As with others, no response when I answered. Tried customer service but gave up after a long wait. Sent email from their website, no response. Finally logged FCC & BBB complaints";

c.    "I am getting daily robo calls on my cell phone since my mortgage was sold to them. I tried calling their customer service, but can't find a way to speak to anyone! Will never voluntarily do business with this company. I logged a complaint with BBB";

d.    "NationStar Mortgage Company... They robo call multiple times day and night. It doesn't matter that you make your monthly mortgage payments.";

e.    "NationStar will ROBO CALL customers on the 4th or 5th of every month, even with customers that have never been late!!!
This is a very UNPROFESSIONAL company... Having never missed a payment since they purchased my loan from Bank of America, they execute ROBO CALLING starting on the 4th of every month makes them a very sub par company. I CANNOT wait for my Re-finance process to complete (with a different lender of course) so I can move onto a different servicer. They ARE THE WORST.";

f.    "This company is horrible. They recently assumed my mortgage from a real bank. The mortgage has never been late, not even a day. It has come out electronically for years on the same day, right on time, never bouncing, never rejected, etc. Yet Nationstar subjected me to a barrage of personal and electronic robo calls."

39.    Complaints regarding Defendant's conduct have not been limited to Internet postings. In fact, Defendant has been sued multiple times in various jurisdictions in individual

actions for violating the TCPA by routinely placing calls with an automated telephone dialing system or prerecorded voice to Class members' phones without express consent to do so.

40.     The fact that Defendant has been sued numerous times in individual actions based on the fact that Defendant has routinely placed calls with an automated telephone dialing system or prerecorded voice to cellular and residential phones without express consent to do so very clearly demonstrates that Defendant's continued violation of the TCPA is knowing and willful.

## FACTS SPECIFIC TO PLAINTIFF WRIGHT

41.     Plaintiff Wright's mortgage is presently serviced by Defendant Nationstar.

42.     Since at least February 2014, Defendant has placed numerous telephone calls to Plaintiff Wright's cellular phone without having obtained her express consent to do so.

43.     Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Wright to pay her mortgage, even though Plaintiff Wright was still within the grace period for such payments.

44.     Plaintiff Wright did not consent to receiving these telephone calls on her cellular phone. Furthermore, Plaintiff Wright expressly revoked any purported consent to call her cellular phone that may have been given.

45.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Wright's cellular telephone number without her prior express consent to receive them.

46.     The last four digits of Plaintiff Wright's cellular telephone number are 1612.

## FACTS SPECIFIC TO PLAINTIFF STEWART

47.     Plaintiff Stewart's mortgage is presently serviced by Defendant Nationstar.

48.     Since at least October 2014, Defendant has placed numerous telephone calls to Plaintiff Stewart's cellular phone without having obtained her express consent to do so.

49.     Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Stewart to pay her mortgage, even though Plaintiff Stewart was still within the grace period for such payments.

50.     Plaintiff Stewart did not consent to receiving these telephone calls on her cellular phone.

51.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Stewart cellular telephone number without her prior express consent to receive them.

52.     The last four digits of Plaintiff Stewart's cellular telephone number are 3040.

## FACTS SPECIFIC TO PLAINTIFF CHILDRESS

53.     Plaintiff Childress' mortgage is presently serviced by Defendant Nationstar.

54.     Since at least July 19, 2012, Defendant has placed numerous telephone calls to Plaintiff Childress' cellular phone without having obtained her express consent to do so.

55.     Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Childress to pay her mortgage, even though Plaintiff Childress was still within the grace period for such payments.

56.     Plaintiff Childress did not consent to receiving these telephone calls on her cellular phone.

57.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Childress' cellular telephone number without her prior express consent to receive them.

58.     The last four digits of Plaintiff Childress' cellular telephone number are 5979.

## FACTS SPECIFIC TO PLAINTIFF DOYLE

59.     Plaintiff Doyle's mortgage is presently serviced by Defendant Nationstar.

60.     Since at least July 2014, Defendant has placed numerous telephone calls to Plaintiff's cellular phone without having obtained his express consent to do so.

61.     Plaintiff Doyle has received daily telephone calls from the following telephone numbers on his cellular phone: (i) 877-698-9400; (ii) 888-850-9398; and (iii) 866-316-2432. These telephone numbers belong to and connect directly to Defendant Nationstar.

