**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated, | Case No. 14-cv-10457 |
| | Hon. Edmond E. Chang |
| Plaintiffs, | |
| v. | |
| NATIONSTAR MORTGAGE LLC, a Delaware limited liability company, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.      **INTRODUCTION** ................................................................................................1

II.      **BACKGROUND** ..............................................................................................3

       A.      **Plaintiffs' Allegations, Nationstar's Systems for Making the Calls at Issue, and the TCPA** ...............................................................3

       B.      **Litigation History** .............................................................................4

       C.      **Settlement Discussions and the Parties' Mediation Efforts** ...........6

III.      **TERMS OF THE SETTLEMENT** ..................................................................7

       A      **Class Definition** ...............................................................................7

       B.      **Monetary Relief** ...............................................................................7

       C.      **Prospective Relief** ............................................................................8

       D.      **Payment of Settlement Administration Expenses, Including Notice** ...............8

       E.      **Incentive Awards and Attorneys' Fees** ............................................8

       F.      **Release of Liability** ..........................................................................9

IV.      **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES** ...............................................................9

       A.      **The Settlement Class is Sufficiently Numerous** ............................10

       B.      **Settlement Class Members Share Common Questions of Law and Fact** .......11

       C.      **Plaintiffs' Claims are Typical of those of the Settlement Class Members' Claims** ...............................................................12

       D.      **Plaintiff and Class Counsel Will Adequately Represent the Interests of the Settlement Class** ....................................................13

       E.      **The Settlement Class Meets the Requirements of Rule 23(b)(3)** ....................14

             1.      **Common questions of law and fact predominate** ...............................15

      **2.**      **A class action is the superior method of adjudicating this controversy** ........................................................................16

**V.**     **PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** ......17

**VI.**    **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL** ....19

     **A.**     **The Strength of the Plaintiffs' Case Compared to the Amount of the Settlement Offer Favors Preliminary Approval** ................................................21

     **B.**     **The Potential Length, Complexity, and Expense of Further Litigation Favor Preliminary Approval** ...................................................................24

     **C.**     **The Opinion of Competent Counsel Supports Preliminary Approval** ............25

     **D.**     **The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval** .........................................................26

**VII.**   **THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED** ...................26

**VIII.**  **CONCLUSION** .............................................................................28

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)......................................................10, 15, 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................................................27

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011)...........................................15

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ..................................................................3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..............................................................11

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) .....19, 20, 26

*Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th. Cir. 2011) .........................................................6

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ...........................................................20, 21

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).........................................................................19

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583 (7th Cir. 2011) ..................................................13

*Isby v. Bayh,* 75 F.3d 1191 (7th Cir. 1996)............................................................................20, 25

*Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481 (7th Cir. 2012).....................................................10

*Lemon v. Int'l Union of Operating Eng'g, Local No. 139, AFL-CIO,*
    216 F.3d 577 (7th Cir. 2000).......................................................................................15

*Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014)..............................23

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1990).........................................................16

*Messner v. Northshore Univ. Health System*, 669 F.3d 802 (7th Cir. 2012) ..................................15

*Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009) .....................................................................12

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)........................................................10

*Redman v. Radio Shack Corp.*, 768 F.3d 622 (7th Cir. 2014) .........................................................9

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013)........................18

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) ..............................13

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ...............................18

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ................................11, 12

*Smith v. Sprint Commc'ns Co.*, 387 F.3d 612 (7th Cir. 2004).......................................16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ..........19, 20, 21, 26

**UNITED STATES DISTRICT COURT CASES**

*Aderhold v. Car2go N.A., LLC*, No. 13-cv-489,
2014 WL 794802 (W.D. Wash. Feb. 27, 2014).................................................23

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07-cv-2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011).........................................26

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07-cv-2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ...........................................21

*Arthur v. Sallie Mae, Inc.*, No. 10-cv-198, 2012 WL 90101 (W.D. Wash Sept. 17, 2012)............22

*Baird v. Sabre, Inc.*, 995 F. Supp. 2d 1100 (C.D. Cal. 2014) ...........................................23

*Balschmiter v. TD Auto Finance LLC*, No. 13-cv-1186,
2014 WL 6611008 (E.D. Wis. Nov. 20, 2014).................................................23

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014)...................... *passim*

*Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D. Ill. 1995) ...............................11

*Cotton v. Asset Acceptance, LLC*, No. 07 C 5005,
2008 WL 2561103 (N.D. Ill. June 26, 2008) ...............................................15

*Doyle v. Nationstar Mortgage LLC*, No. 14-cv-679 (E.D. Tex.) ....................................4

*Ellison v. Steven Madden Ltd.*, No. 11-cv-05935, Dkt. 73 (C.D. Cal. May 7, 2013).........18, 19, 25

*G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, No. 08-cv- 4521,
2010 WL 744262 (N.D. Ill. Feb. 25, 2010).................................................10

*Greene v. DirecTV, Inc.*, No. 10-cv-0117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ...............23

*Harris v. Circuit City Stores, Inc.*, No. 07-cv-2512,
    2008 WL 400862 (N.D. Ill. Feb. 7, 2008)...........................................................................17

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................................24, 25, 26

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ................................................................................ *passim*

*In re Bank of America Corp. Stockholder Derivative Litig.*, CA No. 4307-VCS (Del. Ch.).........19

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ...........................................................2, 22. 23, 24

*In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493,
    2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ........................................................19, 27

*In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176,
    2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)....................................................................21

*In re Ticketmaster Sales Practices Litig.*, No. 09-cv-912 (C.D. Cal.) ..........................................19

*Jordan v. Nationstar Mortgage LLC*, No. 14-cv-787 (N.D. Cal.)................................................4, 5

*Kacsuta v. Lenovo (United States) Inc.*, No. 13-cv-316 (C.D. Cal.).............................................19

*Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007)........20

*Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2014 WL 3056813 (N.D. Ill. July 7, 2014)...............23

*Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. Jan. 27, 2012).............2, 22

*Lozano v. Twentieth Century Fox Films Corp.*,
    No. 09-cv-6344, Dkt. 65 (N.D. Ill. Apr. 15, 2011)..................................................2, 18, 22

*Miller v. Red Bull N. Am., Inc.*, No. 12-cv-04961 (N.D. Ill.).........................................................18

*Otero v. Dart*, No. 12-cv-3148, 2014 WL 4344029 (N.D. Ill. Sept. 2, 2014)..............................16

*Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008).........................................16

*Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424 (N.D. Ill. 2003) ..............................12

*Reed v. Nationstar Mortgage LLC*, No. 14-cv-1701 (N.D. Ohio) ...............................................4, 5

