## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated, ) ) ) ) ) ) ) | Civil Action No. 1:14-cv-10457 **CLASS ACTION** JURY TRIAL DEMANDED |
| Plaintiffs, ) | Hon. Edmond E. Chang |
| ) | |
| v. ) | |
| ) | |
| NATIONSTAR MORTGAGE LLC, a Delaware limited liability company, ) ) | |
| ) | |
| Defendant. ) ) | |

## ANSWER TO SECOND AMENDED CLASS ACTION COMPLAINT

Defendant Nationstar Mortgage, LLC ("Nationstar") hereby answers Heather Wright, Carole Stewart, Jeanette Childress, Robert Jordan, Sean Halbert, Dana Skelton, Vanessa Ruggles and Rose Somers ("Plaintiffs") Second Amended Complaint (the "SAC") as follows:

### NATURE OF THE ACTION

1.      Defendant Nationstar is a mortgage lender and servicer.

**ANSWER: Nationstar admits that it is a mortgage lender and servicer.**

2.      On an ongoing basis, Defendant repeatedly makes unsolicited telephone calls to Plaintiffs' and the other putative Class members' cellular and landline telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

**ANSWER:    Nationstar denies violating any provisions of the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227 et seq. or any other statutory or**

common law in any manner, and denies that this action is appropriate for class treatment. Nationstar also denies that Plaintiffs and the purported class they seek to represent are entitled to any damages, remedies, or recovery from Nationstar.

3.      By making the telephone calls at issue in this Complaint, Defendant has caused Plaintiffs and the members of the Class (as defined herein) actual harm.

**ANSWER: Nationstar denies these allegations.**

4.      Defendant routinely makes these telephone calls despite the fact that neither Plaintiffs nor the other members of the putative Class have ever provided their:

> (i)      consent to be called on the specific telephone numbers that Defendant actually called; and/or
>
> (ii)     consent to be called with an automatic telephone dialing system or a pre-recorded voice.

**ANSWER: Nationstar denies placing calls to its customers without prior express consent, denies violating any provisions of the TCPA or any other statutory or common law in any manner, and denies that this action is appropriate for class treatment.**

5.      In response to Defendant's unlawful conduct, Plaintiffs bring the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Class (defined below) under the TCPA, together with costs and reasonable attorneys' fees.

**ANSWER: Nationstar admits only that Plaintiffs seeks legal and equitable remedies under the TCPA. Nationstar denies violating any provisions of the TCPA or any other statutory or common law in any manner, and denies that this action is appropriate for class treatment. Nationstar also denies that Plaintiffs and the purported class they seek to**

represent are entitled to any damages, remedies, or recovery from Nationstar.

**PARTIES**

6.     Plaintiff Heather Wright is a natural person and citizen of the State of Illinois.

**ANSWER:  Nationstar admits on information and belief that Plaintiff Heather Wright resides in Illinois.  To the extent a response is required, Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

7.     Plaintiff Carole Stewart is a natural person and citizen of the State of Illinois.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

8.     Jeanette Childress is a natural person and citizen of the State of Washington.

**ANSWER:  Nationstar admits on information and belief that Plaintiff Jeanette Childress resides in Washington.  To the extent a response is required, Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

9.     Plaintiff Robert Jordan is a natural person and citizen of the State of California.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

10.     Plaintiff Sean Halbert is a natural person and citizen of the State of California.

**ANSWER:  Nationstar admits on information and belief that Plaintiff Sean Halbert resides in California.  To the extent a response is required, Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

11.     Plaintiff Dana Skelton is a natural person and citizen of the State of California.

**ANSWER: Nationstar admits on information and belief that Plaintiff Dana Skelton resides in California. To the extent a response is required, Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

12.     Plaintiff Vanessa Ruggles is a natural person and citizen of the State of California.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

13.     Plaintiff Rose Somers is a natural person and citizen of the State of Kentucky.

**ANSWER: Nationstar admits on information and belief that Plaintiff Rose Somers resides in Kentucky. To the extent a response is required, Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

14.     Defendant Nationstar is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 350 Highland Drive, Lewisville, Texas 75067. Defendant Nationstar is also registered to do business with the Illinois Secretary of State. Nationstar does business throughout the United States, the State of Illinois, and in this District.

**ANSWER: Nationstar admits that Nationstar Mortgage, LLC is a limited liability company organized and existing under the laws of the State of Delaware and has an office located at 350 Highland Drive, Lewisville, Texas 75067. Nationstar also admits that it is registered to do business with the Illinois Secretary of State, and that it does business throughout the United States and in the State of Illinois.**

<u>**JURISDICTION AND VENUE**</u>

15.    This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute designed to protect consumers' privacy with respect to their cellular and residential landline telephone numbers and accounts.

