UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br>v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company,<br><br>　　　　　　　　　　Defendant. | Case No. 14-cv-10457<br><br>Hon. Edmond E. Chang |

## OBJECTION OF C. JEFFREY THUT

## STANDING AND PROCEDURES TO OBJECT

Objector's full name, address and telephone number are as follows:

C. Jeffrey Thut
21331 W. Prescott Court
Kildeer, Illinois, 60047
Email: jeffthut@gmail.com

Objector is a class member who has timely filed a claim and therefore has standing to make this objection. *See* Declaration of C. Jeffrey Thut, Exhibit A hereto, incorporated by reference as though set forth in full. The cellular telephone number at which I received calls from Nationstar is (847) 508-4274. Objector is represented by Noonan, Perillo & Thut and Bandas Law Firm, PC. Noonan, Perillo & Thut, Chris Bandas, and Bandas Law Firm do not presently intend on making an appearance for themselves or their firms. The statement of the objections and the grounds thereof are set forth below. Objector does not intend on appearing at the fairness hearing either in person or through counsel but asks that this objection be submitted on the papers for ruling at that time. Objector relies upon the documents contained in the Court's file in support of these objections. Objection is made to any procedures or requirements to object in this case that require information or documents other than those that are contained herein on grounds that such requirements seek irrelevant information to the objections, are unnecessary, unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Objector's and counsel's due process rights and/or Rule 23.

## SUMMARY OF OBJECTIONS

1. The proposed settlement is not fair, adequate and reasonable because it fails to compensate class members based upon the number of automated phone calls they received and grossly undercompensates the class on a per member basis; and

2

2. Class counsel's request for attorneys' fees is excessive and should be denied or, at minimum, substantially reduced.

## INTRODUCTION

Before the Court is a proposed settlement in a Telephone Consumer Protection Act ("TCPA") class action against Nationstar Mortgage LLC. The settlement provides a non-reversionary $12.1 million common fund that covers costs of settlement administration, service awards, notice, attorneys' fees and expenses, and payments to the class following a claims procedure.

The class is defined as:

> All persons in the United States for whom Nationstar Mortgage, LLC had in its records a cellular telephone number as of the date of this [October 14, 2015] Order.

Preliminary Approval Order, Doc. 60, at 2, ¶ 3; Doc. 56-1, at 12 ¶ 1.30. "Defendant's records indicate that it possesses the cellular telephone numbers of approximately 2.1 million individuals." Declaration of Rafey S. Balabanian in Support of Plaintiffs' Motion for Preliminary Approval, Doc. 55, p. 4, ¶ 14. Thus, there are 2.1 million potential class members.

Class counsel requests $3.69 million in attorneys' fees (36% of the net common fund) in a case that was on file for two to three months before the parties began settlement negotiations and in which no significant post-discovery motions have been filed. *Id.* at 3, ¶¶ 7-8 (case was filed on December 30, 2014 and the parties began to discuss resolution of the claims after February 17, 2015); Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Doc. 51 (filed October 2, 2015).

## OBJECTIONS

**The Proposed Settlement Is Not Fair, Adequate, And Reasonable.**

The proposed settlement in this case is not fair, adequate or reasonable. It provides pennies on the dollar for the members' claims, fails to compensate members consistent with the TCPA, and distributes an excessive amount (36%) of the net settlement fund to class counsel at the expense of the class.

After distributing the requested $3.69 million in attorneys' fees to class counsel,[1] $1.7 million for notice expenses, and $40,000 in incentive awards,[2] the common fund will be left with $6.67 million to compensate 2.1 million potential class members. And, that is not considering the unknown remaining settlement expenses, which are certain to be considerable.

It is impossible to know the actual value of the settlement per claimant because class counsel has yet to disclose actual claim numbers. If the remaining $6.67 million is divided among the 2.1 million class members, it is a meager $3.17 per class member ($6,670,000 % 2.1 million potential class members= $3.17). Given the diminutive net settlement fund relative to the class, even anticipating a low claims' rate, the per-claimant recovery is likely to be lower than the norm for TCPA claims. *See e.g., Gehrich v. Chase Bank USA, N.A.*, 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) (citing *Ott v. Mortg. Investors Corp. of Ohio, Inc.*, 2016 WL 54678, at *1 (D. Or. Jan. 5, 2016) ($140.86); *Kolinek v. Walgreen Co.*, 31 F.R.D. 483, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) ($30); *Wilkins*, 2015 WL 890566, at *5 ($93.22); *In re Capital One*, 80 F. Supp. 3d at 789 ($34.60); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) ($20 to $40)).

The proponents of this settlement have the burden of proof on fairness and should provide

---

[1] *See* Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards, Doc. 70, at 2.
[2] *See* Plaintiffs' Memorandum of Law in Support of Motion for Approval of Attorneys' Fees, Expenses, and Incentive Award, Doc. 72-1, at 16.

