UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN SEAN HALBERT, DANA SKELTON VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>v.<br><br>NATIONSTAR MORTGAGE LLC,<br>          Defendant. | Case No. 14-cv-10457<br><br>Hon. Edmond E. Chang |

**OBJECTION TO MOTION FOR ATTORNEYS' FEES
OF CLASS MEMBER CONNIE PENTZ**

Class member Connie Pentz, 1 Highland Road, East Stroudsburg, PA 18301, cell phone # 570-817-1193, hereby objects to the request for attorneys' fees. Mrs. Pentz received unsolicited, prerecorded phone calls related to a mortgage loan on her cell phone (#570-817-1193) from Nationstar, and is therefore a class member. She received individual mailed notice of this settlement. A copy of Mrs. Pentz's filed claim form is attached hereto as *Exhibit A*.

**I.   36% Is An Excessive Percentage Fee In This Uncomplicated Litigation; Class Counsel Should Receive No More Than 20% of the $10 Million Net Fund, or $2 Million.**

As demonstrated by the attached Expert Report of Todd Henderson (attached hereto as *Exhibit B*), recently filed in a similar TCPA class action settlement, a reasonable market rate *ex ante* fee in this case would be 20%, not 36%. As Professor Henderson explains, a reasonable client would negotiate an *ex ante* percentage fee designed to provide Class Counsel with a modest lodestar multiplier, but not an excessive windfall.

In a case expected to produce a $75 million settlement, the percentage figure recommended by Professor Henderson was 4.6%. Here, a reasonable *ex ante* percentage fee would be no more than 20%.[1]

Class Counsel claim in their fee motion that the unprecedented risk of this action requires an upward adjustment to the 30% fee rate set in *Synthroid* for antitrust cases. But the Henderson Report makes it clear that the very *low* risk posed in these cookie cutter actions mandates a downward adjustment to the percentage for the first $10 million of recovery. That conclusion was echoed most recently by this Court in *Gehrich v. Chase Bank USA, N.A.*, 2016 U.S. Dist. LEXIS 26184 (N.D. Ill., March 2, 2016)(a copy of this recent decision is attached hereto as *Exhibit C*).

> [W]hile the risks of nonpayment were real, they were not so great that they would have justified a fixed-percentage contingent fee for Class Counsel at the commencement of the case...[T]his case settled contemporaneously with or after several recent cases in this District and elsewhere that had established a template for TCPA litigation against large financial institutions, vastly reducing the uncertainty and risk for Class Counsel... Nor would Class Counsel likely have expected the case to be more difficult to resolve *ex ante*. In light of the aforementioned raft of TCPA settlements, some of which Class Counsel litigated themselves ... it likely was clear very early that settlement was likely – a notion supported by the fact that the parties entered settlement discussions after only nine months and before any significant motion practice.

*Id.* at *53. As Professor Henderson points out, class counsel has a 64% chance of recovering every dollar of time that they expend in these actions, and therefore a fee that provides a 1.57 multiplier fully rewards class counsel for the risk undertaken. *Exhibit B* at p. 3.

---

[1] This assumes that the amount of work necessary to obtain a $12 million settlement is not appreciably different from the amount necessary to achieve a $34 million one like in *Chase*. Therefore, assuming that Class Counsel's lodestar in this case is approximately $1 million, a 20% fee will provide Class Counsel with 200% of its lodestar.

Like in *Chase*, settlement mediation began in this case approximately one year after the cases were filed, and before any significant motion practice had occurred. While the core terms were not hammered out until June 2015, this case essentially entered the settlement track less than twelve months after filing, which removed any risk of non-recovery of at least Class Counsel's lodestar as of that date. As this Court recognized in its minute order dated February 17, 2015 (Document 21), "the TCPA issues do not appear right now to be especially complex, and it would be wise to dedicate current efforts to the mediation." The parties have been working on finalizing the settlement's terms for the past year, a time period when the risk of nonpayment was non-existent. While Class Counsel should certainly be paid for this time, they should not receive any lodestar multiplier for post-settlement-in-principle time.

**II.     There is no Basis in Law for an Upward Adjustment to a 30% Market Rate Fee Percentage.**

Class Counsel's claim that the 30% fee for the first band of recovery established in *Synthroid* is merely the starting point for further adjustment has no support anywhere in 7th Circuit fee jurisprudence. Perhaps these California lawyers have forgotten they are in the 7th Circuit, not the Ninth, where the Court uses a benchmark figure of 25% and then permits upward or downward adjustments to that benchmark based upon various factors. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). In contrast, this Circuit employs the market rate, which, once established, controls the fee without any adjustments. The risk of non-recovery for the first $10 million is *already* reflected in the market rate, otherwise it would not be the market rate, which is determined primarily by risk. Moreover, even if this were the 9th Circuit, the considerably reduced risk noted by this Court in *Chase, supra*, and documented by

3

Professor Henderson, would require a downward adjustment to the 25% benchmark in any event. Antitrust cases are notoriously more risky than TCPA ones, and the 30% market rate for the first $10 million of recovery is assuredly not the market rate for TCPA cases.

