UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HEATHER WRIGHT, et. al.<br>    Plaintiffs<br><br>vs.<br><br>NATIONSTAR MORTGAGE, LLC<br>    Defendant | Case No. 1:14-cv-10457<br><br>Assigned to the Honorable<br>Edmond E. Chang |

## OBJECTION

Objectors William Youngblood and Kerry Youngblood hereby object to the Settlement in *Heather Wright, et. al. v. Nationstar Mortgage, LLC*, Case No. 1:14-cv-10457 as follows:

### PRELIMINARY STATEMENT

We, William Youngblood and Kerry Youngblood, of 440 Wyoming Street, Wilkes Barre, Pennsylvania 18706, are class members in *Heather Wright, et. al. v. Nationstar Mortgage, LLC*, Case No. 1:14-cv-10457. Our cell phone numbers are 570-750-0163 and 570-760-0164, respectively.

### INADEQUATE RELIEF

The Class cannot determine the reasonableness, adequacy, or fairness of the cash relief because Class Counsel neither indicates the Class size in the notice or in its fee motion. The Class cannot determine settlement fairness without knowing how many people are valid Class Members. Class Counsel estimates that "the amount Class Members will receive will depend[s] on the total number of valid claims received. The lower the number of valid claims submitted, the higher the amount of individual payments will be. As the number of valid claims submitted goes up, the amount of individual payments will go down." Is that after fees, notice and administrative costs, and incentive awards? Does the range contemplate an equal amount across

all Class Members? Does this take into account the average claims rate for claims-made settlements? If not, claims-made settlements have an average claims rate of about 9% or less. How many claims have been submitted to date? It is unfair to the Class that only 1 out of 10 Class Members will receive payment in exchange for a full release of all claims.

The relief also is unfair because it does not adequately compensate Class Members for their waiver of any applicable state or common law claims. State and common law claims were never pled in this case and it would be unreasonable and unfair for the Defendant to sweep those claims into the Class Release. There is no indication that Class Counsel adequately investigated state and common law claims. Unless Defendant increases the total settlement amount, the Court should limit the scope of the release to TCPA claims alone.

The settlement agreement is unfair because it does not adequately compensate Class Members for their waiver of TCPA claims. The Settlement Agreement releases Defendant from "any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations …, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on TCPA or other federal, state, local, statutory or common law or any other, law, rule or regulation, including any law or any jurisdiction outside the United States, against the Released Parties." Statutory damages under the TCPA are $500 per violation. There is no indication that Class Counsel adequately investigated the TCPA violations to make any sort of determination as to these damages. Further, there is no evidence in the Notice that each class member will receive the maximum $500 per violation in statutory damages in exchange for their

Full and Final Release of all claims against Defendants. In fact, the Notice never notified the class members that they may be entitled to significantly more in damages pursuant to the TCPA than is proposed in the Settlement Agreement. This is inadequate and unfair in light of the Released Claims. Neither the Notice nor the Settlement Agreement informs the class members as to the specific potential damages they are waiving by accepting the Settlement.

## INADEQUATE NOTICE

The Notice and settlement are inadequate because they do not provide for how unclaimed and/or remaining settlement funds will be distributed. The settlement does not contemplate a *cy pres* beneficiary and distribution. The Class has the right to know how unclaimed settlement funds will be distributed and ultimately used. No stipulation for unclaimed/remaining settlement funds was made here. The Settlement Agreement merely provides that "all uncashed checks issued to Class Members and any unclaimed money in the Settlement Fund will be equally redistributed to the other claiming Class Members *if practical*, or otherwise as directed by the Court" (emphasis added). What is "practical?" And who makes that determination? Class Members deserve to know who will receive unclaimed funds and how the funds will be used. The absence of such information makes the notice and the settlement inadequate.

The notice program is not the best practicable notice under the circumstances. Did an expert submit a report regarding the sufficiency of the notice program? The Claims Administrator is using mail to reach the class; however, there is no indication as to how many valid mailing addresses the Claims Administrator has. More significantly, there is no indication as to whether or not the Administrator is performing a change of address search for claimants that already submitted claims under the Initial Settlement Agreement, or for other class members in defendants' records. There also is no explanation as to what steps the Claims Administrator

will take if mailed notice is returned as undeliverable. What is the likelihood that the notice program will notify the majority of the class? There is also no indication as to whether or not the Administrator is performing a change of address search other class members in defendants' records. There also is no explanation as to what steps the Claims Administrator will take if mailed notice is returned as undeliverable. What is the likelihood that the notice program will notify the majority of the class?

