UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 14-cv-10457 |
| NATIONSTAR MORTGAGE LLC, a Delaware limited liability company, | ) ) ) ) | Honorable Edmond E. Chang |
| Defendant. | ) | |

## OBJECTION OF AMY JO MITCHELL

**NOW COMES** Class member, Amy Jo Mitchell ("Ms. Mitchell")[1], by and through her undersigned counsel,[2] and respectfully submits her Notice of Objection, Intention to Appear and Request to Be Heard at the May 19, 2016 at 10:00 a.m. Fairness Hearing:

> W. Allen McDonald
> LACY, PRICE & WAGNER
> 249 N. Peters Road, Suite 101
> Knoxville, TN 379234917
> Tel: 865-246-0800
>
> *Counsel for Amy Jo Mitchell*

---

[1] *See* Declaration of Amy Jo Mitchell, attached hereto.

[2] Ms. Mitchell's counsel requests that he be allowed to be heard via telephone at the Fairness Hearing.

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PERTINENT PROCEDURAL HISTORY AND FACTS. . . . . . . . . . . . . . . . . . . . . . . 2

III. PROPOSED SETTLEMENT "BENEFITS". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. MS. MITCHELL'S STATUS AS A MEMBER OF THE SETTLEMENT CLASS. . . . . . 3

V. STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI. STATEMENT OF OBJECTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. The Proposed Settlement Class Is Poorly Defined to the Extent That It Is Virtually Impossible for Persons Who Might Be Affected by the Proposed Settlement to Know If They Are Members of the Settlement Class. . . . . . . . . . . . 5

    B. The Proposed Settlement Benefits Inadequately Compensate Settlement Class Members for Their Injuries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. Class Counsel Seek an Exorbitant Percentage of Attorneys' Fees. . . . . . . . . . . . 9

        1. Class Counsel are not entitled to a fee of 36% of the settlement fund.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2. The lodestar method is the better approach to reward Class Counsel for their work in this case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    D. Class Counsel Are Not Entitled to a "Risk Premium" Adjustment of Nearly 6% (Or an Additional $600,000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    E. The Record and Result Achieved By Class Counsel Do Not Support Class Counsel's Requested Fee and Point to Class Counsel's Failure to Adequately Represent Class Members. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    F. Due to Their Limited Efforts, the Eight Named Plaintiffs Are Not Entitled to Incentive Awards of $5,000 Each. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. PRELIMINARY STATEMENT

Unfortunately for Settlement Class members, the proposed settlement suffers from fundamental deficiencies that cannot be easily cured, not the least of which are the bewildering class definition, the inadequacy of settlement relief, the unexplained lack of vigor in which Class Counsel litigated the claims before reaching a quick settlement, the excessive attorneys' fee sought for those efforts, and the request for $40,000 to reward named Plaintiffs for allowing their names to be used.

Ms. Mitchell respectfully submits this objection to the proposed settlement for four distinct reasons. First, the proposed settlement is unfair and inadequate because it fails to properly and discernibly define the class of persons who would purportedly benefit from it. Second, the proposed $12.1 million settlement fund fails to sufficiently compensate Settlement Class members for their injuries. The proposed settlement provides dubious benefits to approximately 2.1 million Class members, leaving no more than $6,670,000 in the settlement fund after $1,700,000 is paid for notice and administrative costs, $3,690,000 is paid to Class Counsel, and another $40,000 is paid to eight named Plaintiffs as incentive awards. Third, the attorneys' fees sought by Class Counsel would bestow an excessive reward on them for a case which, by any reasonable account, was lightly litigated, quickly settled, and produced a poor result to affected Class members but a disproportionally rich reward for their lawyers. Fourth, eight named Plaintiffs seek incentive awards of $5,000 a piece, notwithstanding the fact that the record reflects that they did little more than allow their names to be used by their lawyers to file complaints. To be sure, all things considered, the proposed settlement represents a dismal result.