62.     For example, Plaintiff Doyle received telephone calls from one or more of the foregoing telephone numbers on his cellular phone on and at the following dates and times:

      a.     September 22, 2014 at 2:39 p.m.;

      b.     September 24, 2014 at 11:06 a.m.;

      c.     September 25, 2014 at 4:32 p.m.;

      d.     September 26, 2014 at 11:34 a.m.;

      e.     September 28, 2014 at 6:33 p.m.;

      f.     September 29, 2014 at 3:32 p.m.;

      g.     October 3, 2014 at 6:46 p.m.;

      h.     October 7, 2014 at 10:04 a.m.;

      i.     October 7, 2014 at 4:55 p.m.;

      j.     October 8, 2014 at 10:36 a.m.;

k.     October 9, 2014 at 10:07 a.m.;

l.     October 9, 2014 at 5:18 p.m.;

m.     October 13, 2014 at 4:17 p.m.; and

n.     October 13, 2014 at 8:41 p.m.

63.     Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Doyle to pay his mortgage, even though Plaintiff Doyle was still within the grace period for such payments.

64.     Plaintiff Doyle did not consent to receiving these telephone calls on his cellular phone.

65.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Doyle's cellular telephone number without his prior express consent to receive them.

66.     The last four digits of Plaintiff Doyle's cellular telephone number are 3493.

## FACTS SPECIFIC TO PLAINTIFF JORDAN

67.     Plaintiff Jordan does not have a mortgage held by, serviced by, or in any other way associated with Defendant Nationstar. In fact, Plaintiff Jordan does not have any home loans at all.

68.     Nevertheless, Defendant has placed numerous calls to Plaintiff Jordan's telephone since at least July 2013, often weekly, from the phone number (888) 811-5279.

69.     The telephone number (888) 811-5279 belongs to and connects directly to Defendant Nationstar.

70.     The calls were placed to Jordan's VOIP number, with the last four digits ending in 5451.

71.     When Plaintiff Jordan answered these calls he heard an artificial or pre-recorded voice identifying the caller as Nationstar and requesting that he call Nationstar back. However, when Plaintiff Jordan called Nationstar back to stop the calls, he was greeted with another prerecorded message directing him to input his telephone number and Social Security number to identify his loan. Because Plaintiff Jordan does not have a loan with Defendant, he was unable to get past these requests. Additionally, pressing "0" only brought him back to the main menu. As such, despite Plaintiff Jordan's best efforts he could not stop the calls and they continued on a repeat basis.

72.     In a final effort to stop the calls, Plaintiff Jordan has put a block on his phone line for the number (888) 811-5279.

73.     Plaintiff Jordan did not consent to receive calls of any kind from Defendant.

74.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Jordan's telephone number without his prior express consent to receive them.

75.     It is unclear what the purpose of the Defendant's calls to Jordan was as Jordan neither has a mortgage with Nationstar nor owes any debt to Nationstar.

## FACTS SPECIFIC TO PLAINTIFFS HALBERT AND SKELTON

76.     Plaintiffs Halbert and Skelton are married. Their mortgage is presently held by Defendant Nationstar.

77.     Since their mortgage was transferred to Defendant from their prior servicer, Halbert and Skelton have always timely made their payments within the allotted grace period.

78.     Yet, shortly after the mortgage was transferred to Nationstar in March 2012, and having made no payments outside of Defendant's grace period, Plaintiffs Halbert and Skelton

each began receiving numerous phone calls on their cellular telephones aggressively

"reminding" them to make payments, even though the payments were not yet beyond the grace

period. Many of these calls featured an artificial or pre-recorded voice. The calls came from, at

the very least, the phone number (877) 698-9400. The telephone number (877) 698-9400 belongs

to Defendant Nationstar.

79.     If Plaintiffs Halbert and Skelton did not answer the calls, Defendant would leave a

voicemail, often with a pre-recorded voice, stating "This is Nationstar calling regarding your

account, it's urgent you contact us in the next 24 hours."

80.     Plaintiffs Halbert and Skelton placed a telephone call to Defendant in March 2012

and requested to be taken off the call list because their account was in good standing and they

always paid within the grace period. The customer service representative verified that Defendant

had received Plaintiffs Halbert's and Skelton's payment at the same day each month and that the

payments had not been late. The customer service representative ensured Halbert and Skelton

that they would not be called again.