*Roberts v. Paypal, Inc.*, No. 12-cv-0622, 2013 WL 2384242 (N.D. Cal. May 30, 2013) ............23

*Rojas v. Career Education Corp.*, No. 10-cv-5260 (N.D. Ill.)........................................18

*Rose v. Bank of Am. Corp.*, No. 5:11-cv-02390,
    2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)..................................................2

*Ruggles v. Nationstar Mortgage LLC*, No. 14-cv-363 (C.D. Cal.)..................................4

*Satterfield v. Simon & Schuster, Inc., et al.*,
    No. 06-cv-2893, Dkt. 132 (Aug. 6, 2010).................................................2, 22

*Schulte v. Fifth Third Bank*, No. 09-cv-6655,
    2010 WL 8816289, (N.D. Ill. Sept. 10, 2010) ...............................................24

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)...........................24, 27

*Subedi v. Merchant*, No. 09-cv-4525, 2010 WL 1978693 (N.D. Ill. May 17, 2010) ...................16

*Weinstein v. The Timberland Co., et al.*,
    No. 06-cv-00484, Dkt. 93 (N.D. Ill. Dec. 18, 2008)......................................2, 22

*Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-cv-190,
    2015 WL 890566 (N.D. Ill. Feb. 27, 2015)..................................................22

*Zeidel v. YM LLC USA*, No. 13-cv-6989, No. 13-cv-6989,
    2015 WL 1910456, (N.D. Ill. Apr. 27, 2015) ...............................................23

**STATUTES**

28 U.S.C. § 1715...............................................................................27

28 U.S.C. § 2342(1) ...........................................................................23

47 U.S.C. § 227 ........................................................................... *passim*

Fed. R. Civ. P. 23 ........................................................................ *passim*

## I. INTRODUCTION

Plaintiffs seek preliminary approval of a class action settlement that, if approved, would resolve claims against Defendant Nationstar Mortgage LLC that it violated the Telephone Consumer Protection, 47 U.S.C. § 227 ("TCPA"), by placing autodialed and prerecorded calls to consumers' cellular telephones in an attempt to collect on mortgage payments due and owing to Nationstar. The proposed settlement agreement (the "Agreement")—reached after significant motion practice in five separate actions (ultimately consolidated in this case), formal and informal discovery, two full-day mediations with the Honorable Edward A. Infante of JAMS, and months of subsequent negotiations—stands out by offering a per claiming class-member recovery that is substantially more than what is typically recovered in cases of this sort (i.e., where the calls at issue are made regarding a specific debt or credit account).

Pursuant to the Agreement, Nationstar has agreed to create a $12.1 million non-reversionary Settlement Fund from which all Class member claims will be paid. Specifically, each Settlement Class Member who submits a valid claim will receive a *pro rata* share of the Fund, after the costs of notice and administration, a reasonable incentive award to Plaintiffs and any attorneys' fees awarded by the Court are paid. The Agreement also provides for significant prospective relief, including Nationstar's creation of mechanisms by which Class members can request to not receive future calls from Nationstar on their cellular phones.

As alluded to above, the strength of the settlement is best demonstrated when compared to other TCPA settlements. First, it's important to understand where this case fits in the TCPA spectrum. In the prototypical TCPA case—where individuals allege they received unsolicited telemarketing calls from entities with which they have no connection or relationship (which are generally viewed as stronger on the facts as there is no potential consent defense)—claiming

class members generally receive between $100 to $200 at most. *See, e.g., Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. Jan. 27, 2012) (providing for cash payments of $100 to claiming class members); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. Dec. 18, 2008) (providing for cash payments of $150 to claiming class members); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893, Dkt. 132 (N.D. Cal. Aug. 6, 2010) (providing for cash payments of $175 to claiming class members); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65 (N.D. Ill. Apr. 15, 2011) (providing for payments of $200 to claiming class members). However, in "direct relationship" cases in the debt collection context, such as this one, claiming class members generally receive between $20 and $40. *See, e.g., In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (hereinafter "*In re Capital One*") (providing for cash payments of $34.60 to each claiming class member); *Rose v. Bank of Am. Corp.*, No. 11-cv-2390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (providing for cash payments of between $20 and $40 per claiming class member).

In this case, based on the expected rate of claims, the payment to claiming class members should be approximately $140. Such a result not only far surpasses the recoveries in "direct relationship" cases, it also outperforms many TCPA settlements where there is no connection between the caller and the called party. Hence, the instant Settlement yields an expected payout to class members that is on the higher end of the spectrum in TCPA class settlements. Given this backdrop, there is no question that this Settlement should be viewed as fair, adequate and reasonable, and within the range of possible approval.

Accordingly, Plaintiffs respectfully request that the Court enter an Order (i) certifying the proposed Settlement Class for settlement purposes, (ii) naming Plaintiffs as Class

Representatives, (iii) appointing Rafey S. Balabanian of Edelson PC and Paul O. Paradis of Paradis Law Group, PLLC as Class Counsel, (iv) grant preliminary approval to the Settlement, (v) approving the proposed notice plan, and (vi) scheduling a final fairness hearing.

## II.     BACKGROUND

### A.     Plaintiffs' Allegations, Nationstar's Systems for Making the Calls at Issue, and the TCPA

Defendant is one of the nation's largest mortgage loan servicers. (Dkt. 50, ¶ 23.) As a part of that business, in recent years Nationstar has allegedly made automated and prerecorded telephone calls to consumers' cell phones nationwide seeking to collect mortgage payments and other fees, without first obtaining the requisite prior express consent to do so and thus, in violation of the TCPA. (*Id.*, ¶¶ 24–27.) The TCPA—which was enacted more than two decades ago (1991) in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012)—prohibits the use of an automatic telephone dialing system ("ATDS") or prerecorded voices in making calls to cellular telephone numbers without first having obtained prior express consent to do so. 47 U.S.C. § 227(b)(1)(A)(iii). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy," *Mims*, 132 S. Ct. at 744, and provided for statutory damages in the amount of $500 per violation (which may be trebled if the conduct is found willful) as well as injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)–(C).

As alleged in the Second Amended Complaint, Defendant used an automatic telephone dialing system known as the "Avaya Proactive Contact" system to place the of calls at issue. (Dkt. 50, ¶ 28.) According to Avaya Inc., itself, the "Avaya Proactive Contact" system enables Nationstar to "set up campaigns and manage various outbound campaigns for marketing, sales and accounts payable all from a single system." (*Id.*) While Nationstar admits that these calls

were purportedly made to ensure mortgage and fee payments, Plaintiffs allege that the calls were made without consent. (*Id.*, ¶¶ 29, 30, 35, 37, 67, 101, 104.) Thus, because Nationstar allegedly made calls using autodialers and prerecorded voices, to consumers who never provided (or provided and later revoked) their consent to receive those calls, its calling practices violated the TCPA. *See* 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B).