**ANSWER:  Nationstar admits that this Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute.  To the extent a response is required, Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

16.    The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant has repeatedly engaged in the wrongful conduct described herein in this District.  Additionally, venue is proper in this District because Plaintiffs Wright and Stewart are citizens of the State of Illinois and received illegal telephone calls made by Defendant in the State of Illinois and in this District.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

17.    In addition, Defendant also transacts significant amounts of business within this District, directs telephone calls here, solicits customers here, and enters into consumer and business contracts here.

**ANSWER:  Nationstar admits that it services loans for customers in the state of Illinois. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

# COMMON FACTUAL ALLEGATIONS

## The Telephone Consumer Protection Act

18.     The Telephone Consumer Protection Act was passed by the United States Congress in 1991 and is codified as 47 U.S.C. § 227. The TCPA limits the use of automatic telephone dialing systems, artificial or pre-recorded voice messages, SMS text messages, and faxes.

**ANSWER: Paragraph 18 does not assert allegations against Nationstar. To the extent a response is required, Nationstar denies that this paragraph completely and accurately describes the TCPA's mandates.**

19.     Specifically, with respect to calls made to cellular telephones, the TCPA prohibits the use of any automated telephone dialing system or any artificial or prerecorded voice unless the recipient expressly consents to the receipt of such calls on his/her/its cellular telephone.

**ANSWER: Paragraph 19 does not assert allegations against Nationstar. To the extent a response is required, Nationstar denies the allegations of this paragraph.**

20.     With respect to calls made to residential telephones, the TCPA prohibits the use of any artificial or prerecorded voice to deliver a message unless the recipient expressly consents to the receipt of such calls on his/her residential telephone.

**ANSWER: Paragraph 20 does not assert allegations against Nationstar. To the extent a response is required, Nationstar denies the allegations of this paragraph.**

21.     According to the Federal Communications Commission-the agency tasked with promulgating the implementing regulations of the TCPA-to be considered "express consent," such consent must:  (i) be in writing; (ii) be signed by the person providing the consent; (iii) specify the telephone number to which the person is consenting to be called; and (iv) clearly

authorize the calling party to use an automated dialing system or prerecorded voice. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket No. 02-278 (Feb. 15, 2012) ¶ 33, Appendix A, at 34.

**ANSWER: Paragraph 21 does not assert allegations against Nationstar. To the extent a response is required, Nationstar admits that Plaintiffs appears to quote from an FCC publication but denies that this paragraph completely or accurately quotes all of the language of this publication.**

**Nationstar Has Repeatedly, Knowingly and Willfully Violated The TCPA by Placing Telephone Calls Using an Automated Telephone Dialing System and with an Artificial and/or Prerecorded Voice Without Obtaining Class Members' Express Consent To Do So**

22.     Nationstar is a "non-bank residential mortgage servicer" that provides "a range of services across the residential mortgage product spectrum." In general, a mortgage servicer is a third-party that is hired by an investor or owner of a loan to perform the mortgage servicing function with respect to a loan or group of loans (called a portfolio). Mortgage servicers send out bills, collect payments, allocate the monies collected in accordance with the servicing agreement, calculate escrow, and, in certain circumstances, engage in loss mitigation efforts and foreclosure and foreclosure alternatives.

**ANSWER: Nationstar admits that it is a mortgage servicer and that it is not a bank. Nationstar admits that many mortgage servicers provide many of the services described in this paragraph but is otherwise without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies them.**

23.     Defendant placed and continues to place repeated telephone calls to consumers who never provided Defendant (or any third party associated with their respective mortgages) with consent to call such numbers.

**ANSWER: Nationstar denies these allegations.**

24. Defendant's calls are made for the purpose of collecting alleged debts, to purportedly "remind" consumers to pay their mortgages, and for potentially other, non-debt collection reasons.

**ANSWER: Nationstar admits that it places calls to its customers for various purposes, including account servicing. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

25. Defendant's calls often come on a daily basis and often, multiple times per day.

**ANSWER: Nationstar admits it calls customers on a regular basis in accordance with state and federal laws and regulations.**

26. In making the calls at issue in this Complaint, Defendant, and/or its agents utilize an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, en masse, in an automated fashion without human intervention. The automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers or recordings and disconnecting the rest of the calls (or placing them on hold). Accordingly, consumers receiving calls from Defendant and/or its agents are frequently confronted with dead air or the sound of the call being disconnected (otherwise known as an "abandoned call").