4

the Court with all of the claim data on known TCPA settlements. The $6.67 million for 2.1 million class members is even more inadequate considering the civil penalties available under the statute. Under the TCPA, prevailing class members would be entitled to a civil penalty of $500 per automated call, more if proof of willfulness can be shown. *See* 47 U.S.C. § 227(5)(B)-(C).

The proposed settlement is also unfair because it does not compensate class members in the way the TCPA does: that is per automated call, and not per claimant. "It is perfectly fair and reasonable, and indeed common and accepted, for settlement benefits to turn on the strength of class member's claims." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Supp.2d 891, 948 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014). Under the proposed settlement, a class member who receives one thousand automated calls from Nationstar receives the same settlement as a class member who receives a single call. Objection is made to the proposed settlement on the grounds that compensation is both inadequate and unfair given the size of each civil penalty available under the TCPA and the lack of proportionality of how the proceeds are distributed based upon the number of calls to each class member. The settlement is unfair and should be disapproved.

Objection is further made that the proposed "prospective" relief in the settlement is entirely illusory, and provides no relief that was not already available to class members. The settlement provides that "Nationstar agrees to implement procedures to ensure that (i) Settlement Class members will not receive Telephone Calls *if they affirmatively submit a Revocation Request* in accordance with this Agreement, and (ii) after the Effective Date, Nationstar will effectuate any requests not to receive Telephone Calls in a reasonable and effective manner." Doc. 55-1, at 14-15, ¶12.1 (emphasis added); *see also* Doc. 60, p.3 at ¶ 9. There is no reason why any class member could not make these requests independent of the settlement, nor any reason to believe that Defendant will be more likely to honor these requests than in the past.

**Class Counsel's Fee Request Is Excessive.**

Class counsel's requested $3.69 million in attorneys' fees, which is 36% of the net settlement fund, must be viewed in the context of the district court's duty to absent class members "akin to the high duty of care that the law requires of fiduciaries." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). The attorneys' fees here will be taken from the common fund, and each dollar awarded to class counsel will be taken from the class. Class counsel's fee request must be examined this inherent potential conflict of interest with the class in mind.[3]

According to the Class Notice, "Class Counsel will ask the Court for attorneys' fees and expenses of up to 34.1% of the Settlement Fund. . . ." Class Notice, at 4, ¶13. Class counsel has also moved for attorneys' fees in the amount of $3.69 million, which they acknowledge constitutes 36% of the net settlement fund.[4]

The reasonableness of the $3.69 million in attorneys' fees must be measured against the common fund after deducting the estimated expenses of $1.7 million for providing notice and $40,000 for incentive awards. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("[T]he ration that is relevant to assessing the reasonableness of attorneys' fees that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received"); *see also Pearson*, 772 F.3d 778, 781 (7th Cir. 2014); *Gehrich v. Chase Bank USA, N.A.*, 12 C 5510, 2016 WL 806549, at *14 (N.D. Ill. Mar. 2, 2016) (reducing the common fund by the cy pres, administrative expenses, and incentive awards to determine the amount class members would receive for consideration of attorneys' fees). These expenses reduce the common fund to $10.3 million. Class counsels' proposed recovery of $3.69 million is 36% of the fund.

---

[3] For the reasons stated herein, objection is made based upon Class Counsel's conflict of interest with respect to the attorney fee application and based upon their adequacy as counsel.

[4] *See* Plaintiffs' Memorandum of Law in Support of Motion for Approval of Attorneys' Fees, Expenses, and Incentive Award, Doc. 72-1, at 2.

6

On a pure percentage basis alone, this amount is far above the benchmark for common fund cases. A 24% percentage of settlement fund recovery is in the normal range of fees recovered in common fund cases. *See In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir.2011) (noting "an academic study which had found that between 1993 and 2002 the average awards of attorneys' fees in common fund consumer class actions had been either 16.2 or 24.3 percent of the amount of the settlement, depending on which of two datasets were consulted"); *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir.1998) (observing that "[s]ome courts have suggested 25 percent as a benchmark figure for a contingent-fee award in a class action"). Thus, under the straight percentage of recovery method, class counsels' request for attorneys' fees is unfair and unreasonable.

This requested 36% of the net settlement (or even 30% of the gross settlement fund) is also out of step with the Seventh Circuit's establish "market price" analysis. "[T]he Seventh Circuit has instructed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). That is, "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Sols., Inc.* 739 F.3d 956, 957 (7th Cir. 2013). The primary "consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation." *Redman*, 768 F.3d at 634. Further, the courts should set a fee "by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred." *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246-47 (7th Cir. 2014).

The "market price" for attorneys' fees in a TCPA class is not 36% or anywhere close to it. The average "market price" percentage in relatively small TCPA cases like this one is probably 25%,

and certainly not 36%.⁵ Even a 25% recovery would be grossly excessive in this case. Indeed, a sophisticated buyer in a competitive marketplace would not agree to such a windfall given the unexceptional results here.