### III. Class Counsel Should Be Required to Disclose Their Lodestar as this Court Required in *Chase*.

One of the factors used by courts to adjust a percentage fee is the amount of time devoted to the case by class counsel. *See Gehrich v. Chase, supra*, at *9 ("After an approval hearing on October 22, 2015, the court asked Class Counsel to file lodestar data"). Here, Class Counsel has deliberately hidden that number from this Court, most likely because it is small, and because the requested 36% fee represents an excessive multiplier, and certainly one higher than the 1.6 multiplier necessary to fully compensate Class Counsel for their risk. *See Henderson, Exhibit B*. Especially when the lodestar run up by five separate firms all filing overlapping and duplicative actions is taken into account, a fee of no more than 20% would provide a more than generous return on Class Counsel's reasonable lodestar in this case. In any event, it is Class Counsel's burden to prove that this is not the case by putting in detailed records of their lodestar, which they have failed to do.

The Seventh Circuit held in *Synthroid* that while this Circuit follows the market rate method, the market rate may consist of a specific multiple of class counsel's lodestar calculated at negotiated rates. The market rate can be "a percentage of recovery [or] a lodestar hourly rate and a multiplier for risk-bearing. (The greater the risk of loss, the greater the incentive compensation required.)" *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001). A lodestar-multiplier fee agreement would be particularly

4

appropriate in TCPA cases, where the likely amount of recovery cannot be accurately forecast at the outset of a case, given the asymmetrical access to information possessed by the parties.

What TCPA plaintiffs do know, however, is what Professor Henderson has disclosed in his Report: (1) TCPA class actions involve relatively small investments of time, and (2) TCPA cases carry relatively low risk of non-recovery (64% of these cases settle). This means that TCPA plaintiffs could negotiate a market rate fee equal to class counsel's lodestar (calculated at reasonable negotiated rates) enhanced by a multiplier of 1.57 or slightly higher. This rate would be guaranteed to provide class counsel with a positive rate of return on their investment in the case, while avoiding the windfall that would result from the negotiation of an arbitrary percentage amount before anyone knows how much the case is likely to settle or verdict for, how long it will last, or how many hours class counsel will spend on it.

Class Counsel invested relatively little time in the prosecution of this case. *Cf. Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007)(class counsel's lodestar in securities class action was $5.69 million). All of Class Counsel's arguments in favor of a 36% fee are belied by the low amount of their lodestar.[2] A 20% fee would compensate Class Counsel at more than twice their hourly rate for every hour worked. How is the one year of procedural maneuvering and continued motion practice not fully rewarded by twice the lodestar amount, which presumably reflects any risk that attached at that time? And time

---

[2] Again, drawing an adverse inference from Class Counsel's failure to disclose this figure. Once the Court orders that the time records be filed, this amount can be determined with precision, and duplicative time can be eliminated. Moreover, time incurred by non-co-lead counsel after February 17, 2015 must be closely scrutinized to ensure compliance with this Court's order appointing co-lead counsel, namely, that the executive committee not needlessly run up hours doing tasks rendered superfluous by mediation and settlement.

incurred after the June 2015 memorandum of understanding does not warrant any multiplier, as any risk of nonpayment all but disappeared at that point.

This case was settled less than six months after it was filed. While it took another four months to hammer out the Settlement Agreement, this does not mean that any substantial risk of non-payment remained after a settlement in principle was agreed to in June 2015. Therefore, unlike those cases in which the market rate may be as high as 30%, in this case the market rate is much lower because of the fact that these cases are routine, and because the defendant agreed to participate in mediation of this case within two months of filing, and settled it within six months of filing.

## CONCLUSION

For the foregoing reasons, this Court should award a fee to Class Counsel of no more than 20% of the net Settlement Fund, which is the market rate for this low-risk, short-duration action, and which amply rewards the lodestar of the firms that filed this Illinois action.

_____
Connie Pentz

        Respectfully submitted,
        Connie Pentz,
        By her attorney,

        */s/ John J Pentz*
        John J. Pentz
        19 Widow Rites Lane
        Sudbury, MA 01776
        Phone: (978) 261-5725
        jjpentz3@gmail.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that the foregoing document was filed via the ECF filing system of the USDC for the ND IL on April 4, 2016, and that as a result electronic notice of the filing was served upon all attorneys of record.

                                          */s/ John J. Pentz*
                                          John J. Pentz

Case: 1:14-cv-10457 Document #: 80 Filed: 04/04/16 Page 7 of 8 PageID #:849

incurred after the June 2015 memorandum of understanding does not warrant any multiplier, as any risk of nonpayment all but disappeared at that point.

This case was settled less than six months after it was filed. While it took another four months to hammer out the Settlement Agreement, this does not mean that any substantial risk of non-payment remained after a settlement in principle was agreed to in June 2015. Therefore, unlike those cases in which the market rate may be as high as 30%, in this case the market rate is much lower because of the fact that these cases are routine, and because the defendant agreed to participate in mediation of this case within two months of filing, and settled it within six months of filing.

## CONCLUSION

For the foregoing reasons, this Court should award a fee to Class Counsel of no more than 20% of the net Settlement Fund, which is the market rate for this low-risk, short-duration action, and which amply rewards the lodestar of the firms that filed this Illinois action.

*Connie Pentz*
Connie Pentz

 

Respectfully submitted,
Connie Pentz,
By her attorney,

/s/ John J Pentz
John J. Pentz
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
jjpentz3@gmail.com

6