## EXCESSIVE INCENTIVE AWARD

The requested incentive award is excessive and unfair to the Class. Incentive awards are appropriate if compensation would be necessary to induce an individual to become a named plaintiff in the suit (see *Montgomery v. Aetna Plywood, Inc*, 231 F.2d 399, 410 (7th Cir. 2000)). Here, an incentive award is not required because Plaintiffs had individual claims. Regardless of whether or not an incentive award would be necessary to induce an individual to become a named plaintiff, a lead plaintiff's participation must still justify the award request (see *Cook v. Niedert*, 142 D.3d 1004, 1016 (7th Cir. 1998)). What did Plaintiffs Wright, Stewart, Childress, Jordan, Halbert, Skelton, Ruggles, and Somers do to protect the interests of the class? To what degree did the class benefit from those actions? How much time and effort did they expend in pursuing the litigation? Were they deposed? What risks did they face? The purpose of an incentive award is to compensate named plaintiffs for the risks they take and their role as a class fiduciary. Here, a $5,000 incentive award request for each of the eight class representatives – totaling $40,000 - is excessive, unreasonable, and unfair to the Class without an explanation justifying such a premium. Such amounts are unreasonable in comparison to the results achieved for Class Members. If class representatives and their attorneys routinely expect the Court to award thousands of dollars in awards on top of their share of the settlement benefits, class

representatives may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to protect. The Class has no way of knowing how much they will receive, as described above, and thus has no way of knowing how this incentive award compares to each Class member's award. Will Plaintiffs Wright, Stewart, Childress, Jordan, Halbert, Skelton, Ruggles, and Somers receive an incentive award on top of her Class benefits? Plaintiffs Wright, Stewart, Childress, Jordan, Halbert, Skelton, Ruggles, and Somers should not be permitted to collect both Class Benefits and an incentive award.

The Court should not approve this settlement because it unfairly compensates unharmed individuals. Plaintiffs Wright, Stewart, Childress, Jordan, Halbert, Skelton, Ruggles, and Somers have not established standing because they have not demonstrated any injury from Defendant's conduct. While some Class Members may have suffered harm from Defendant's conduct, such as Class Members with actual TCPA claims against Defendant, Plaintiffs Wright, Stewart, Childress, Jordan, Halbert, Skelton, Ruggles, and Somers do not appear to have suffered any harm.

Is the same compensation being given to those class members who only received one call as opposed to multiple calls? The FCC permits first-time calls to reassigned telephone numbers, which includes an undefined portion of the Class. Callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make those calls are permitted to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment (see FCC 15-72).

## EXCESSIVE FEE AWARD

In light of the above points, Class Counsel's fee request is excessive and unreasonable. The results achieved for the Class do not support a fee award equal to 34.1 percent - more than

one third - of the settlement. There is no explanation, much less a credible explanation why class counsel should recover such a high percentage. Other class action fee awards do not sufficiently support Class Counsel's request. If less than 10% of the class submits a valid claim form, the Court should apply a lodestar analysis and award a fee accordingly. The court performed a similar analysis in *Americana Art China Company, Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243 (7th Cir. Feb. 18, 2014). In that TCPA settlement there was a claim rate of only 7%. Concerned about an inequitable distribution of attorneys' fees in light of the final payout to class members, the district court applied a lodestar analysis instead of awarding the requested one-third percentage. The Court should perform a similar analysis here, taking into account a reasonable hourly rate and the fact that this is not Class Counsel's first TCPA action and that Class Counsel likely used past research and analysis from prior litigation in this case.

Class actions are not representative of average civil cases. Thus, free market rates are not applicable. The Court should reduce Class Counsel's requested fee percentage. Additionally, Class Counsel should not be permitted to request a percentage of the total settlement package. The total settlement package is a combination of costs and class benefits. Further, the percentage should not be based on what is intended to go to class members but rather what is actually being distributed to class members pursuant to claims made. Costs, such as notice and administration, are not benefits and should not be included in the calculation of Class Counsel's award. Class Counsel's award should be a reasonable percentage of the total Class recovery (i.e. all moneys paid to Class Members) and exclude settlement costs.

## PROCESS FOR EXCLUSION

The process for exclusion is unreasonably burdensome for class members. In order to request exclusion, a class member must mail a written document containing his or her intent to

be excluded. The Notice clearly states that, "You can't exclude yourself on the phone or by email." There is no reason why an electronic method could not have been made available for exclusion requests. An exclusion form should have been made into an electronic form, much like the online claim form. The current opt-out requirements harm the class insofar as class members incur out-of-pocket costs. An electronic process would have saved the class both time and money.

Dated: April 4, 2016

Vullings Law Group, LLC

By: _____
Brent F. Vullings, Esq.
Vullings Law Group, LLC
3953 Ridge Pike Suite 102
Collegeville, PA 19426
610-489-6060
Attorney for Objectors William and Kerry Youngblood