The reality is that the proposed settlement gives preferential treatment to Class Counsel, not to the unnamed consumers whose interests they were appointed to safeguard. For the reasons

explained below, final approval should be denied. If the proposed settlement is approved, attorneys' fees should be reduced to more appropriately compensate Class Counsel. Finally, any incentive awards should reflect the named Plaintiffs' limited efforts in the litigation.

## II.     PERTINENT PROCEDURAL HISTORY AND FACTS

This action was filed on December 30, 2014, alleging violations of the TCPA. [Doc. 1].[3] Plaintiffs alleged that Nationstar had engaged in the practice of making unsolicited calls without consent for the purpose of collecting alleged debts, reminding customers to pay mortgages, and for other non-debt collection reasons. [Doc. 1, at ¶¶ 2-4, 19].

On December 31, 2014, Plaintiffs filed a place-holder motion for class certification. [Doc. 3]. They amended their Complaint on February 3, 2015, adding additional named Plaintiffs, additional factual allegations, and intending to define four classes, but defining only three – a "No Mortgage Class," a "Mortgage Class," and an "Opt-Out Class." [Doc. 15]. Plaintiffs moved the Court for an order appointing Interim Co-Lead Counsel, for class certification, to suspend class certification briefing, and to continue the next status conference. [Doc. 18]. On February 17, 2015, the Court suspended briefing on class certification, appointed Interim Class Counsel, and suggested mediation. [Doc. 21].

On March 4, 2015, the parties participated in a private mediation. [Doc. 32, at Page ID#: 300]. On April 22, 2015, the parties submitted a report, asserting their respective positions on substantive, procedural, and scheduling matters, and indicating that mediation was scheduled for June 16, 2015. [Doc. 32].

---

[3]Five different cases were filed in federal courts across the country, making the same allegations and asserting the same claims, but were (apparently) consolidated. [Doc. 55].

On April 27, 2015, the Court held a hearing acknowledging the scheduled mediation, setting a discovery schedule, and ordering the parties to report back on June 23, 2015 with results of the mediation. [Doc. 35]. On that date, the parties advised the Court that they had "reached an agreement in principle." [Doc. 37].

On October 2, 2015, Plaintiffs filed a Second Amended Class Action Complaint amending the class definition to: "All individuals in the United States for whom Nationstar has in its records a cellular telephone number." [Doc. 50, at ¶ 94]. Plaintiffs also moved for preliminary approval of the settlement. [Doc. 51]. On October 14, 2015, the Court granted preliminary approval. [Doc. 59]. On March 21, 2016, Plaintiffs moved for $3,690,000 in attorneys' fees (36% of the net settlement fund) and incentive awards of $5,000 each to named Plaintiffs. [Doc. 70].

### III. PROPOSED SETTLEMENT "BENEFITS"

The gross settlement is $12,100,000. [Doc. 55-1, Page ID #:445]. After deductions for administrative costs ($1.7 million), attorneys fees ($3,690,000), and inventive awards ($40,000), the ultimate amount available to pay Settlement Class members would be $6,670,000. The proposed settlement also includes alleged non-cash benefits, *i.e.*, changes to existing policies and procedures essentially to insure no future violations of the TCPA. [Doc. 55-1, at Page ID#: 450].

### IV. MS. MITCHELL'S STATUS AS A MEMBER OF THE SETTLEMENT CLASS

Amy Mitchell ("Ms. Mitchell") received a postcard advising her about the proposed settlement. [*See* Mitchell Declaration, attached as Exhibit 1]. The notice informed Ms. Mitchell that if she received a call from Nationstar on her cellular telephone regarding a mortgage loan, she may be a Settlement Class member. Ms. Mitchell received such calls, to her cellular number – 865-679-0825. She submitted a claim for benefits on March 14, 2016, Claim Confirmation No. JYZ6GCWH.