81.     Despite the representative's assurances, in April 2012 the calls resumed.

82.     Because Defendant would not stop making calls, and because Plaintiffs Halbert

and Skelton found the calls to be a personal invasion of privacy and harassing, Plaintiff Skelton

submitted a formal complaint to the Better Business Bureau ("BBB") about the calls indicating,

"We would like the illegal collection calls to stop." The BBB forwarded the complaint to

Defendant Nationstar.

83.     Shortly thereafter, Plaintiffs received a letter from Defendant Nationstar

indicating that it had received the BBB complaint. Defendant's letter stated "We received

notification from the Better Business Bureau on April 11, 2012 regarding your request to cease

and desist collection calls on the above mentioned account. Please accept our apology if you have experienced any inconvenience in this matter. Your account has been coded to cease the collection calls."

84.    While the calls did cease for a time, Defendant yet again began making calls to both Plaintiff Halbert and Plaintiff Skelton approximately six months later.

85.    Plaintiff Halbert answered several of these post-opt-out calls that were again made with a pre-recorded voice and, after being connected to a live operator, explicitly requested that the calls to him and Plaintiff Skelton cease. This, however, again failed to stop the calls.

86.    Since that time, the calls have continued monthly up to and including the present.

87.    Neither Halbert nor Skelton ever provided their cellular phone numbers to Nationstar or otherwise consented to receive calls from Nationstar. Further, any putative consent was expressly revoked.

88.    Defendant was and is aware that it was making the relevant calls to Plaintiffs Halbert and Skelton without their prior express consent with the use of an ATDS and/or a pre-recorded voice.

89.    Plaintiff Halbert's cellphone ends in 9048, and Plaintiff Skelton's cell phone ends in 3225.

## FACTS SPECIFIC TO PLAINTIFF REED

90.    Plaintiff Reed's mortgage is presently serviced by Defendant Nationstar.

91.    Since at least February 28, 2014, Defendant has placed numerous telephone calls to Plaintiff Reed's cellular and residential phone without having obtained his express consent to do so.

92.     Plaintiff Reed has received daily telephone calls from telephone numbers on his cellular and residential phones that belong to and connect directly to Defendant Nationstar.

93.     For example, Plaintiff Reed received telephone calls from one or more of the foregoing telephone numbers on his or residential cellular phone on and at the following dates and times:

  a. February 28, 2014;

  b. March 18, 2014;

  c. March 20, 2014;

  d. April 9, 2014;

  e. April 10, 2014;

  f. April 11, 2014;

  g. April 12, 2014;

  h. April 14, 2014;

  i. April 30, 2014;

  j. May 16, 2014;

  k. May 17, 2014;

  l. May 20, 2014;

  m. May 26, 2014;

  n. May 30, 2014;

  o. June 18, 2014;

  p. June 21, 2014;

  q. June 27, 2014 around 5:00 p.m.;

  r. June 30, 2014 around 7:00 p.m.;

     s.    July 18, 2014 around 4:00 p.m.;

     t.    July 27, 2014 at 3:47 p.m.;

     u.    July 29, 2014 at 3:30 p.m.; and

     v.    July 30, 2014 at 4:35 p.m.

94.    Plaintiff Reed twice expressly requested that Nationstar cease making its harassing telephone calls to Plaintiff Reed's cellular and residential telephone lines.

95.    In particular, on March 7, 2014, Plaintiff Reed accessed his account information online by logging onto www.nationstarmtg.com and providing his security credentials which validate him as an authorized user. On doing so, Plaintiff Reed viewed a screen labeled "Contact Update" that he had never seen when he had previously accessed his account information online. On viewing this screen, Plaintiff noticed that both his cellular and home phone numbers had been pre-populated in the boxes that appeared on this web page. Plaintiff also noticed that there was another box next to his cellular telephone number which contained "check mark" in the box, which Plaintiff understood meant that Nationstar would use Plaintiff's cellular telephone as a primary means of contacting Plaintiff.