**B.    Litigation History**

This settlement represents the end of what were, at one time, five separate putative class actions pending in various federal courts throughout the country. These originally separate actions were filed beginning on February 21, 2014, each alleging substantially similar violations of the TCPA. The actions were as follows:

(i)     *Jordan v. Nationstar Mortgage LLC*, 14-cv-787, filed on February 21, 2014 in the Northern District of California (the "*Jordan* Action");

(ii)    *Ruggles v. Nationstar Mortgage LLC*, 14-cv-363, filed on February 26, 2014 in the Central District of California (the "*Ruggles* Action");

(iii)   *Reed v. Nationstar Mortgage LLC*, 14-cv-1701, filed on August 4, 2014 in the Northern District of Ohio (the "*Reed* Action");

(iv)    *Doyle v. Nationstar Mortgage LLC*, 14-cv-679, filed on October 24, 2014 in the Eastern District of Texas (the "*Doyle* Action");

(v)     *Wright v. Nationstar Mortgage LLC*, 14-cv-10457, filed on December 30, 2014 in the Northern District of Illinois (the "*Wright* Action").

To be clear, the separate filings between the various firms involved were not coordinated in any way. (*See* Declaration of Rafey S. Balabanian, filed contemporaneously herewith ("Balabanian Decl."), ¶ 4.) Rather—and unsurprisingly, given the scope of Nationstar's conduct—the actions were filed independently of each other, and it was only after each filing where coordination eventually took place. (*Id.*) In some instances, this involved firms renewing existing working relationships (as between counsel in the *Jordan* and *Ruggles* actions), while in

others it involved otherwise competing firms working together for the first time, as was the case with counsel in the *Jordan* and *Reed* actions. (*Id.*)

In the *Jordan* Action, the Defendant answered Plaintiff's complaint, and Plaintiff Jordan timely moved to strike certain of Defendant's affirmative defenses. (*Jordan* dkts. 13, 20.) Meanwhile, shortly after filing, the *Ruggles* Action was transferred to the Northern District of California and consolidated with the *Jordan* Action. (*Jordan* dkts. 27, 29.) Thereafter, Plaintiffs in the consolidated *Jordan* and *Ruggles* Actions propounded discovery on Defendant, including a notice of Rule 30(b)(6) deposition, requests to produce documents, and interrogatories. (Balabanian Decl., ¶ 5.) Before Nationstar had responded to those requests, it filed a motion to stay the *Jordan* and *Ruggles* Actions pursuant to the primary jurisdiction doctrine. (*Jordan* dkt. 33.) The *Jordan* Court granted that motion on August 21, 2014, staying the matter while waiting for the FCC to take action that could potentially have affected several issues in the case. (*Id.*, Dkt. 48.) Following the expiration of that stay, and after further briefing, the Court denied Nationstar's request to continue the stay, holding that (a) there was no indication that an FCC decision was impending, and (b) it was not clear that any decision would be determinative of the issues in *Jordan*. (*Id.*, dkt. 51.)[1]

Following that, and recognizing that the five actions all shared substantially identical factual and legal claims, Plaintiffs' counsel, amongst themselves and with defense counsel, met and conferred regarding the actions and whether any coordination could be reached. They ultimately determined to dismiss each of the separate actions in favor of refiling them as one

---

[1] Meanwhile, in the *Reed* Action, the Parties filed competing motions to transfer, Plaintiff seeking to transfer to the Eastern District of Texas, where the *Doyle* Action was then pending (*Reed* dkt. 15), and Defendant seeking to transfer to the Northern District of California, where *Jordan* was then pending. (*Id.*, dkt. 18.)

consolidated case (the *Wright* action) in the Northern District of Illinois. (*See* Balabanian Decl., ¶ 6.)

Following the filing of the amended complaint in the *Wright* matter (dkt. 15), Plaintiffs filed an amended motion for class certification, as well as a motion to appoint interim co-lead class counsel. (Dkts. 16, 17.) At the same time and with the benefit of their litigation activities in the previously pending actions—including the briefing on numerous substantive motions and the service of discovery—the Parties began to discuss the potential for resolving the claims at issue without the need for further protracted litigation. (Balabanian Decl., ¶ 9.) As a result of those discussions, the Parties ultimately determined to proceed with an initial private mediation before the Honorable Edward A. Infante (ret.) of JAMS (San Francisco) on March 4, 2015. (*Id.*, ¶ 9.)

On February 17, 2015 and pursuant to *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th. Cir. 2011), the Court entered and continued the certification motion pending discovery. (Dkt. 21.) The Court also granted Plaintiffs' motion to appoint interim co-lead class counsel, finding Plaintiffs' Counsel at Edelson PC and Paradis Law Group, PLLC to be "exceptionally qualified and experienced in representing classes," and finding that "their arrangement of the mediation is itself a sign of their efforts on behalf of the class[es]." (*Id.*) In the same order, the Court also appointed an executive committee comprised of Douglas J. Campion, Michael Sousa, Matthew English, and Jack Landskroner, and urged the Parties to dedicate their efforts and resources to their upcoming mediation (as explained below). (*Id.*)

## C.    Settlement Discussions and the Parties' Mediation Efforts

On March 4, 2015 the Parties met for private mediation with Judge Infante (ret.) of JAMS (San Francisco). (Balabanian Decl., ¶ 9) Through this mediation the parties began making important progress towards resolution and settlement, but certain significant issues remained

unresolved. (*Id.*, ¶ 10.) While the Parties were unable to reach a resolution that day, they did agree to exchange information related to, *inter alia*, the number of putative class members in question, the total number of calls made, and Nationstar's purported records of consent to make the calls, and to reconvene the mediation at a later date. (*Id.*) The Parties also agreed to a discovery schedule at that time, (dkt. 32), and at the next status hearing, the Court ordered discovery to proceed during the pendency of the second mediation, (dkt. 35.) The Parties continued discussions regarding the remaining unresolved issues, and eventually, in mid-June met again for a second all day mediation session, where core terms of the agreement were settled. (Balabanian Decl., ¶ 11) Over the next three months the Parties continued working to finalize the remaining details of the settlement, finally resulting in the Settlement Agreement now before the Court. (*Id.*)

**III.    TERMS OF THE SETTLEMENT**

The core terms of the settlement are summarized briefly below, and are set forth in full detail in the Settlement Agreement attached as Exhibit 1 to the Balabanian Declaration:

**A.    Class Definition:** The Settlement Class shall include all Persons in the United States for whom Nationstar Mortgage LLC has in its records a cellular telephone number, as of the date the Court enters an order preliminarily approving the Settlement Agreement. (Agreement ¶ 1.30.)