**ANSWER: Nationstar denies that it made telephone calls using equipment that had the**

capacity to store, generate, or produce telephone numbers to be called using a random or sequential number generator, or that it placed calls without human intervention. Nationstar also denies using an automatic telephone dialing system. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.

27.    Defendant admits that it has been using predictive dialing technology since at least as early as 2012. In Defendant's Form S-1 dated February 24, 2012, Defendant states "[i]n the account resolution group, we use a combination of predictive dialer technology and account level assignments to contact the borrowers." Form S-1 dated February 24, 2012 at 125.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

28.    Defendant's particular automated telephone dialing system is known as the "Avaya Proactive Contact" system. According to Avaya Inc., the "Avaya Proactive Contact" system is a "predictive dialing system" that uses "the most advanced dialing algorithms available to optimize your outbound communication campaigns." In particular, the "Avaya Proactive Contact" system enables Nationstar to "set up campaigns and manage multiple dialers across [its] organization... [and to] define and manage various outbound campaigns for marketing, sales and accounts payable all from a single system."

**ANSWER: Nationstar denies that it placed calls using an ATDS. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

29.    According to Avaya Inc., the "Avaya Proactive Contact" system is built with several features that enable Nationstar to "comply with even the most restrictive regulations."

Despite having this capability, however, Defendant does not utilize the compliance functionality of its "Avaya Proactive Contact" system to ensure that the company is "adhering to strict regulatory compliance." Instead, Defendant routinely violates the TCPA by using its "Avaya Proactive Contact" system to call the telephones of Class members without having obtained their express consent to do so.

**ANSWER: Nationstar places calls to customers in accordance with state and federal laws and regulations and denies that it placed calls without prior express consent. Nationstar lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations and, on that basis, denies them.**

30. Defendant's records contain evidence of the fact that Defendant repeatedly violated the TCPA by utilizing its "Avaya Proactive Contact" automated telephone dialing system to call Class members' telephones without having obtained express consent to do so. For example, Defendant's records identify the exact date and time of each and every call made by Nationstar and whether the call was made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system. The specific calls that were made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system are identified within Defendant's records by the labels **"AVAYA," "PRE RECORDED DIALER MESSAGE," "PRDM," "CALL ANSWERED NO POSITIVE VOICE ID DETECTED," or "CALL DROPPED FROM DIALER HOLD, NO AGENT AVAIL."**

**ANSWER: Nationstar denies that it placed calls to its customers without prior express consent. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

31. Defendant's calls to cellular and residential landline phones also feature artificial

or pre-recorded messages instead of live operators.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

32. Making Defendant's calls all the more problematic, the pre-recorded messages do not provide Class members with an option to stop the calls. To speak with a live operator and request that the calls stop, a consumer must provide personally identifying information such as a social security number.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

33. This barrier is particularly problematic because Defendant places unwanted telephone calls to consumers who do not have a mortgage with or serviced by Defendant.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

34. Even when consumers are called and connected to a live operator-and even when they make explicit requests to Defendant to stop receiving telephone calls from Defendant-the calls continue in direct contradiction to those requests.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

35. Defendant was and is aware that the above described telephone calls were and are being made to consumers without their prior express consent to receive them.

**ANSWER: Nationstar denies that it placed calls to customers without their prior express consent.**

**Class Members Express Their Outrage Over Defendant's Illegal Telephone Calls**

36.     Class members have voiced their outrage over Defendant's repeated violations of the TCPA. A sampling of such complaints is provided below:

a.     "I mailed a pmt. to Nationstar immediately, but I have been getting daily robo calls harassing me. I have never been late on any payments in more than 40 years";

b.     "Since my loan was sold to Nationstar, I received daily (or more) Robo Calls to my cell. As with others, no response when I answered. Tried customer service but gave up after a long wait. Sent email from their website, no response. Finally logged FCC & BBB complaints";

c.     "I am getting daily robo calls on my cell phone since my mortgage was sold to them. I tried calling their customer service, but can't find a way to speak to anyone! Will never voluntarily do business with this company. I logged a complaint with BBB";

d.     "NationStar Mortgage Company... They robo call multiple times day and night. It doesn't matter that you make your monthly mortgage payments.";

e.     "NationStar will ROBO CALL customers on the 4th or 5th of every month, even with customers that have never been late!!!
This is a very UNPROFESSIONAL company... Having never missed a payment since they purchased my loan from Bank of America, they execute ROBO CALLING starting on the 4th of every month makes them a very sub par company. I CANNOT wait for my Re-finance process to complete (with a different lender of course) so I can move onto a different servicer. They ARE THE WORST.";

f.     "This company is horrible. They recently assumed my mortgage from a

real bank. The mortgage has never been late, not even a day. It has come out electronically for years on the same day, right on time, never bouncing, never rejected, etc. Yet Nationstar subjected me to a barrage of personal and electronic robo calls."