Class counsel's contention that the escalated fee can be justified because of the risk and uncertainty of litigation⁶ is belied by the fact that this settlement follows a myriad of similar TCPA cases "in this District and elsewhere that . . . established a template for TCPA litigation against large financial institutions, vastly reducing the uncertainty and risk for Class Counsel." *Gehrich*, 2016 WL 806549, at *16 (citing *Wilkins v. HSBC Bank Nev., N.A.*, 2015 WL 890566; *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F.Supp. 3d 781 (N.D. Ill. 2015)). Further, it is unreasonable to suggest that class counsel would have expected the case to be more difficult to resolve *ex ante*. Considering the aforementioned ubiquitous TCPA settlements, "it likely was clear very early that settlement was likely." *Id.* at *17. This notion is supported by the fact that the parties entered settlement negotiations after only two to three months after filing suit and before any significant motion practice. *Id.*; Declaration of Rafey S. Balabanian in Support of Plaintiffs' Motion for Preliminary Approval, Doc. 55, at 3, ¶¶ 7-8.

Objection is further made that class counsel's proposed attorneys' fees award of $3.69 million also fails to take in account the sliding-scale approach, which recognizes that "as the dollar value of the common fund increases, the percentage of the settlement awarded as attorney fees generally decreases." *Gehrich*, 2016 WL 806549, at *7 (citing *Silverman*, 739 F.3d at 959); Brian T.

---

⁵ *See Rose v. Bank of America Corp., et al.*, 2014 WL 4273358, at *10 (N.D. Cal. August 29, 2014) (noting that "[t]he Court compared a number of TCPA class action settlements in which attorneys from the instant case participated: in *Grannan*, 2012 WL 216522, a granted request for 25% of the Settlement Fund reflected a multiplier of 1.47. In *Adams v. AllianceOne, Inc.*, 08–CV–248–JAH (S.D.Cal. Sept. 28, 2012), a granted request for 30% of the Settlement Fund reflected a multiplier of 3.81. In *Arthur v. Sallie Mae, Inc.*, 10–CV–198–JLR (W.D.Wash.), a granted request for 20% of the Settlement Fund reflected a multiplier of 2.59"); *see also Arthur v. Sallie Mae, Inc.*, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012).

⁶ *See* Plaintiffs' Memorandum of Law in Support of Motion for Approval of Attorneys' Fees, Expenses, and Incentive Award, Doc. 72-1, at 17.

Fitzpatrick, *An Empirical Study of Class Actions Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010); *see also In re Synthroid*, 264 F.3d at 721 ("Both negotiations and auctions often produce diminishing marginal fees when the recovery will not necessarily increase in proportion to the number of hours devoted to the case").

In addition, in TCPA cases it is becoming commonplace to require both an analysis of a percentage *and a lodestar*. Class Counsel should be required to submit their detailed, daily, contemporaneous, non-duplicative (with other TCPA litigation) hours spent in this case for the purpose of conducting a lodestar cross-check against the reasonableness of any proposed percentage fee (or a full-blown lodestar analysis, with a percentage cross-check).

In *Rose v. Bank of America Corp., et al.*, 2014 WL 4273358 (N.D. Cal. August 29, 2014), a lodestar analysis resulted in fees being reduced from the requested 25% benchmark percentage (slightly in excess of $8 million) to $2,402,243.91 (a 2.59 multiplier). This Court should likewise require a lodestar cross-check (or a full-blown lodestar analysis) of fees to ensure class counsel does not receive a windfall. In *Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014), the 7th Circuit recently affirmed a district court's use of the lodestar methodology in determining a reasonable fee in a TCPA class action, that would also be an acceptable methodology to determine fees in this case, perhaps with a percentage of recovery cross-check. If the Court does apply a percentage analysis as the primary tool of analyzing attorneys' fees, it should apply a lodestar cross check.

Objector incorporates by reference all other objections, if any, filed in opposition to this proposed settlement or award of attorneys' fees that are not inconsistent with this objection.

## CONCLUSION

Objector request that this settlement be rejected. In the alternative, Objector requests that the proposed award of attorneys' fees be rejected or, at minimum, substantially reduced.

9

DATED: April 1, 2016

Respectfully submitted,

_____
C. Jeffrey Thut
Noonan, Perillo & Thut
25 N. County Street
Waukegan, IL 60085
Telephone:  (847) 244-0111
Facsimile:  (847) 244-0513
Email: jthut@npt-law.com

Attorneys for Objector/Class Member

**Certificate of Service**

The undersigned certifies that today he filed the foregoing objection and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing. The undersigned further certifies he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Objection and associated exhibits upon the following.

DATED: April 1, 2016

Rafey S. Balabanian
EDELSON PC
350 North LaSalle Street
Suite 1300
Chicago, IL 60654

Abraham J. Colman
Raymond Y. Kim
REED SMITH LLP
355 South Grand Ave.
Suite 2900
Los Angeles, CA 90071

/s/ C. Jeffrey Thut
C. Jeffrey Thut