## V. STANDARD OF REVIEW

> *"Because class actions are rife with potential conflicts of interests between class counsel and class members, district judges are expected to give careful scrutiny to the terms of the proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole."*[4]

Absent class members have little at stake and thus insufficient incentive to closely monitor class counsel and its strategic choices. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987). Accordingly, the role of the district court in evaluating proposed settlements is akin "to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002).[5] District courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Reynolds*, at 279).

"A class settlement cannot technically be approved unless, by definition, a class is upheld." 4 *Newberg on Class Actions* § 11.27 (4th ed. 2006). When the Court is asked to certify a class and approve its settlement in a single proceeding, the requirements of Rule 23(a), which are intended to protect the rights of absent class members, "demand undiluted, even heightened, attention." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

---

[4]*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (citations omitted) (collecting cases).

[5]A district court must act as a "fiduciary of the class," for the rights and interests of absent class members. *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)).

## VI. STATEMENT OF OBJECTIONS

### A. The Proposed Settlement Class Is Poorly Defined to the Extent That It Is Virtually Impossible for Persons Who Might Be Affected by the Proposed Settlement to Know If They Are Members of the Settlement Class.

The proposed settlement suffers from an elementary deficiency so fundamental that it is virtually impossible for people to know whether they are members of the Settlement Class, to wit: the class is clumsily defined as "all persons in the United States for whom Nationstar Mortgage, LLC had in its records a cellular telephone number [as of October 14, 2015]." [Doc. 60, ¶ 3]. Exactly how people are supposed to know whether Nationstar has their cellular numbers is not divulged.

"Before analyzing the Rule 23(a) requirements . . . a court must determine whether the class definition is adequate." *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006). A class should be accurately defined; certification should be denied where the class definition is "overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003). A class definition "must be definite enough that the class can be ascertained." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

Nothing in the record addresses the propriety of the class definition. By defining the Settlement Class such that Class members cannot make an independent determination as to whether they fit within it and in such a way as to permit only Nationstar to know its scope, Class Counsel produced an inadequate, broad, and over-inclusive class definition. Simply put, persons who have never received a telephone call from Nationstar, much less a call governed by the proposed settlement's terms, logically fall within the definition of the Settlement Class.

### B. The Proposed Settlement Benefits Inadequately Compensate Settlement Class Members for Their Injuries.

Class Counsel proclaim the proposed settlement as "strong," pointing to the "available monetary relief and the significant changes to Nationstar's telephone collection practices." [Doc. 72-1]. In fact, the settlement fund is insufficient to provide meaningful benefits to Class members, particularly in view of the Class-size and the $500 to $1500 in statutory damages available to Class members per violation. *See* TCPA, 47 U.S.C. §227(b)(3); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. Ill. 2012). Worse still, Class Counsel failed to provide any data to enable the Court to quantify the potential recovery for the Class.

According to Class Counsel, there are approximately 2.1 million Settlement Class members. If it is assumed that each Class member received a single unsolicited call, the theoretical statutory liability would range from an aggregate of $1,050,000,000 to $3,150,000,000. Assuming every Class member submitted a claim, individual Class members would theoretically receive $3.18 a piece.[6]

Notably, the Class Notice failed to approximate the amount of benefits which might ultimately be claimed by individual Class members, leaving all Class members in the dark as to the actual value of their claims.

In considering whether a class action settlement is fair, adequate and reasonable, a court

> "must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to the settlement among affected parties, the

---

[6]Plaintiffs initially surmised that "based on the expected rate of claims, the payment to claiming class members should be approximately $140." [Doc. 58, at Page ID#: 593]. However, Plaintiffs have offered nothing by way of tangible evidence to support their prognostication. In Class Counsel's declaration, however, they point to "a higher-than-expected rate of participation." [Doc. 74, at Page IDF#: 785].

> opinion of competent counsel, and the stage of the proceedings and
> the amount of discovery completed at the time of settlement.'"