96.    Because Plaintiff had never consented or otherwise authorized Nationstar to contact Plaintiff by calling either his cellular telephone or residential telephone, Plaintiff was very disturbed on viewing this "Contact Update" screen. Similarly, Plaintiff never authorized Nationstar to populate this web page, or any other part of its website, with either Plaintiff's cellular or residential telephone numbers. Accordingly, Plaintiff removed both his cellular and residential telephone numbers from the "Contact Update" screen and also removed the "check mark" that appeared in the box next to Plaintiff's cellular telephone number and "saved" the

updated page to ensure that Nationstar was informed that Plaintiff had not, and would not, consent to being telephoned by Nationstar on either his cellular or residential telephones.

97.     Plaintiff Reed also expressly requested that Nationstar cease its harassing telephone calls to Plaintiff Reed's cellular and residential lines in a letter dated April 30, 2014. In this letter, Plaintiff Reed stated, ""*Do not call my home or cell again!  Like the other times I have written saying the same thing.  DO NOT CALL ME.  Roger Reed*." (Emphasis added).

98.     Despite these two requests, Nationstar repeatedly called Plaintiff Reed's cellular and residential lines.

99.     The last four digits of Plaintiff Reed's cellular telephone number is 4429 and the last four digits of Plaintiff Reed's residential telephone number is 9107.

## FACTS SPECIFIC TO PLAINTIFF RUGGLES

100.     Plaintiff Ruggles has had a cellular telephone since at least 2001. Plaintiff has had the same cellular telephone number for at least ten years. Plaintiff's current carrier is Sprint.

101.     In or about early November 2013, Plaintiff began receiving unsolicited telephone calls from Nationstar. Sometimes Plaintiff did not answer these calls, and other times she answered the phone. On some of the calls that Plaintiff answered, there was a period of silence before a live person spoke, which indicates that a machine had dialed her number and then waited for her to answer before bringing a representative on the line. For other calls, when Plaintiff Ruggles answered she heard a prerecorded or artificial voice identifying the caller as Nationstar

102.     Initially, Nationstar would ask for Ruggles by her name, Vanessa Ruggles. On other subsequent calls, however, Nationstar would ask to speak with Randall Fisher, a person unassociated with Ruggles whom Ruggles does not know.

103.    Like Plaintiff Jordan, Defendant called Ruggles repeatedly from phone number

(888) 811-5279. When Ruggles answered the phone, she repeatedly told Nationstar not to call

her again. Ruggles also called Defendant at (888) 811-5279 and requested that the calls stop.

During these discussions, a Nationstar employee or representative informed Ruggles that it

would take thirty days to process her request to stop the calls. Despite her repeated pleas,

Nationstar continued to call Plaintiff a total of approximately twenty-three (23) times between

November 2013 and December 4, 2013. During another one of the calls in or around November

2013, a Nationstar representative told Ruggles that Nationstar could keep calling because the

calls were courtesy calls, as opposed to solicitations.

104.    Plaintiff Ruggles is not a customer of Nationstar. Ruggles never provided her

cellular phone number to Nationstar. Ruggles does not have any business relationship with

Nationstar and never has.

105.    The last four digits of Plaintiff Ruggles' cellular telephone number are 5277.

### FACTS SPECIFIC TO PLAINTIFF SOMERS

106.    Plaintiff Somers' mortgage is presently serviced by Defendant Nationstar.

107.    Since at least December 2013, Defendant has placed numerous telephone calls to

Plaintiff Somers' residential phone without having obtained her express consent to do so.

108.    Plaintiff Somers has received these telephone calls from the telephone number

888-811-5279. This telephone number belongs to and connects directly to Defendant Nationstar.

109.    Each of these telephone calls was initiated with an ATDS and a pre-recorded

voice. Each of the telephone calls were made to "remind" Plaintiff Somers to pay her mortgage,

even though Plaintiff Somers was still within the grace period for such payments.

110.    For example, Plaintiff Somers received an astounding 16 telephone calls from Nationstar, all made with an ATDS and a pre-recorded voice, since December 27, 2014.

111.    Plaintiff Somers did not consent to receiving these telephone calls on her cellular phone.

112.    Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Somers' residential telephone number without her prior express consent to receive them.