**B.    Monetary Relief:** Defendant has agreed to create a $12.1 million non-reversionary Settlement Fund, from which all Settlement Class Members will be paid. (*Id.*, ¶ 1.32) After settlement administration and notice expenses, an incentive award, and attorneys' fees have been paid, each Settlement Class Member who submits an approved claim (online or in hard-copy form) will receive a *pro rata* share of the Settlement Fund. (*Id.*; *id.* ¶ 2.1(b).)

**C.     Prospective Relief:** Nationstar has agreed to create and implement procedures through which it will ensure that going forward, it only calls the cellular telephones of those individuals who have consented to receive calls regarding mortgage or fee payments. (*Id*., ¶ 2.2.) The first of these is a process for Settlement Class members to submit Revocation Requests, which will prevent Nationstar, or anyone acting on its behalf, from placing further autodialed or prerecorded calls to their cellular telephones. (*Id.*, ¶ 2.2(b).) Under this procedure, Settlement Class members will be able to submit a Revocation Request to the Claims Administrator by U.S. mail, online through the Settlement Website, or telephonically by calling the Settlement Administrator. (*Id.*)[2] To effectuate this process**,** the Notice will explain in plain English how Class members can make Revocation Requests. (*Id.*)

The second part of the process is that within thirty days of the Effective Date, Nationstar will revise its existing policies and procedures to ensure that if a person revokes, by reasonable means, his or her consent to receive telephone calls, such requests will be honored. (*Id.*, ¶ 2.2(d).) This process will involve (i) coding such requests into Nationstar's internal records within a reasonable time, and (ii) training appropriate agents and employees in policies to ensure that such policies are honored. (*Id.*)

**D.     Payment of Notice and Administration Expenses, Including Notice:** Defendant has agreed to pay from the Settlement Fund all reasonable Settlement Administration Expenses including those related to notice. (*Id*., ¶ 1.32)

**E.     Incentive Awards and Attorneys' Fees:** Defendant has also agreed to pay from the Settlement Fund, subject to Court approval, an incentive award to the Class Representatives

---

[2]      Two forms of Revocation Requests will be made available on the Settlement Website, one for current and former Nationstar customers, and the other for non-customers.

in an amount the Court deems reasonable. (*Id.*, ¶ 8.3) While Nationstar has agreed that Class Counsel shall be entitled to an award of attorneys' fees and costs in an amount to be determined by the Court and paid from the Settlement Fund, (*Id.*, ¶ 8.1), and Class Counsel has agreed to limit any such request for attorneys' fees to no more than $4.125 million, Nationstar retains the right to object to the amount of attorneys' fees ultimately sought by Class Counsel. (*Id.*)[3]

**F.     Release of Liability:** In exchange for the monetary and prospective relief described above, each Settlement Class Member will be deemed to have released and forever discharged Nationstar and all of its related subsidiaries and affiliates from any past present and future claims related to automated or prerecorded voice calls received on or before the date that the Court enters an order for preliminary approval of the Settlement Agreement. (*Id*, ¶ 3.2.) Additionally, any Settlement Class Member who does not timely submit a valid Revocation Request will be deemed, as of the Effective Date, to have provided prior express consent to Nationstar (or anyone acting on its behalf) to make Telephone Calls to any of their phone numbers then appearing in Nationstar's records (or those of its agents). (*Id.*, ¶ 2.2(c).)

## IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Before granting preliminary approval, the Court must determine that the proposed

---

[3]     Class Counsel recognizes that the $4.125 million limitation on the attorneys' fees sought lands at the higher end of the spectrum of approvable percentages of the fund when accounting for the Seventh Circuit's rule that notice and administration costs are not included in the common fund for fee-calculation purposes. *See Redman v. Radio Shack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). However, because notice and administration costs have yet to be precisely determined, Class Counsel believed it prudent to use the highest approvable fee percentage in the agreement and notice, such that the Class members will be aware of the absolute highest number the fee request could possibly be. Obviously, once notice and administration costs are determined, Class Counsel's will seek fees in a lesser amount, which is not a problem as far as class notice, since it's always acceptable for class members to receive more money on account of a reduced fee request.

Settlement Class is appropriate for certification by ensuring that it meets the requirements of Rule 23(a), as well as at least one of the prerequisites laid out in Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997). Rule 23(a) requires that (1) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) plaintiffs' claims are typical of those of the class (typicality), and (4) the plaintiffs and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). In addition, where, as here, certification is sought under Rule 23(b)(3), the proponent of class certification must show (i) that common questions of law or fact predominate over questions affecting only individual class members (predominance), and (ii) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3). As described further below, the proposed Settlement Class satisfies each prerequisite.[4]

## A. The Settlement Class is Sufficiently Numerous.

Rule 23(a)'s first threshold requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *In re AT & T*, 270 F.R.D. at 341; *Birchmeier*, 302 at 250 (citation omitted). Although there is no "magic

---

[4]     Additionally, although not explicitly required under Rule 23, a party seeking class certification must also show that the class is "sufficiently definite or ascertainable." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (citing *Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)). Ascertainability is met when class members can be identified based on "precise, objective criteria." *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, No. 08-cv- 4521, 2010 WL 744262, at *4 (N.D. Ill. Feb. 25, 2010) (citation omitted); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) ("Plaintiffs can generally avoid the subjectivity problem by defining the class in terms of conduct (an objective fact) rather than a state of mind.").. Because Settlement Class membership here is based on straightforward criteria—Defendant's records showing that the class members cellular telephone number is on file—and Defendant has agreed to provide a list of all individuals who satisfy this criteria, the ascertainability requirement is also easily satisfied. *See Mullins*, 795 F.3d at 660; *see also G.M. Sign, Inc.*, 2010 WL 744262, at *4.

number" at which joinder becomes impracticable, the numerosity requirement is usually met when the class is comprised of 40 or more persons. *See Birchmeier*, 302 F.R.D. at 250; *Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995) (citations omitted) (finding proposed classes of 50 and 150 persons numerous). Here Defendant's records indicate that it has cellular telephone numbers for approximately 2.1 million individuals. (Balabanian Decl., ¶ 14.) As such, Rule 23(a)'s numerosity requirement is clearly satisfied.