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them. Also, this paragraph consists of unsubstantiated assertions that are immaterial and impertinent to this lawsuit.**

37. Complaints regarding Defendant's conduct have not been limited to Internet postings. In fact, Defendant has been sued multiple times in various jurisdictions in individual actions for violating the TCPA by routinely placing calls with an automated telephone dialing system or prerecorded voice to Class members' phones without express consent to do so.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them. Also, this paragraph consists of unsubstantiated assertions that are immaterial and impertinent to this lawsuit.**

38. The fact that Defendant has been sued numerous times in individual actions based on the fact that Defendant has routinely placed calls with an automated telephone dialing system or prerecorded voice to cellular and residential phones without express consent to do so very clearly demonstrates that Defendant's continued violation of the TCPA is knowing and willful.

**ANSWER: Nationstar denies the allegations.**

## FACTS SPECIFIC TO PLAINTIFF WRIGHT

39. Plaintiff Wright's mortgage is presently serviced by Defendant Nationstar.

**ANSWER: Nationstar admits that Plaintiff Wright has a mortgage that is serviced by**

Nationstar.

40.     Since at least February 2014, Defendant has placed numerous telephone calls to Plaintiff Wright's cellular phone without having obtained her express consent to do so.

**ANSWER: Nationstar denies these allegations.**

41.     Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Wright to pay her mortgage, even though Plaintiff Wright was still within the grace period for such payments.

**ANSWER: Nationstar denies that it placed calls to Wright using an automatic telephone dialing system. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

42.     Plaintiff Wright did not consent to receiving these telephone calls on her cellular phone.  Furthermore, Plaintiff Wright expressly revoked any purported consent to call her cellular phone that may have been given.

**ANSWER: Nationstar denies these allegations.**

43.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Wright's cellular telephone number without her prior express consent to receive them.

**ANSWER: Nationstar denies these allegations.**

44.     The last four digits of Plaintiff Wright's cellular telephone number are 1612.

**ANSWER: Nationstar admits that a phone number associated with Wright's account ends in number -1612. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

## FACTS SPECIFIC TO PLAINTIFF STEWART

45.     Plaintiff Stewart's mortgage is presently serviced by Defendant Nationstar.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

46.     Since at least October 2014, Defendant has placed numerous telephone calls to Plaintiff Stewart's cellular phone without having obtained her express consent to do so.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

47.     Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Stewart to pay her mortgage, even though Plaintiff Stewart was still within the grace period for such payments.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

48.     Plaintiff Stewart did not consent to receiving these telephone calls on her cellular phone.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

49.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Stewart cellular telephone number without her prior express consent to receive them.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

50.     The last four digits of Plaintiff Stewart's cellular telephone number are 3040.

**ANSWER**:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.

## FACTS SPECIFIC TO PLAINTIFF CHILDRESS

51.     Plaintiff Childress' mortgage is presently serviced by Defendant Nationstar.

**ANSWER**:  **Nationstar admits that Plaintiff Childress has a mortgage that is serviced by Nationstar.**

52.     Since at least July 19, 2012, Defendant has placed numerous telephone calls to Plaintiff Childress' cellular phone without having obtained her express consent to do so.

**ANSWER**:  **Nationstar denies these allegations.**

53.     Each of these telephone calls was initiated with an ATDS and each of the telephone calls were made to "remind" Plaintiff Childress to pay her mortgage, even though Plaintiff Childress was still within the grace period for such payments.

**ANSWER**:  **Nationstar denies that it placed calls to Childress using an automatic telephone dialing system.  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

54.     Plaintiff Childress did not consent to receiving these telephone calls on her cellular phone.

**ANSWER**:  **Nationstar denies these allegations.**

55.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Childress' cellular telephone number without her prior express consent to receive them.