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

A fair and detached analysis of the foregoing factors cannot reasonably result in a determination that this proposed settlement is a fair, adequate, and reasonable one. For example, as to the strength of Plaintiffs' claims, the TCPA claim is a strict liability claim. Either Class members received the unsolicited calls or they did not. Assuming Class Counsel did not push the envelope by filing an unmerited claim, the claim surely had substantial value. Moreover, Nationstar never filed the first motion challenging Plaintiffs' claims, nor did Class Counsel make an effort to test the viability of Nationstar's defenses. What's more, given that there are 2.1 million Class members, there was little risk that Nationstar would expose itself to statutory damages, as projected above.

For certain, "[i]t is perfectly fair and reasonable, and indeed common and accepted, for settlement benefits to turn on the strength of class member's claims." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Supp.2d 891, 948 (E.D. La. 2012), aff'd, 739 F.3d 790 (5th Cir. 2014). However, in most cases a court cannot make an informed judgment about the fairness of a class settlement without assessing the likelihood and value to the class of the possible outcomes, *i.e.*, the net expected value of the case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011).

A court must normally "weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class' claims." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011). Here, although the potential relief for each Class member is fairly well-known – each violation is calculated at $500-$1,500,

Class Counsel presented no evidence to permit the Court to reasonably quantify or assess the actual value to the Class considering continued litigation. And frankly, the quick efforts to settle without the benefit of formal discovery – justifies serious concerns about the settlement's worthiness.

Moreover, the TCPA provides for statutory damages *per violation*, allowing one individual to have many claims. *See* 47 U.S.C. § 227(b)(3)(B). The proposed settlement fails to compensate Class members based upon the number of unsolicited calls they received; that is, *per call* and not *per claimant*. [Doc. 55-1, at Page ID #:447]. A Class member who received 50 calls receives the same payment as a Class member who received a single call. Thus, the compensation for Class members is unfair, given the lack of proportionality as to how the proceeds are distributed.

Finally, insofar as Class Counsel argue that the change in business practices bestows some "value," it does not. No change in future Nationstar practices will benefit consumers who have already received unsolicited calls. *See e.g., True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010) ("No changes to future advertising by Honda will benefit those who already were misled Honda's representations regarding fuel economy"). Here, *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646 (7th Cir. 2006) is instructive: "The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." 463 F.3d at 654. In short, prospective relief does not compensate class members for past injuries. Thus, "relief" granted to a set of future consumers is inherently incapable of compensating for injuries suffered by a class that allegedly suffered past injury. Thus, the suggestion that changes in Nationstar's business practices provided a benefit to Class members is simply wrong. Besides, the practices Nationstar agreed to change, *e.g.*, not engaging in violations of the TCPA, are practices which Nationstar should naturally be required to make, notwithstanding a settlement.

## C. Class Counsel Seek an Exorbitant Percentage of Attorneys' Fees.

### 1. Class Counsel are not entitled to a fee of 36% of the settlement fund.

Class Counsel seek attorneys' fees in the amount of 36% of the net settlement amount, or $3,690,000. At the outset, the description of attorneys' fees sought by Class Counsel (in the Class Notice) was misleading. The Class Notice stated that Class Counsel would be seeking attorneys' fees and expenses "of up to 34.1% of the Settlement Fund." However, in their motion for attorneys' fees, Class Counsel clearly seek 36% of the settlement fund available to Class members. [Doc. 72-1, at Page ID#: 749] (seeking 36% of the net settlement fund).[7]

Class Counsel ignore that the percentage of the total settlement allocated to fees tends to decrease as the total size of the settlement increases. *Gehrich v. Chase Bank United States*, 2016 U.S. Dist. LEXIS 26184, at *49 (N.D. Ill. Mar. 2, 2016) (citing *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013)). Indeed, empirical studies confirm this rule. In fact, such studies reveal that fees for settlements in the range of the one at bar range from 23.8% to 25%. *See* Theodore Eisenberg & Geoffrey P. Miller, *"Attorney Fees and Expenses in Class Action Settlements: 1993-2008,"* 7 J. Empirical Legal Stud. 248, 265 (2010) (finding that between 1993 and 2008, in settlements between $8.7 million and $14.3 million, the median attorney fee (inclusive of administrative costs) was 23.8% and the mean was 25%, while in settlements between $22.8 million and $38.3 million, the median attorney fee was 24.9% and the mean was 22.1%); Brian T. Fitzpatrick, *"An Empirical Study of Class Action Settlements and Their Fee Awards,"* 7 J. Empirical