113.    The last four digits of Plaintiff Somers' residential telephone number are 2660.

## CLASS ALLEGATIONS

114.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and the four Classes defined as follows:

> **No Mortgage Class:** All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her cellular or residential landline telephone from February 21, 2010 to the present; (2) that was made utilizing an automatic telephone dialing system and / or a prerecorded or artificial voice; (3) which related to Defendant's products or services; (4) where Defendant does not have a record of consent to place telephone calls to his or her cellular telephone number; and (5) who did not have a mortgage loan serviced or owned by Nationstar when the call was made.

> **Mortgage Class:** All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her cellular or residential landline telephone from February 21, 2010 to the present; (2) that was made utilizing an automatic telephone dialing system and / or by a prerecorded or artificial voice; (3) which related to Defendant's products or services; (4) where Defendant does not have a record of consent to place telephone calls to his or her cellular telephone number; and (5) who had a mortgage loan serviced or owned by Nationstar when the call was made.

> **Opt-Out Class:** All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her cellular or residential landline telephone from February 21, 2010 to the present; (2) that was made utilizing an automatic telephone dialing system and / or a prerecorded or artificial voice; (3) which related to Defendant's products or services; (4) and, following such calls, he or she made a request to Defendant that he or she no longer receive telephone

calls from Defendant; and (5) thereafter Defendant placed additional telephone calls to his or her cellular telephone.

Excluded from the Classes are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated or otherwise released, (5) the legal representatives, successors, or assigns of any such excluded person, and (6) Plaintiffs' counsel and Defendant's counsel.

115.    **Numerosity**: The exact number of Class members is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to at least thousands of consumers who fall into the definitions of the Classes. Class members can be identified through Defendant's records.

116.    **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs are members of the Classes and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

117.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to any of the Plaintiffs.

118.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes as they are the issues at the heart of

each claim. Common questions for the Classes are subject to common proof and answerable for the entirety of the Classes within a single stroke include, but are not necessarily limited to, the following:

      a.    whether Defendant's calls violated the TCPA;

      b.    whether the equipment Defendant used to make telephone calls to members of the Classes was an automatic telephone dialing system or pre-recorded voice as contemplated by the TCPA;

      c.    whether Defendant systematically made telephone calls to members of the Classes who did not previously provide Defendant with their prior express consent to receive such telephone calls;

      d.    whether Defendant made its calls for emergency purposes; and

      e.    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

119.    **Superiority & Manageability**: This case is also appropriate for class certification as class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense required for individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far

fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of Plaintiffs Ruggles and Jordan, and the No Mortgage Class)

120. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

121. Defendant made, or directed to be made, unsolicited telephone calls to cellular and landline telephone numbers belonging to Plaintiffs Ruggles, Jordan and other members of the No Mortgage Class without their prior express consent to receive such calls. In fact, like Plaintiffs, none of the members of the No Mortgage Class had a mortgage loan serviced or owned by Nationstar.

122. Defendant and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse and/or (2) using a prerecorded or artificial voice.

123. Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the No Mortgage Class simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

124. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiffs and the No Mortgage Class members' cellular telephones without their prior express

consent, and by utilizing an ATDS or pre-recorded voice to make those calls, Defendant has

violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B).

125.     As a result of Defendant's unlawful conduct, Plaintiffs and the members of the No

Mortgage Class have suffered invasions of privacy and actual damages, including in the form of

monies paid to receive the unsolicited telephone calls on their cellular phones and under section

227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such

violation of the TCPA plus injunctive relief to stop the calls.

126.     Should the Court determine that Defendant's conduct was willful and knowing,

the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable

by Plaintiff and the other members of the No Mortgage Class.

**COUNT II**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiffs Wright, Stewart, Childress, Doyle, Skelton, Halbert, Reed and**
**Somers, and the Mortgage Class)**

127.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth

herein.

128.     Defendant made, or directed to be made, unsolicited telephone calls to cellular

and/or residential landline telephone numbers belonging to Plaintiffs and other members of the

Mortgage Class without their prior express consent to receive such calls. Although members of

the Mortgage had mortgages held or serviced by Nationstar at the time the calls were placed,

such consumers had never provided Nationstar with consent to be called using either an ATDS

or with a pre-recorded voice.

129.     Defendant and/or its agents made the telephone calls (1) using equipment that had

the capacity to store, generate or produce telephone numbers to be called using a random or

sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse and/or (2) using a prerecorded or artificial voice.