**B.    Settlement Class Members Share Common Questions of Law and Fact.**

Rule 23(a)'s second requirement—commonality—is satisfied when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755–56 (7th Cir. 2014). For certification, class members must share "a common contention . . . capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Birchmeier* 302 F.R.D. at 250. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d at 756 (finding commonality satisfied where all class members' claims were derived from the same conduct: the deceptive marketing and packaging of coffee pods). In the TCPA context, a pattern of conduct that may give rise to common questions is the placement of calls using an artificial or prerecorded voice. *See, e.g.*, *Birchmeier*, 302 F.R.D. at 251 (finding common questions where all class members "received the same calls . . . using the same artificial or prerecorded voice technology"). And as the Supreme Court has noted, "even a single common question will do." *Dukes*, 131 S. Ct. at 2556 (internal quotations and alterations omitted).

Here, the members of the Settlement Class share claims arising out of Defendant's uniform course of conduct. As a result, they share factual and legal questions related to the same

TCPA claims, including whether: (i) Defendant used an ATDS to make the calls at issue; (ii) Defendant's calls featured an artificial or prerecorded voice; (iii) Class members consented to receive Defendant's calls; (iv) Defendant continued placing calls to Class members after the Class members requested that it cease doing so; (v) Defendant's calls violated the TCPA; and (vi) Defendant's conduct was willful, such that treble damages are appropriate. (Dkt. 50, ¶ 98.)

Because Defendant acted uniformly toward the Class members, the Class's claims can be adjudicated by reference to the determinative questions listed above. *See Suchanek*, 764 F.3d at 757 (finding the commonality requirement satisfied when "[plaintiffs'] claims and those of the class [they] would like to represent all derive from a single course of conduct by [Defendant]"); *see also Birchmeier*, 302 F.R.D. at 251 (finding commonality when "there [was] a common injury, resulting from receipt of the allegedly offending calls. . . ."). And therefore, Rule 23(a)'s commonality requirement is also satisfied.

### C. Plaintiffs' Claims are Typical of those of the Settlement Class Members' Claims.

Typicality, the third requirement of Rule 23(a), is satisfied where the representative plaintiffs' claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to commonality and is satisfied if a plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The typicality requirement is viewed permissively, and is satisfied as long as the plaintiff's claims have the "same essential characteristics" as the class's. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

In this case, the similarities between the calls made to Plaintiffs and those made to the

Settlement Class go far beyond the minimum requirement of sharing the "same essential characteristics"—they are essentially identical. Plaintiffs received the same types of calls that were made to the Settlement Class (i.e., autodialed and prerecorded), made by the same Defendant (Nationstar), without consent, in violation of the TCPA. (*See* dkt. 50, ¶¶ 100–106.) Because Plaintiffs' and the Class's claims arise out of substantively identical calls and conduct, Plaintiffs have shown more than "enough for Rule 23(a)(3) purposes." *In re AT & T*, 270 F.R.D. at 342 (citation omitted); *see also Birchmeier*, 302 F.R.D. at 251 ("[B]ecause the named plaintiffs received the same type of call as the other class members, their claims are typical of those of the class.").

Accordingly, Plaintiffs' claims are typical of the Settlement Class's and Rule 23(a)'s third requirement is satisfied as well.

### D. Plaintiff and Class Counsel Will Adequately Represent the Interests of the Settlement Class.

Finally, Rule 23(a) requires adequacy of representation, meaning "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two components to adequacy: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)). First, courts must determine whether the class representatives' interests in the outcome of the case coincide with—and lack potential conflicts of interest with—those of the absent class members. *See In re AT & T*, 270 F.R.D. at 343. Second, when assessing class counsel, courts consider their experience litigating similar actions and dedication of time and resources to the particular case at hand. *See id*. at 344.

Here, Plaintiffs have the same interests as the proposed Settlement Class. That is, Plaintiffs received autodialed and prerecorded calls, on their cellular telephones, without consent and in violation of the TCPA. They will therefore fairly and adequately protect the interests of the Class, and their pursuit of the instant action—including their coordination in this single Action and securing the proposed Settlement—demonstrates as much. (Dkt. 50, ¶ 97.)

Similarly, Plaintiffs' Counsel are well-respected members of the legal community, who have extensive experience in class actions of similar size, scope, and complexity to the instant action. (Balabanian Decl., ¶ 16.) In fact, as the Court previously recognized in appointing interim co-lead class counsel, Plaintiffs' Counsel at Edelson PC and the Paradis firm are "exceptionally qualified and experienced in representing classes." (Dkt. 21 at 1.) Moreover, they have regularly engaged in major complex litigation involving the TCPA and consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (Balabanian Decl., ¶ 16.) Proposed Class Counsel have also already diligently investigated the claims at issue in this Action and dedicated substantial resources to the case, and will continue to do so throughout its pendency. (*Id.*, ¶ 17; *see also* dkt. 21 at 1 ("[Class Counsel's] arrangement of the mediation is itself a sign of their efforts on behalf of the class.").)

Accordingly, both Plaintiffs and their counsel have and will continue to adequately represent the Settlement Class, and the final Rule 23(a) requirement is satisfied.

### E. The Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the prerequisites of Rule 23(a) have been satisfied, one of the three subsections of Rule 23(b) must be satisfied as well. Here, Plaintiffs seek certification of the proposed Settlement Class under Rule 23(b)(3), which provides that a class action may be maintained

where (1) the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). This case easily meets both of these requirements.

### 1. Common questions of law and fact predominate.

The Rule 23(b)(3) predominance requirement is similar to the Rule 23(a)(2) requirement of commonality, but takes it a step further, requiring that those same common questions of fact and law "represent a significant aspect of [the] case." *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 815 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citation omitted). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *In re AT & T*, 270 F.R.D. at 345. In gauging a class's cohesion, the determinative question is whether "class-wide adjudication of the common questions efficient compared to repetitive individual litigation of the same questions." *Cotton v. Asset Acceptance, LLC*, No. 07-cv-5005, 2008 WL 2561103, *5 (N.D. Ill. June 26, 2008) (quoting *Lemon v. Int'l Union of Operating Eng'g*, *Local No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000)). Generally, when a class's claims can be proven using the same common evidence, class-wide adjudication is more efficient, and the predominance requirement is satisfied. *See Messner*, 669 F.3d at 818–19.