**ANSWER**:  **Nationstar denies these allegations.**

56.     The last four digits of Plaintiff Childress' cellular telephone number are 5979.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

## FACTS SPECIFIC TO PLAINTIFF JORDAN

57.     Plaintiff Jordan does not have a mortgage held by, serviced by, or in any other way associated with Defendant Nationstar.  In fact, Plaintiff Jordan does not have any home loans at all.

**ANSWER:  Nationstar admits that Plaintiff Jordan does not have a mortgage serviced by Nationstar.  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

58.     Nevertheless, Defendant has placed numerous calls to Plaintiff Jordan's telephone since at least July 2013, often weekly, from the phone number (888) 811-5279.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

59.     The telephone number (888) 811-5279 belongs to and connects directly to Defendant Nationstar.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

60.     The calls were placed to Jordan's VOIP number, with the last four digits ending in 5451.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

61.     When Plaintiff Jordan answered these calls he heard an artificial or pre-recorded voice identifying the caller as Nationstar and requesting that he call Nationstar back.  However,

when Plaintiff Jordan called Nationstar back to stop the calls, he was greeted with another prerecorded message directing him to input his telephone number and Social Security number to identify his loan. Because Plaintiff Jordan does not have a loan with Defendant, he was unable to get past these requests. Additionally, pressing "0" only brought him back to the main menu. As such, despite Plaintiff Jordan's best efforts he could not stop the calls and they continued on a repeat basis.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

62.     In a final effort to stop the calls, Plaintiff Jordan has put a block on his phone line for the number (888) 811-5279.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

63.     Plaintiff Jordan did not consent to receive calls of any kind from Defendant.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

64.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Jordan's telephone number without his prior express consent to receive them.

**ANSWER: Nationstar denies these allegations.**

65.     It is unclear what the purpose of the Defendant's calls to Jordan was as Jordan neither has a mortgage with Nationstar nor owes any debt to Nationstar.

**ANSWER: Nationstar admits that Plaintiff Jordan does not have a mortgage serviced by Nationstar. Nationstar is without sufficient knowledge or information to form a belief as to**

the truth of the remaining allegations in this Paragraph and, on that basis, denies them.

## FACTS SPECIFIC TO PLAINTIFFS HALBERT AND SKELTON

66.     Plaintiffs Halbert and Skelton are married.  Their mortgage is presently held by Defendant Nationstar.

**ANSWER:  Nationstar admits that Plaintiffs Halbert and Skelton have a mortgage that is serviced by Nationstar.  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

67.     Since their mortgage was transferred to Defendant from their prior servicer, Halbert and Skelton have always timely made their payments within the allotted grace period.

**ANSWER:  Nationstar denies these allegations.**

68.     Yet, shortly after the mortgage was transferred to Nationstar in March 2012, and having made no payments outside of Defendant's grace period, Plaintiffs Halbert and Skelton each began receiving numerous phone calls on their cellular telephones aggressively "reminding" them to make payments, even though the payments were not yet beyond the grace period.  Many of these calls featured an artificial or pre-recorded voice.  The calls came from, at the very least, the phone number (877) 698-9400.  The telephone number (877) 698-9400 belongs to Defendant Nationstar.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

69.     If Plaintiffs Halbert and Skelton did not answer the calls, Defendant would leave a voicemail, often with a pre-recorded voice, stating "This is Nationstar calling regarding your account, it's urgent you contact us in the next 24 hours."

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

70.     Plaintiffs Halbert and Skelton placed a telephone call to Defendant in March 2012 and requested to be taken off the call list because their account was in good standing and they always paid within the grace period.  The customer service representative verified that Defendant had received Plaintiffs Halbert's and Skelton's payment at the same day each month and that the payments had not been late.  The customer service representative ensured Halbert and Skelton that they would not be called again.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

71.     Despite the representative's assurances, in April 2012 the calls resumed.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

72.     Because Defendant would not stop making calls, and because Plaintiffs Halbert and Skelton found the calls to be a personal invasion of privacy and harassing, Plaintiff Skelton submitted a formal complaint to the Better Business Bureau ("BBB") about the calls indicating, "We would like the illegal collection calls to stop." The BBB forwarded the complaint to Defendant Nationstar.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

73.     Shortly thereafter, Plaintiffs received a letter from Defendant Nationstar indicating that it had received the BBB complaint.  Defendant's letter stated "We received notification from the Better Business Bureau on April 11, 2012 regarding your request to cease

and desist collection calls on the above mentioned account. Please accept our apology if you have experienced any inconvenience in this matter. Your account has been coded to cease the collection calls."