---

[7] In their motion for attorneys' fees, but not in the notice directed to Class members, Class Counsel explain the distinction: $3,690,000 is 36% of the net settlement value to the class ($10,360,000). $3,690,000 is 30.5% of the total settlement fund ($12,100,000). [Doc. 72-1, at Page ID#: 749].

Legal Stud. 811, 839 (2010) (finding that for settlements ranging from $10 million to $15.2 million, the median attorney fee was 24.8% and the mean was 25%); Theodore Eisenberg & Geoffrey P. Miller, *"Attorney Fees in Class Action Settlements: An Empirical Study,"* 1 J. Empirical Legal Stud. 27, 28 (2004) ("A scaling effect exists, with fees constituting a lower percent of the client's recovery as the client's recovery increases.").

Contrary to Class Counsel's suggestion, the "market price" for attorneys' fees in a TCPA case is not 36%, 34.1%, or even 30.5%. For example, in *Rose v. Bank of America Corp., et al.*, 2014 WL 4273358 (N.D. Cal. August 29, 2014), the court observed:

> The Court compared a number of TCPA class action settlements in which attorneys from the instant case participated: in *Grannan*, 2012 WL 216522, a granted request for 25% of the Settlement Fund reflected a multiplier of 1.47. In *Adams v. AllianceOne, Inc.*, 08-CV-248-JAH (S.D. Cal. Sept. 28, 2012), a granted request for 30% of the Settlement Fund reflected a multiplier of 3.81. In *Arthur v. Sallie Mae, Inc.*, 10-CV-198-JLR (W.D. Wash.), a granted request for 20% of the Settlement Fund reflected a multiplier of 2.59.

*Id.* at *10. Many courts refuse to award even 30% in TCPA cases, *e.g., Steinfeld v. Discover*, 2014 U.S. Dist. LEXIS 48540, *5 (N.D. Cal. Mar. 31, 2014) (25% of $8.7 million fund, reflecting "multiplier of approximately 3.5"). Given the extremely low risk of these cases in general, courts commonly award a percentage of 20% or less. *See, e.g., Bayat v. Bank of the West*, 2015 WL 1744342, at *10 (N.D. Ca. April 15, 2015) (opting for the lodestar method but awarding the equivalent of 13.5% of the over $3.3 million settlement fund); *Rose,* at *13 (choosing the lodestar

method and awarding a fee that equated to about 7.5% of the over $32 million fund); *Michel v. WM Healthcare Solutions, Inc.*, 2014 WL 497031, at *23 (S.D. Ohio Feb. 7, 2014) (awarding 15%); *Arthur v. Sallie Mae, Inc.*, 2012 WL 4076119, at *2 (W.D. Wash. Sept. 17, 2012) (awarding 20%).[8]

### 2. The lodestar method is the better approach to reward Class Counsel for their work in this case.

The percentage method will inevitably result in over-compensation. On the other hand, the lodestar method would likely fairly compensate them. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (explaining that the lodestar method has an advantage over the percentage method in that it alleviates "concerns that a percentage approach resulted in over-compensation for attorneys"). Moreover, the choice of methods is discretionary. *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. Ill. 2014) (citations omitted).[9]

---

[8]Significantly, a lodestar cross-check is also appropriate. *See Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011).

[9]"It is legally correct for a district court to choose either" the percentage or lodestar method. *Americana Art China*, 743 F.3d at 247. As the Seventh Circuit made clear:

> In *Florin v. Nationsbank of Ga., N.A.*, we explained:
>
>> [W]e do not believe that the lodestar approach is so flawed that it should be abandoned. Instead, we are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances. We therefore restate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court.
>
> 34 F.3d 560, 566 (7th Cir. 1994). Whatever position our sister circuits might take, *Florin* is still good law. The district court did not err, much less abuse its discretion, by choosing the lodestar method in this case.