130.     Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Mortgage Class simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

131.     By making, or having made on its behalf, the unsolicited telephone calls to Plaintiffs and the Mortgage Class members' cellular and/or residential landline telephones without their prior express consent, and by utilizing an ATDS or pre-recorded voice to make those calls, Defendant has violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B).

132.     As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Mortgage Class have suffered invasions of privacy and actual damages, including in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

133.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Mortgage Class.

**COUNT III**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff Wright, Skelton, Halbert, Reed, Ruggles and the Opt-Out Class)**

134.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

135.     Defendant made, or directed to be made, unsolicited telephone calls to cellular or residential landline telephone numbers belonging to Plaintiffs and other members of the Opt-Out Class without their prior express consent to receive such calls.

136.     Defendant and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse and/or (2) using a prerecorded or artificial voice.

137.     Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Opt-Out Class simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

138.     Plaintiff Wright and the members of the Opt-Out Class requested that Defendant cease calling them. However, the Defendant continued to call them following receipt of their requests that Defendant cease placing such calls. Further, Nationstar failed to implement adequate safeguards or internal controls designed to prevent or minimize its re-calling of consumers who have requested that the calls cease.

139.     By making, or having made on its behalf, the unsolicited telephone calls to Plaintiff Wright and Opt-Out Class members' cellular or residential landline telephones after the Plaintiffs and Opt-Out Class members revoked any consent or requested that Defendant cease placing such calls, by calling Plaintiff Wright and the Opt-Out Class members without their consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant has violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B).

140.    As a result of Defendant's unlawful conduct, Plaintiff Wright and the members of the Opt-Out Class suffered invasions of privacy and actual damages, including damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

141.    Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Opt-Out Class.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

1.    An order certifying the Classes as defined above, appointing:

    a.    Plaintiffs Vanessa Ruggles and Robert Jordan as the representatives of the No Mortgage Class;

    b.    Plaintiffs Heather Wright, Carole Stewart, Jeanette Childress, Michael Doyle, Dana Skelton, Sean Halbert, Roger Reed and Rose Somers as representatives of the Mortgage Class;

    c.    Plaintiffs Heather Wright, Dana Skelton, Sean Halbert, Roger Reed and Vanessa Ruggles, and representatives of the Opt-Out Class; and

2.    An order appointing Plaintiffs' counsel as Class Counsel;

3.    An award of actual and statutory damages;

4.    Treble statutory damages for any willful or knowing conduct;

5. An injunction requiring Defendant to cease all unsolicited telephone calling activities and otherwise protecting the interests of the Classes;

6. An award of reasonable attorneys' fees and costs; and

7. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: February 3, 2015

Respectfully submitted,

**HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, MICHAEL DOYLE, ROBERT JORDAN, SEAN HALBERT** and **DANA SKELTON, ROGER REED, VANESSA RUGGLES and ROSE SOMERS,** individually and on behalf of classes of similarly situated individuals,

By: _____
    One of Plaintiffs' Attorneys

Paul O. Paradis (Admitted *Pro Hac Vice*)
Gina M. Tufaro (Admitted *Pro Hac Vice*)
Daniel Lavoie (Of Counsel)*
PARADIS LAW GROUP, PLLC
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tel: (212) 986-4500
Fax: (212) 986-4501

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604

Tel: 312.589.6370
Fax: 312.589.6378

Jack Landskroner*
Drew Legando*
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007

Brant C. Martin (Admitted *Pro Hac Vice*)
WICK PHILLIPS GOULD & MARTIN, LLP
100 Throckmorton Street, Suite 500
Fort Worth, Texas 76102
Tel: (817) 332-7788
Fax: (817) 332-7789

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946

Michael P. Sousa*
sousam@sbcglobal.net
LAW OFFICES OF MICHAEL P. SOUSA, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
Tel: 858.453.6122, ext. 15

Matthew G. English*
mgelaw@gmail.com
LAW OFFICES OF MATTHEW G. ENGLISH
941 Orange Ave. #344
Coronado, CA 92118
Tel: 619.944.8568

Douglas J. Campion*
doug@djcampion.com
Law Offices of Douglas J. Campion, APC
409 Camino Del Rio South, Ste 303
San Diego, CA 92108

Tel: (619) 299-2901
Fax: (619) 858-0034

\* *Pro hac vice* admission to be filed