The predominance analysis begins with the elements of the underlying cause of action. *See id*. at 815 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)). Here, the common factual and legal questions detailed in Section IV.B *supra*—e.g. whether Nationstar calls to cellular telephones were made with an ATDS or prerecorded voice, without consent—are the pillars of Plaintiffs' and the Settlement Class Members' TCPA claims. Thus,

because the Settlement Class Members all received the same calls, made by the same entity, and in the same manner, common questions predominate in satisfaction of Rule 23(b)(3). *See, e.g., Birchmeier*, 302 F.R.D. at 253 ("[D]efendants' contention about calculation of individual damages is a non-issue in terms of predominance. Plaintiffs are asking only for statutory damages, which eliminates individual variations.") (citations omitted).

### 2. A class action is the superior method of adjudicating this controversy.

Finally, Rule 23(b)(3) requires that a class action is the superior method of "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(B); *Birchmeier*, 320 F.R.D. at 255; *Subedi v. Merchant*, No. 09-cv-4525 2010 WL 1978693, at *6 (N.D. Ill. May 17, 2010). Class treatment is particularly well suited for claims resulting from a pattern of standardized conduct because it enables the court to "determine the legality of [an] alleged practice and procedure in one proceeding." *Otero v. Dart*, No. 12-cv-3148, 2014 WL 4344029, at *9 (N.D. Ill. Sept. 2, 2014); *see also Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (citations omitted). A class action is also superior in cases where individual damages are relatively low, because it allows individuals to aggregate their claims, overcoming the "problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *See Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997). Moreover, because the action will now settle, the Court need not consider issues of manageability relating to trial. *See Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004) ("[W]hen 'confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'")) (quoting *Amchem*, 521 U.S. at 620).

Here, a class action is the superior method of resolving the controversy because it allows

the Court to swiftly determine the legality of Nationstar's calling practices in a single proceeding, generating a uniform result that will apply to all similarly situated persons. Moreover, a class action is superior because it allows the Settlement Class Members to aggregate relatively modest individual claims worth just $500 in statutory damages (or, at most, $1,500 in the case of willful conduct, which there is no evidence of in this case). *See* 47 U.S.C. § 227(b)(3)(C). By comparison, the cost of litigating TCPA claims on an individual basis— including the cost of discovery, motion practice, and trial—would be prohibitively expensive. In addition, individual claims would clog the courts with an influx of separate actions, further delaying the possibility of relief and undermining Rule 23's policy of judicial efficiency. *See Birchmeier*, 302 F.R.D. at 255 ("In this case, plaintiffs have alleged that defendants chose to violate the TCPA on a very large scale by targeting a million or more people with inappropriate calls. Individual litigation of the claims of each individual would not be a superior or efficient way to resolve the claims.").

By providing swift resolution of common claims in a way that would not be possible individually, the superiority requirement is satisfied. Because the requirements of Rule 23(a) and 23(b)(3) are satisfied, the proposed Settlement Class should be certified for settlement purposes.

## V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

When certifying a class, Rule 23 requires that a court appoint counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, No. 07-cv-2512, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008) (citation omitted). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's

knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

Here, in appointing Interim Co-Lead Class Counsel, the Court already made the determination that Rafey S. Balabanian of Edelson PC and Paul O. Paradis of Paradis Law Group, PLLC are more than capable of meeting Rule 23(g)'s requirements. And while the Court noted at that preliminary stage that "proposed co-lead counsel are exceptionally qualified and experienced in representing classes," and that "their arrangement of the mediation is itself a sign of their efforts on behalf of the class," (dkt. 21), the results of the mediation—in the form of a $12.1 million, all-cash, non-reversionary settlement—serves to confirm Interim Co-Lead Class Counsel's adequacy.

Aside from this case, proposed Class Counsel at Edelson PC have extensive experience in similar complex litigation and have been appointed class counsel in numerous TCPA class actions, many of them in this District. (*See* Edelson PC Firm Resume, a true and accurate copy of which is attached as Exhibit 2 to the Balabanian Declaration); *see also Birchmeier*, 302 F.R.D. at 256 ("appoint[ing] Jay Edelson of Edelson PC . . . as class counsel"); *Miller v. Red Bull N. Am., Inc.*, No. 12-cv-04961 (N.D. Ill.) (serving as lead counsel in $6 million text spam settlement); *Rojas v. Career Education Corp.*, No. 10-cv-05260 (N.D. Ill.) (serving as lead counsel in $20 million text spam settlement); *Lozano,* No. 09-cv-06344 (N.D. Ill.) (serving as lead counsel in $16 million text spam settlement). They have also developed an in-depth understanding of the TCPA and have successfully litigated emerging issues that continue to redefine its boundaries. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) (securing landmark ruling applying the TCPA to text messages); *Ellison v. Steve Madden Ltd.*, No. 11-cv-5935, Dkt.

73 at 9 ("[Attorneys at Edelson PC] specialize in litigating consumer class actions and have pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue.").

Likewise, Paradis Law Group PLLC ("PLG") has extensive experience prosecuting consumer class actions, particularly those that involve highly technical issues, such as this action. (*See* PLG Firm Resume, attached as Exhibit 3 to the Balabanian Declaration.) For example, Mr. Paradis and the other attorneys from PLG recently procured a consumer class action settlement valued at over $50 million in the action *Kacsuta v. Lenovo (United States) Inc.*, No. 13-cv-316 (C.D. Cal.), on behalf of purchasers of certain Lenovo-manufactured laptops. *See also In re TicketMaster Sales Practices Litig.*, No. 09-cv-912 (C.D. Cal.); *In re Bank of America Corp. Stockholder Derivative Litig.*, CA No. 4307-VCS (Del. Ch.).

Accordingly, the Court should, consistent with its prior order, appoint Rafey S. Balabanian of Edelson PC and Paul O. Paradis of Paradis Law Group, PLLC as Class Counsel.

## VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), which involves a well-established two-step process. *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step—preliminary approval—assesses whether the proposed settlement falls "within the range of possible approval," *see Armstrong*, 616 F.2d at 314, "to ascertain whether there is any reason to notify the class members of the proposed

settlement and to proceed with a fairness hearing." *Id.* And once preliminary approval is granted, class members are notified of the settlement and the court and parties proceed to the second step—the final fairness determination. *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT & T*, 270 F.R.D. at 345 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), a multi-factor test is used to determine whether a proposed settlement is fair, reasonable, and adequate. *Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). Specifically, courts consider the following five factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the amount of opposition to the settlement, (4) the opinion of competent counsel, and (5) the stage of the proceedings and amount of discovery completed. *Id.* (citing *Isby*, 75 F.3d at 1199).[5] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).[6]

Here, each factor supports the Settlement Agreement, which this Court should find well "within the range of possible approval." *See Armstrong*, 616 F.2d at 314.