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

74. While the calls did cease for a time, Defendant yet again began making calls to both Plaintiff Halbert and Plaintiff Skelton approximately six months later.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

75. Plaintiff Halbert answered several of these post-opt-out calls that were again made with a pre-recorded voice and, after being connected to a live operator, explicitly requested that the calls to him and Plaintiff Skelton cease. This, however, again failed to stop the calls.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

76. Since that time, the calls have continued monthly up to and including the present.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

77. Neither Halbert nor Skelton ever provided their cellular phone numbers to Nationstar or otherwise consented to receive calls from Nationstar. Further, any putative consent was expressly revoked.

**ANSWER: Nationstar denies it placed calls to Halbert and Skelton without their prior express consent. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies**

them.

78.     Defendant was and is aware that it was making the relevant calls to Plaintiffs Halbert and Skelton without their prior express consent with the use of an ATDS and/or a pre-recorded voice.

**ANSWER:  Nationstar denies placing calls using an automatic telephone dialing system. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

79.     Plaintiff Halbert's cellphone ends in 9048, and Plaintiff Skelton's cell phone ends in 3225.

**ANSWER:  Nationstar admits that phone numbers associated with Halbert and Skelton's account ends in numbers -9048 and -3225.  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

## FACTS SPECIFIC TO PLAINTIFF RUGGLES

80.     Plaintiff Ruggles has had a cellular telephone since at least 2001.  Plaintiff has had the same cellular telephone number for at least ten years.  Plaintiff's current carrier is Sprint.

**ANSWER:  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

81.     In or about early November 2013, Plaintiff began receiving unsolicited telephone calls from Nationstar.  Sometimes Plaintiff did not answer these calls, and other times she answered the phone.  On some of the calls that Plaintiff answered, there was a period of silence before a live person spoke, which indicates that a machine had dialed her number and then waited for her to answer before bringing a representative on the line.  For other calls, when

Plaintiff Ruggles answered she heard a prerecorded or artificial voice identifying the caller as Nationstar

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

82.     Initially, Nationstar would ask for Ruggles by her name, Vanessa Ruggles. On other subsequent calls, however, Nationstar would ask to speak with Randall Fisher, a person unassociated with Ruggles whom Ruggles does not know.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

83.     Like Plaintiff Jordan, Defendant called Ruggles repeatedly from phone number (888) 811-5279. When Ruggles answered the phone, she repeatedly told Nationstar not to call her again. Ruggles also called Defendant at (888) 811-5279 and requested that the calls stop. During these discussions, a Nationstar employee or representative informed Ruggles that it would take thirty days to process her request to stop the calls. Despite her repeated pleas, Nationstar continued to call Plaintiff a total of approximately twenty-three (23) times between November 2013 and December 4, 2013. During another one of the calls in or around November 2013, a Nationstar representative told Ruggles that Nationstar could keep calling because the calls were courtesy calls, as opposed to solicitations.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

84.     Plaintiff Ruggles is not a customer of Nationstar. Ruggles never provided her cellular phone number to Nationstar. Ruggles does not have any business relationship with Nationstar and never has.

**ANSWER: Nationstar admits that Vanessa Ruggles does not have a mortgage serviced by Nationstar. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

85.     The last four digits of Plaintiff Ruggles' cellular telephone number are 5277.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

**FACTS SPECIFIC TO PLAINTIFF SOMERS**

86.     Plaintiff Somers' mortgage is presently serviced by Defendant Nationstar.

**ANSWER: Nationstar admits that Plaintiff Somers has a mortgage that is serviced by Nationstar.**

87.     Since at least December 2013, Defendant has placed numerous telephone calls to Plaintiff Somers' residential phone without having obtained her express consent to do so.

**ANSWER: Nationstar denies these allegations.**

88.     Plaintiff Somers has received these telephone calls from the telephone number 888-811-5279. This telephone number belongs to and connects directly to Defendant Nationstar.

**ANSWER: Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

89.     Each of these telephone calls was initiated with an ATDS and a pre-recorded voice. Each of the telephone calls were made to "remind" Plaintiff Somers to pay her mortgage, even though Plaintiff Somers was still within the grace period for such payments.

**ANSWER: Nationstar denies that it placed calls to Somers using an automatic telephone dialing system. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

90.    For example, Plaintiff Somers received an astounding 16 telephone calls from Nationstar, all made with an ATDS and a pre-recorded voice, since December 27, 2014.

**ANSWER:  Nationstar denies that it placed calls to Somers using an automatic telephone dialing system.  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

91.    Plaintiff Somers did not consent to receiving these telephone calls on her cellular phone.

**ANSWER:  Nationstar denies these allegations.**

92.    Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Somers' residential telephone number without her prior express consent to receive them.