In applying the lodestar method, the fee petitioner carries the burden of persuasion on whether class counsel's submitted hourly rates are reasonable. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010)). The Seventh Circuit recently affirmed a case where the lodestar method actually made more sense to apply, while emphasizing the need for close judicial scrutiny of fee awards. In *In re Southwest Airlines Voucher Litigation*, Nos. 13-2364. 13-3462, 14-2591, 14-2495, slip op., 2015 U.S. App. LEXIS 14601 (7th Cir. Aug. 20, 2015), the Court upheld the reduction of a fee award from $3 million to $1.65 million in a settlement requiring Southwest Airlines to reissue drinks coupons and enjoining it from unilaterally terminating coupon-validity in the future. 2015 U.S. App. LEXIS 14601, [slip op.] at 4, 21-22. Even though the class received just about complete and meaningful relief (a one-for-one re-issuance of the coupons and an injunction against a repeat violation), the district court was correct not to simply defer to "the results of private negotiations," and instead correctly scrutinized the lodestar. 2015 U.S. App. LEXIS 14601, [slip op.] at 21-22.

The fact that Class Counsel have litigated nearly identical cases recently suggests that they had several templates to follow, and the quick entry into settlement negotiations eliminated the need to further contest any issue vigorously before the Court. These facts, and the law of this Circuit, appear to demonstrate the unreasonableness of Class Counsel's request and to indicate that the lodestar method is the more appropriate way to assess Class Counsel's value to the Class, with a percentage of recovery cross-check. If the Court does apply a percentage analysis as the primary tool of analyzing attorneys' fees, then it should also apply a lodestar cross-check.

---

*Americana Art China*, 743 F.3d at 247.

**D. Class Counsel Are Not Entitled to a "Risk Premium" Adjustment of Nearly 6% (Or an Additional $600,000).**

In their motion for attorneys' fees, Class Counsel seek a nearly 6% risk-premium adjustment. [Doc. 72-1, at Page ID#: 763]. That additional 6% equals $600,000. The primary purported "risk," *i.e.*, of non-payment, is nothing more than a well-known risk commonly associated with all litigation, largely fictional and easily forecasted by Class Counsel before filing suit. Besides, when the rubber hit the road, and it was time to either litigate or be subjugated, Class Counsel opted flight instead of fight, abandoning any pretense of developing a factual record to flesh-out the merits of the TCPA claims, securing a large fee at minimal risk – at the expense of Class members.

While Class Counsel maintain that their work justifies a 36% fee, the risk they faced was considerably lower than suggested and such a fee overcompensates them well beyond rates needed to induce them to take a case of this nature. Given the low risks, a substantial reduction is appropriate. The case's difficulty and the work done do not warrant a percentage higher than 25%.

**E. The Record and Result Achieved By Class Counsel Do Not Support Class Counsel's Requested Fee and Point to Class Counsel's Failure to Adequately Represent Class Members.**

> *"When it comes to class actions, a court must 'give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.'"*[10]

Equally dubious is Class Counsel's assertion that they engaged in substantial work in the case before reaching a settlement. To warrant their fee, Class Counsel maintain:

> 19. To realize the settlement for the benefit of the Settlement Class, my firm and the Paradis Law Group were required to spend substantial time and effort litigating this case without compensation.

---

[10]*Mirfasihi*, 356 F.3d at 785.

> The work included briefing numerous motions, including motions for
> class certification, motions to stay, and the motions for preliminary
> approval of the settlement and approval of the subsequent addendum
> to the settlement.

[Doc. 74, at Page ID#: 784]. As described above, however, Class Counsel's "substantial time and effort" in this case simply fails to justify 36% of the net settlement fund.