---

[5] The third factor—the amount of opposition to the settlement—is not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT & T*, 270 F.R.D. at 349. Accordingly, it is not considered here.

[6] In addition to these factors, the Seventh Circuit recently identified several "red flags" that may alert courts to a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723–26 (7th Cir. 2014). None of these warning signs are present here, as the Agreement (1) creates an $12.1 million settlement fund, (2) with no funds reverting to Nationstar, (3) and that with the completion of a short and simple claim form (which requires only basic contact information and the cellular telephone number at which claimants affirm they received the Calls), (4) Settlement Class Members will receive real and immediate cash relief. (*See* Agreement ¶ 1.32, 2.1, Exs. B–D.)

### A. The Strength of the Plaintiffs' Case Compared to the Amount of the Settlement Offer Favors Preliminary Approval.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *In re AT & T*, 789 F. Supp. 2d at 958 (quoting *Synfuel*, 463 F.3d at 653). The strength of a plaintiff's case can be quantified by examining "the next expected value continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v, ACE INA Holdings, Inc.*, No. 07-cv-2898, 2012 WL 651727, at *2 (N.D. Ill Feb. 28, 2012) (quoting *Synfuel*, 463 F.3d at 653); *see also Eubank*, 753 F.3d at 727 (finding that the district court should "estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement"). However, "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead courts are to provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (internal quotations omitted). "In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013). Finally, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT & T*, 270 F.R.D. at 347 (internal quotations omitted). The Parties' proposed Settlement—in terms of tangible monetary relief and improved customer contact practices—warrants approval, both compared to other similar TCPA actions and when viewed in light of the risks of protracted litigation.

The first factor, an assessment of both the strength of the Plaintiffs' case and the amount offered in settlement, weighs heavily in favor of approval. Here, the monetary relief to claiming class members (estimated at $140)—when considering the nature of the case and relationship

between the parties (i.e., where there is a direct relationship and the calls at issue were made regarding a specific debt or credit account)—is far greater than that secured in other similar TCPA cases. *In re Capital One*, 80 F. Supp. 3d 781 (providing for cash payments of $34.60 to each claiming class member); *Rose*, No. 11-cv-2390 (providing for cash payments of between $20 and $40 per claiming class member); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-cv-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) (providing for cash payments of $93.22 per claiming class member); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-198, 2012 WL 90101, at *3–6 (W.D. Wash Sept. 17, 2012) (providing for cash payments of $20 to $40 per claiming class member).

What's more, the relief secured here is also comparable to, and in some instances even surpasses, the relief secured in TCPA settlements where class members alleged they received telemarketing calls from entities with which they have no connection or relationship (which are generally viewed as stronger on the facts as there is no potential consent defense). *See, e.g., Kramer*, No. 10-cv-2722, Dkt. 148 (providing for cash payments of $100 to claiming class members); *Weinstein*, No. 06-cv-00484, Dkt. 93 (providing for cash payments of $150 to claiming class members); *Satterfield*, No. 06-cv-2893, Dkt. 132 (providing for cash payments of $175 to claiming class members); *Lozano*, No. 09-cv-6344, Dkt. 65 (providing for payments of $200 to claiming class members). Thus, given the expected payout to class members, the recovery obtained here is on the higher end of the spectrum in TCPA class settlements.

In terms of the strength of the case, Plaintiffs believe they will likely succeed on the merits of their claims, given Defendant's clear use of an ATDS and failure to obtain prior express consent as instructed by the FCC. Nevertheless, Nationstar's asserted defenses, including that the proposed class members consented to receive the calls, pose serious risks to the litigation and would be hotly contested issues every step of the way. This is especially true in light of ongoing

uncertainty regarding the scope and meaning of the TCPA's prior express consent exception. *See In re Capital One*, 2015 WL 605203, at *10 (noting that the FCC's series of TCPA Orders are not the most clear and are often the subject of "split opinion among practitioners and the courts") (citing *Balschmiter v. TD Auto Finance LLC*, No. 13-cv-1186, 2014 WL 6611008, at *8 (E.D. Wis. Nov. 20, 2014); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014); *Baird v. Sabre, Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014)). Indeed, during the pendency of the Parties' settlement negotiations, there were at least two sets of petitions before the FCC, which had the potential of eliminating or reducing Nationstar's liability in this case, namely on the issues of "the FCC's definition of an autodialer" and "clarify[ing] how and when consent may be expressed by consumers." *See In re Capital One*, 2015 WL 605203, at *11. Moreover, several courts, including the only judge to have directly addressed the issue in this district, have held that a caller is entitled to summary judgment against a TCPA claim when it can show the plaintiff provided a cell phone number as a contact number. *See e.g.*, *Roberts v. Paypal, Inc.*, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013); *Greene v. DirecTV, Inc.*, No. 10-cv-0117, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010).[7]

Although Plaintiffs believe that they and the Class would likely succeed in proving their claims and recovering the $500 statutory damages available under the TCPA, absent settlement, such a recovery is uncertain, as the success of *any* of Nationstar's defenses would prevent

---

[7]     Notwithstanding these decisions, the FCC, in its recent July 10, 2015 ruling, has made clear that the scope of a consumer's consent depends on its context and the purpose for which it is given, and consent for one purpose does not equate to consent for all purposes. District Courts are bound by the FCC's interpretation of the prior express consent requirement, (*see* the Administrative Orders Review Act, 28 U.S.C. § 2342(1)), and the majority of federal courts— not only in this District, but also across the country—have followed the FCC's guidance. *See Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2014 WL 3056813, at * 4 (N.D. Ill. July 7, 2014); *Zeidel v. YM LLC USA*, No. 13-cv-6989, 2015 WL 1910456, at *3 (N.D. Ill. Apr. 27, 2015); *Aderhold v. Car2go N.A., LLC*, 2014 WL 794802, at *8 (W.D. Wash. Feb. 27, 2014).

Plaintiffs and the Class from obtaining any recovery at all. In recognition of this inherent risk in protracted litigation, courts have consistently held that "a settlement is a compromise, and courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to plaintiffs.'" *In re Capital One*, 2015 WL 605203, at *10 (quoting *In re AT & T*, 270 F.R.D. at 347). And "this is especially true when complete victory would most surely bankrupt the prospective judgment debtor." *In re Capital One*, 2015 WL 605203, at *10. Settlement here provides a meaningful "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT & T*, 270 F.R.D. at 347.