**ANSWER:  Nationstar denies these allegations.**

93.    The last four digits of Plaintiff Somers' residential telephone number are 2660.

**ANSWER:  Nationstar admits that a phone number associated with Somer's account ends in number -2660.  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, on that basis, denies them.**

## CLASS ALLEGATIONS

94.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and the Class defined as follows:

> All individuals in the United States for whom Nationstar has in its records a cellular telephone number.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest

and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated or otherwise released, (5) the legal representatives, successors, or assigns of any such excluded person, and (6) Plaintiffs' counsel and Defendant's counsel.

**ANSWER: Nationstar denies that Plaintiffs are proper class representatives, denies that the proposed class definition is proper, and denies that this action is appropriate for class treatment.**

95. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to at least thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

**ANSWER: Nationstar denies that the proposed class definition is proper, denies that class members are ascertainable or identifiable, and denies that this action is appropriate for class treatment.**

96. **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Class, in that Plaintiffs are members of the Class and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

**ANSWER: Nationstar denies these allegations, denies that Plaintiffs are proper class representatives, denies that Plaintiffs' claims are typical, denies that the proposed class definition is proper, and denies that this action is appropriate for class treatment.**

97. **Adequate Representation**: Plaintiffs will fairly and adequately represent and

protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to any of the Plaintiffs.

**ANSWER: Nationstar denies that Plaintiffs are proper or adequate class representatives, denies that the proposed class definition is proper, and denies that this action is appropriate for class treatment.**

98. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class as they are the issues at the heart of each claim. Common questions for the Class are subject to common proof and answerable for the entirety of the Class within a single stroke include, but are not necessarily limited to, the following:

    a.    whether Defendant's calls violated the TCPA;

    b.    whether the equipment Defendant used to make telephone calls to members of the Class was an automatic telephone dialing system or pre-recorded voice as contemplated by the TCPA;

    c.    whether Defendant systematically made telephone calls to members of the Class who did not previously provide Defendant with their prior express consent to receive such telephone calls;

    d.    whether Defendant made its calls for emergency purposes; and

    e.    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**ANSWER: Nationstar denies these allegations, denies that Plaintiffs are proper class**

representatives, denies there are common questions of law or fact that predominate over individual issues, denies that the proposed class definition is proper, and denies that this action is appropriate for class treatment.

99. **Superiority & Manageability**: This case is also appropriate for class certification as class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense required for individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**ANSWER: Nationstar denies that the proposed class definition is proper, denies that class proceedings are superior, and denies that this action is appropriate for class treatment.**

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiffs and the Class)**

100. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

**ANSWER: Nationstar incorporates by reference its responses to Paragraphs 1 through 99 of the SAC as though fully set forth herein.**

101.    Defendant made, or directed to be made, unsolicited telephone calls to cellular and landline telephone numbers belonging to Plaintiffs and other members of the Class without their prior express consent to receive such calls.

**ANSWER:  Nationstar denies these allegations.**

102.    Defendant and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse and/or (2) using a prerecorded or artificial voice.

**ANSWER:  Nationstar denies that it made telephone calls using equipment that had the capacity to store, generate, or produce telephone numbers to be called using a random or sequential number generator.  Nationstar also denies using an automatic telephone dialing system. Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

103.    Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Class simultaneously and without human intervention.  Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

**ANSWER:  Nationstar denies that it made telephone calls using an automatic telephone dialing system, or that it placed calls without human intervention.  Nationstar is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.**

104.    By making, or having made on its behalf, the unsolicited telephone calls to Plaintiffs and the Class members' cellular telephones without their prior express consent, and by

utilizing an ATDS or pre-recorded voice to make those calls, Defendant has violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B).

**ANSWER: Nationstar denies violating any provisions of the TCPA or any other statutory or common law in any manner and denies using an automatic telephone dialing system.**

105. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Class have suffered invasions of privacy and actual damages, including in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

**ANSWER: Nationstar denies violating any provisions of the TCPA or any other statutory or common law in any manner. Nationstar also denies that Plaintiffs and the purported class they seek to represent are entitled to any damages, remedies, or recovery from Nationstar.**

106. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

**ANSWER: Nationstar denies violating any provisions of the TCPA or any other statutory or common law in any manner. Nationstar also denies that Plaintiffs and the purported class they seek to represent are entitled to any damages, remedies, or recovery from Nationstar.**

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

(Unconstitutionality)

47 U.S.C. § 227(b)(3), allowing open-ended statutory damages for "each such violation" without limitation, is invalid on its face and as applied to Nationstar as violating the First Amendment and Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution.