Notably, settlement negotiations began at an early stage [Doc. 32] and the docket demonstrates that the parties engaged in no formal discovery, no party or third-party depositions were taken, no dispositive motions of any type were filed, not a single substantive motion was contested and decided, and the bulk of the lawyers' work appears to have come *after* the parties reached their settlement.

Class Counsel's fee request is exorbitant in view of the trifling amount of work completed in this case:

- ■ not a single contested substantive motion was litigated;

- ■ the most litigated issues in the case have been approval of the settlement and award of Class Counsel's attorneys' fees;

- ■ no formal discovery, written or oral, was taken or exchanged.

The work performed by Class Counsel simply fails to warrant the fee requested. Settlement negotiations began less than three months after the complaint was filed and the case was settled at an early stage in the proceedings. In support of their fee motion, Class Counsel submitted two declaration generally attesting to their work and efforts on behalf of the Plaintiffs and Class in this case. Tellingly, they did not provide a summary of their time, much less detailed billing records.[11]

---

[11]Class Counsel should be required to submit their detailed contemporaneous hours spent in this case for the purpose of conducting a lodestar cross-check against the reasonableness of any proposed percentage fee. In *Kolinek v. Walgreen Co.*, No. 1:13-cv-04806 (N.D. Ill. Aug. 5,

All of this, distilled from the Court's docket, strongly suggests the impropriety of Class Counsel's settlement assessment, impugning not only their decision to settle at such an early stage, but also their fee request.

### F. Due to Their Limited Efforts, the Eight Named Plaintiffs Are Not Entitled to Incentive Awards of $5,000 Each.

Finally, Plaintiffs seek incentive awards totaling $40,000, to be paid from the settlement fund. But there is no evidence that any Plaintiff did much more than allow his or her name to be placed on the complaint. Plaintiffs' participation was, at best, *de minimis*: they did not have to respond to discovery, were not deposed, did not have to execute affidavits or declarations for class certification or summary judgment purposes, and obviously, did not have to testify. Frankly, it appears their only contribution was permitting Class Counsel to use their names to file the cases, not hardly enough to justify $40,000 in incentive awards, which grossly and disproportionally dwarfs the benefits of every other Class member. An award of $500 each would appear to be a reasonable award for Plaintiffs in this case.

## VII. CONCLUSION

Ms. Mitchell respectfully requests that this Court reject the proposed settlement, deny Class Counsel's motion for attorney's fees or award Class Counsel a substantially lesser amount than they seek, deny the request to award incentive fees to the eight named Plaintiffs, and award such other relief as is just and necessary in this matter.

---

2015), a TCPA class action settlement in which Edelson PC was class counsel, Judge Kennelly ordered the firm to submit an affidavit regarding its "lodestar" amount.

Respectfully submitted, this 4th day of April, 2016.

/s/ W. Allen McDonald
W. Allen McDonald, Esq.
249 N. Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for Amy Jo Mitchell*

# CERTIFICATE OF SERVICE

I do hereby certify, that on April 4, 2016, a copy of the foregoing was submitted electronically through the Court's Electronic Filing System ("ECF"). Notice of this filing will be sent by operation of the Court's ECF to all parties indicated on the electronic filing receipt, including:

Rafey S. Balabanian
EDELSON PC
350 North LaSalle Street, Ste. 1300
Chicago, IL 60654

*Class Counsel*

Abraham J. Colman
Raymond Y. Kim
REED SMITH LLP
355 South Grand Ave., Ste. 2900
Los Angeles, CA 90071

*Defendant's Counsel*

Parties may access this filing through the Court's ECF. A copy of the foregoing was also served on the foregoing as well as on the following recipients, via U.S. First Class Mail, postage prepaid:

C. Jeffrey Thut
NOONAN, PERILO & THUT
25 N. Country Street
Waukegan, IL 60085

John J. Pentz
19 Widow Rites Lane
Sudbury, MA 01776

This 4th day of April, 2016.

/s/ W. Allen McDonald
W. Allen McDonald