Thus, considering the monetary relief and the strength of Plaintiffs case, especially when compared to similar TCPA cases, the first element of the test favors a finding that this settlement is "fair, reasonable, and just." *See Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *3 (N.D. Ill. Sept. 10, 2010) (recognizing that where a "settlement appears relatively generous when compared to settlements in analogous circumstances[, it] is sufficient to satisfy the standard for *preliminary* approval") (emphasis in original). The first—and most important— *Synfuel* factor therefore strongly supports final approval.

**B.     The Potential Length, Complexity, and Expense of Further Litigation Favor Preliminary Approval.**

Preliminary approval is also favored in cases such as this one, where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). As noted above, should litigation proceed, further discovery will undoubtedly be needed to develop the case, which will significantly drive up the cost of the litigation. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011) (noting that

"costs associated with discovery in complex class actions can be significant"). If anything, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now . . . ." *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d at 964. Because the proposed Settlement offers immediate monetary relief to the class, as well as a prompt end to Defendant's alleged conduct, while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate.

     **C.**     **The Opinion of Competent Counsel Supports Preliminary Approval.**

     The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

     Here, the Court has already made such a determination, holding that proposed Class Counsel "are exceptionally qualified and experienced in representing classes." (Dkt. 21 at 1.) Further, as detailed in the declaration of Rafey S. Balabanian, proposed Class Counsel have extensive experience litigating and settling TCPA class actions of similar size and scope, and have been recognized as "specialize[d] in litigating consumer class actions and hav[ing] pioneered the application of the TCPA to text-messaging technology[.]" *See Ellison*, No. 11-cv-5935, dkt. 73 at 9; (Balabanian Decl., ¶ 16.) As a result of that experience and for the reasons explained in Section IV.A, *supra*, Class Counsel believe that the instant Agreement is fair, reasonable, adequate and deserving of preliminary approval. As Class Counsel believes that the settlement provides significant relief for individuals who may otherwise be left without a remedy, this factor weighs in favor of preliminary approval as well.

### D. The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval.

Finally, the last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898, 2011 WL 3290302, at *8 (N.D. Ill. July26, 2011) (citing *Armstrong*, 616 F.2d at 325). It is well recognized that the court and parties may be equipped with sufficient information even when no formal discovery has taken place if the parties have engaged in considerable informal discovery. *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d at 966; *Am. Int'l*, 2011 WL 3290302, at *8.

The Settlement is the result of two full-day mediations, accomplished only after sufficient information had been exchanged by the Parties, the motion for class certification had been entered and continued, an amended complaint had been filed, and extensive negotiations (including two full-day mediations, and weeks of subsequent negotiation) took place. (Balabanian Decl., ¶¶ 5–11.) Following the Court's recommendation that the Parties "would be wise to dedicate their current efforts to the mediation" given that the "TCPA issues [did] not appear [then] to be especially complex," Plaintiffs and Defendant worked to complete sufficient discovery and were able to finally reach an agreement as a result. (*See* dkt. 21; Balabanian Decl., ¶¶ 10–11.) Ultimately, because the Parties had more than sufficient information to make knowledgeable decisions about the settlement throughout the negotiations, the final factor also shows that the Agreement is "fair, reasonable, and just."

## VII. THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED

Once a class has been certified, due process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"); *Schulte*, 805 F. Supp. 2d at 595. Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Northfield Labs.*, 2012 WL 366852, at *7. The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT & T*, 270 F.R.D. at 352. This is the case here, where the format and language of each form of Notice have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. All forms of Notice are attached to the Agreement as Exhibits B, C, and D.

To ensure that the Notice satisfies the requirements of due process and Rule 23 in both form and content, the Parties have agreed to a comprehensive notice plan developed in conjunction with professional Settlement Administrator Epiq Systems, Inc. (Agreement ¶ 1.29.) First, relying on the Settlement Class list provided by Nationstar—which includes the telephone numbers, and mailing addresses of all individuals for whom Nationstar has a cellular phone number in its records—Epiq will send direct notice to the Settlement Class by postcard. (*Id.*, ¶ 4.2(a)–(b).) The Notice will direct Settlement Class Members to the Settlement Website, which will contain electronic versions of the claim form that can be submitted online, important court documents, answers to frequently asked questions, and Revocation Request instructions. (*Id.*, ¶ 4.2(d), Exhibits B–D.)

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten

days after filing the Agreement with the Court, Defendant will cause to be served notice of the Agreement upon the Attorney General of the United States, the Attorneys General of each state, and any other required government officials. (*Id.*, ¶ 4.4(d).)

Because the proposed notice plan effectuates direct notice to all Settlement Class Members identified by Defendant's records, reaches other potential Settlement Class Members through the Settlement Website, and fully apprises Settlement Class Members of their rights, it comports with the requirements of due process and Rule 23. Consequently, the Court should approve the Parties' proposed notice plan.

## VIII.   CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that this Court enter an order (1) certifying the proposed Settlement Class for settlement purposes, (2) naming Plaintiffs as Class Representatives, (3) appointing Rafey S. Balabanian of Edelson PC and Paul O. Paradis of Paradis Law Group, PLLC as Class Counsel, (4) granting preliminary approval to the settlement, (5) approving the proposed notice plan, (6) scheduling a final fairness hearing, and (7) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**HEATHER WRIGHT, CAROLE STEWART** and **MICHAEL DOYLE**, individually and on behalf of all others similarly situated,

Dated: October 13, 2015          By: s/ Rafey S. Balabanian
                                           One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: 312.589.6370
Fax: 312.589.6378

Paul O. Paradis (Admitted *pro hac vice*)
Gina M. Tufaro (Admitted *pro hac Vvce*)
Daniel Lavoie (Of Counsel)*
PARADIS LAW GROUP, PLLC
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tel: (212) 986-4500
Fax: (212) 986-4501

Jack Landskroner (Admitted *pro hac vice*)
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Tel: (216) 522-9000
Fax: (216) 522-9007

Brant C. Martin (Admitted *pro hac vice*)
WICK PHILLIPS GOULD & MARTIN, LLP
100 Throckmorton Street, Suite 500
Fort Worth, Texas 76102
Tel: (817) 332-7788
Fax: (817) 332-7789

Michael P. Sousa (Admitted *pro hac vice*)
sousam@sbcglobal.net
LAW OFFICES OF MICHAEL P. SOUSA, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
Tel: 858.453.6122, ext. 15

Douglas J. Campion (Admitted *pro hac vice*)
doug@djcampion.com
Law Offices of Douglas J. Campion, APC
409 Camino Del Rio South, Ste 303
San Diego, CA 92108
Tel: (619) 299-2901
Fax: (619) 858-0034

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2015, I served the above and foregoing by causing a true and accurate copy of such paper to be filed with the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.


                                         s/ J. Dominick Larry