## SECOND AFFIRMATIVE DEFENSE

(No Automatic Telephone Dialing System)

Nationstar did not use an "automatic telephone dialing system" as defined by the TCPA to make the calls alleged in the SAC because Nationstar's equipment lacked the capacity to store, generate, or produce telephone numbers to be called using a random or sequential number generator.

## THIRD AFFIRMATIVE DEFENSE

(No Charge for Calls)

Plaintiffs and others alleged to be members of the purported class were not "charged" for the alleged telephone calls, as required to state a claim under the TCPA because they are not subscribers of the telephone numbers at issue.

## FOURTH AFFIRMATIVE DEFENSE

(Prior Express Consent)

Plaintiffs and others alleged to be members of the purported class gave Nationstar prior express consent for the telephone calls at issue in this action, either by providing their respective telephone numbers to Nationstar or in a different manner allowed under the TCPA. 47 U.S.C. §

227(b)(1)(A).

## FIFTH AFFIRMATIVE DEFENSE

### (Not a "Called Party")

Plaintiffs and others alleged to be members of the purported class do not qualify as a "called party," within the meaning of the TCPA because they were not the intended recipients of the alleged calls dialed by Nationstar and/or were not the subscribers of the telephone numbers at issue.

## SIXTH AFFIRMATIVE DEFENSE

### (Unintended Recipient)

Plaintiffs and others alleged to be members of the purported class who did not have a mortgage serviced by Nationstar were the unintended recipients of any calls made by Nationstar.

## SEVENTH AFFIRMATIVE DEFENSE

### (Non-Telemarketing Calls)

The calls alleged by Plaintiffs, Jordan, Childress and Somers were not for telemarketing purposes.

## EIGHTH AFFIRMATIVE DEFENSE

### (Existing Business Relationship)

Plaintiffs and others alleged to be members of the purported class have an existing business relationship with Nationstar because they have a mortgage serviced by Nationstar.

## NINTH AFFIRMATIVE DEFENSE

### (Class Treatment Inappropriate)

To the extent Plaintiffs seek to bring this SAC on behalf of a class, this action cannot be maintained as a class action because, *inter alia*, Plaintiffs do not and cannot satisfy the

requirements of Rule 23 of the Federal Rules of Civil Procedure

## TENTH AFFIRMATIVE DEFENSE

(Compliance with the Law)

Plaintiffs' claims and the claims of others alleged to be members of the purported class may be barred because the acts or omissions of which Plaintiffs complain have been approved and/or mandated, implicitly or expressly, by applicable statutes and regulations, including the TCPA.

## ELEVENTH AFFIRMATIVE DEFENSE

(Good Faith/Conformance with Applicable Standards)

Plaintiffs' claims and alleged damages, and the claims and alleged damages of others alleged to be members of the purported class, may be barred because Nationstar at all times complied in good faith with all applicable statutes and regulations, and Plaintiffs and the members of the purported class are not entitled to treble damages.

## TWELFTH AFFIRMATIVE DEFENSE

(No Malice)

Nationstar specifically denies that it acted with any knowledge, willfulness, oppression, fraud, or malice towards Plaintiffs or others, and therefore Plaintiffs and the members of the purported class are not entitled to treble damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Right to Compel Arbitration)

Nationstar reserves its right to compel arbitration of this matter, pursuant to the relevant agreement with Plaintiffs and others alleged to be members of the purported class.

**WHEREFORE**, Nationstar prays for judgment as follows:

1.      That Plaintiffs and the members of the putative class take nothing by reason of the SAC;

2.      For its costs of suit herein;

3.      For attorneys' fees according to proof; and

4.      For such other and further relief as this Court may deem just and proper.

Dated:  October 19, 2015

NATIONSTAR MORTGAGE, LLC

By:   /s/ Henry Pietrkowski
               One of its attorneys

Henry Pietrkowski
Timothy R. Carraher
Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
Phone: 312.207.1000
Fax: 312.207.6400
hpietrkowski@reedsmith.com
tcarraher@reedsmith.com

*Attorneys for Defendant*
*Nationstar Mortgage, LLC*

## CERTIFICATION OF SERVICE

On October 19, 2015, I caused the foregoing Answer to Second Amended Class Action Complaint to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to counsel for all other parties of record.


/s/ Henry Pietrkowski