**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company,<br><br>*Defendant*. | Case. No. 14-cv-10457<br><br>Hon. Edmond E. Chang |

**PLAINTIFFS' MOTION FOR LEAVE
TO CONDUCT LIMITED DISCOVERY**

Class members unquestionably have the right to present objections to the terms of class action settlements that affect their interests, and such objectors can—and often do—play a valuable adversarial role in helping courts and counsel assess a proposed settlement's fairness, adequacy, and reasonableness. But that's not what is going on here with the eleventh-hour objections of Connie Pentz, Amy Jo Mitchell, and William and Kerry Youngblood, who are "represented" by well-known professional objector-attorneys whose improper tactics have been equally well documented. Their end goal is all the same—to "get paid to go away," an approach that the Seventh Circuit has aptly labeled "extortion" in the context of class action settlements. *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).

After the combination of five separate class action lawsuits, and more than a year of hard-fought litigation, attorneys John J. Pentz, W. Allen McDonald, and Brent Vullings (collectively,

1

the "Professional Objector-Attorneys") now aim to stop meaningful relief from flowing to the Class and to reroute settlement funds into their own pockets. As their improper conduct and checkered pasts make clear, discovery is needed to confirm the improper motivations for their actions in this case. For the reasons set forth herein, Plaintiffs respectfully request that this Court grant them leave to serve limited written discovery on, and take the depositions of, objectors Connie Pentz, Amy Jo Mitchell, and William and Kerry Youngblood, as well as the records custodians of the Professional Objector-Attorneys' law firms.[1]

**I.      BACKGROUND**

Just as the objection deadline was about to close on April 4, 2016, the Professional Objector-Attorneys rushed in to stake their claims. None are strangers to the use of nuisance objections to extract payments from class action settlement funds. The Professional Objector-Attorneys make a living (or supplement their income) by filing meritless objections and subsequent frivolous appeals for the sole purpose of extorting a payoff. The Federal Judicial Center has warned courts to "watch out . . . for canned objections" like these, and to be "wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, at 17, 36 (3d ed. 2010). As one court noted in another case involving Attorney Pentz, "professional objectors can levy what is effectively a tax on class action settlements . . . that has no benefit to anyone other than to the objectors." *Barnes v. Fleetboston Fin. Corp.*, No. CA 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006). This is precisely the situation

---

[1]      Notably, Plaintiffs are not seeking discovery from each and every objector to the Settlement, but rather, only those represented by serial objector attorneys and who appear to have otherwise raised their objections in bad faith.

2

with Pentz, McDonald, and Vullings here, as their activity in this case and others make clear.

Because of this history,[2] Plaintiffs promptly informed the Professional-Objector Attorneys of their intent to seek limited discovery as to the merits of, and motivations behind, their objections in this case. The documents that Plaintiffs seek—such as previous objections, retainer and fee-sharing agreements, and the loan documents supporting the objectors' class membership—would easily shed light on the objections' legitimacy. However, the Professional Objector-Attorneys insist on keeping Class Counsel in the dark, refusing to produce even one scrap of documents. Accordingly, Plaintiffs have been left with no choice but to seek the Court's intervention and a compelling order as described herein.

To provide additional context for the instant request, below is an overview of (1) the Professional Objector-Attorneys' improper tactics and (2) their positions with respect to (or lack of participation in) the meet-and-confer process and requested discovery.

### A. John J. Pentz (Representing Connie Pentz)

#### 1. Pentz's notorious career as a "serial objector."

Pentz, who represents his mother in this action, has a long history of exploiting class action settlements for his own personal gain by filing frivolous objections and equally frivolous appeals once his objections are inevitably overruled. *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 633308, at *6 (N.D. Cal. Feb. 11, 2011) (noting that objector's motion to intervene "would not be in the best interests of the class but rather would only be in Attorney Pentz's best interest"); *In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 2:06-cv-225-PMP-PAL, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (ordering Pentz's clients to post a million dollars in appeal bonds and noting his "documented history of

---

[2] Class Counsel is only seeking discovery as to the Professional Objector-Attorneys, not class members who have filed *pro se* oppositions to the Settlement. (*See* dkt. 93.)

3

filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals" once compensated); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 n.219 (S.D.N.Y. 2009) (collecting cases in which Pentz "has been criticized by courts for his canned objections"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386 (D. Md. 2006) (referring to Pentz as "a professional and generally unsuccessful objector"); *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 514 (D. Del. 2003) (observing that "objector's 'opposition' to class counsel's fee petition appears to be nothing more than [Pentz's] attempt to receive attorneys' fees").

These tactics have earned Pentz a reputation as a "serial objector," *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 214, 215 (S.D.N.Y. 2010), "holdup artist," Lisa Lerer, *Fringe Player*, Corporate Counsel, Oct. 2004, and even "the outlaw of class action litigation." *Id.* As here, Pentz frequently recruits family members to serve as token "clients." *See, e.g.*, *Barnes*, 2006 WL 6916834, at *2 (mother-in-law); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *2 n.3 (D. Me. Oct. 7, 2003) (wife).

Pentz's "client's" objection to Class Counsel's fee award here, (dkt. 80),[3] is based entirely on an expert report that was independently prepared for another objector in another lawsuit and ultimately rejected by the court. *See In re Capital One Tel. Consumer Protection Act*

---

[3] The day after filing his objection without authorization to appear before this Court pursuant to Local Rule 83.12 or 83.14, Pentz filed his motion for leave to appear *pro hac vice*, which Plaintiffs opposed. (*See* dkt. 90). The Court ordered Pentz to reply to Plaintiffs' opposition by April 18, 2016, (*see* dkt. 92), but that date has come and gone without word from Pentz. In addition, Pentz has not taken any steps to appoint local counsel, as Local Rule 83.15 requires. Given their "broad discretion to enforce and require strict compliance with their local rules," *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 655 (7th Cir. 2011), district courts may strike filings by attorneys, like Pentz, who fail to comply with provisions of the local rules governing attorney appearances. *See, e.g.*, *Olojo v. Kennedy-King Coll.*, No. 05 C 6234, 2006 WL 862828, at *1 (N.D. Ill. Apr. 3, 2006) (striking complaint filed by attorney who failed to seek leave to appear *pro hac vice* or appoint local counsel pursuant to Local Rules 83.14 and 83.15); *see also* N.D. Ill. L.R. 83.15 (authorizing court to strike filings by attorneys admitted *pro hac vice* who fail to appoint local counsel).

*Litig.*, 80 F. Supp. 3d 781, 808 (N.D. Ill. 2015) ("Unfortunately for Professor Henderson, his model is not among the methods accepted by the Seventh Circuit."). Pentz recently tried shoehorning the same report into another class action, where it likewise had no impact on the court's fee analysis. *See Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *14–17 (N.D. Ill. Mar. 2, 2016).

### 2. Pentz's meet-and-confer position.

On April 8, 2016, Class Counsel and Pentz engaged in a telephone conference regarding the materials that Plaintiffs intend to seek in discovery. (*See* the "April 12th Letter," and subsequent communications, true and accurate copies of which are attached hereto as Exhibit 2). Although Plaintiffs provided a short list of a dozen discovery topics in advance of the call, the early portions of the call focused on Pentz's belief that it is permissible to leverage a class action objection to pocket attorneys' fees if done once a final approval order is on appeal. (*Id.*) With respect to the requested discovery and as detailed in the April 12th Letter, Pentz either flat-out refused to provide the information Plaintiffs requested, denied that he had the sought-after information (such as retainer agreements or written communications with his mother about her objection), or promised to produce certain information (such as his mother's underlying loan origination documents and a list of state court cases in which she has objected) that Plaintiffs have not yet received. Pentz also categorically refused to produce his mother for a one-hour deposition on a date and a location of her choosing, arguing that Class Counsel would not need further information apart from the loan origination documents (which he has not provided).

For these reasons and as described further below, discovery as to Mrs. Pentz and her objection is therefore warranted.

### B. W. Allen McDonald (Representing Amy Jo Mitchell)

#### 1. McDonald's ongoing use of the objection process to "garner a windfall" for himself.

McDonald, who for his part is using his sister-in-law as the objector in this matter, is another notorious serial objector who regularly lodges flimsy objections to "garner a windfall . . . rather than ensuring an adequate settlement for the class." *In re Enfamil LIPIL Mktg. & Sales Practices Litig. MDL 2222*, No. 11-MD-02222, 2012 WL 1189763, at *4 (S.D. Fla. Apr. 9, 2012) (describing with disapproval McDonald's offer to withdraw his client's (his sister's) appeal of class action settlement in exchange for $150,000); *see also In re Pre-Filled Propane Tank Mktg. & Sales Practices. Litig.*, No. 9-md-2086, Dkt. No. 289, at 5 (W.D. Mo. May 31, 2012) (ordering McDonald's client to post $25,000 appeal bond because objection was "without merit" and client was "unlikely to prevail on appeal."); *Pecover v. Elec. Arts*, Case. No. 8-cv-2820, Dkt. 465, at 8–11 (N.D. Cal. May 30, 2013) (overruling McDonald's client's objections).

Although he may appear to be less prolific than Pentz, Class Counsel know from experience this is not the case. McDonald frequently hides in the shadows of other professional objectors with whom he works closely. For instance, in *In re Netflix Privacy Litigation*, McDonald was actively involved in obstructing the settlement with a baseless objection and appeal, even though his own "client" admitted she had not even talked to her attorneys until the day of her deposition and had no idea what had happened in the case. *See* Deposition Transcript of Judith Mallory, No. 11-cv-379, Dkt. 338-2 (N.D. Cal. Feb. 20, 2014), attached hereto as Exhibit 3, at 21:9–22:12, 23:1–5, 31:17–20, 45:1–49:2. In *Kolinek v. Walgreen Co.*, McDonald enlisted the same professional objector he worked with in *Netflix* to ghost-write an objection for his client. *See* Pl.'s Mem. in Supp. of Final Approval, No. 13-cv-4806, Dkt. 137-1, at 50–51 (N.D. Ill. July 29, 2015). Here, McDonald's "client's" objection similarly offers up boilerplate

challenges to every conceivable aspect of the Settlement, from the language of the class definition to the modest $5,000 incentive awards Plaintiffs are to receive—not to mention misunderstanding even the most basic issues, like the procedural posture of the consolidated actions. (Dkt. 83.)

### 2. McDonald's meet-and-confer position.

On April 8, 2016, Class Counsel and McDonald engaged in a phone call regarding the discovery materials Plaintiffs intend to seek. (*See* the "April 11th Letter" and additional communications, true and accurate copies of which are attached hereto as Exhibit 4.) In a nutshell, McDonald stated that he would not produce *anything* unless an agreement could be reached as to *everything* on the list of topics Plaintiffs had provided. For example, when asked to produce retainer agreements and documents relating to how he came to represent his sister-in-law, McDonald at first "conditionally" agreed, but then stated that he would rather "let the Court decide" if the parties couldn't reach an agreement on all of Plaintiffs' discovery topics. (*Id*. at 3.) With regard to Plaintiffs' other substantive requests, which are detailed in the April 11th Letter, McDonald either asserted a host of objections with no support to back them up, or promised information that Plaintiffs have yet to receive, such as a list of other objections in which Mitchell has participated and a privilege log detailing his communications with Mitchell about this one. Like Pentz, McDonald rejected Plaintiffs' request to take a one-hour deposition of Mitchell at a time and place of his choosing.

Thus, discovery as to Ms. Mitchell and her objection is likewise warranted.

### C. Brent Vullings (Representing William and Kerry Youngblood)

### 1. Vullings' recent and repeated objections in this District.

Vullings is an up-and-coming serial objector. This is at least the third Telephone

Consumer Protection Act case in this District—in the past year—in which he has lodged an objection. First, on July 29, 2015, Vullings objected in the above-mentioned *Kolinek* action, which the court rejected on multiple grounds. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 499 (N.D. Ill. 2015) (noting objector's "misunderstanding of the proposed settlement agreement"). Second, on September 9, 2015, Vullings filed an objection in *Allen v. JP Morgan Chase Bank, N.A.*, No. 13-cv-8285 (N.D. Ill.), dkt. 66, which he voluntarily withdrew four days after the court granted plaintiff's motion to compel additional discovery. (*Id.*, dkts. 79, 80.) Vullings' objection in this case is barely more than a cut-and-paste of the one he filed in *Allen*, and isn't even signed by his purported "clients."

### 2. Vullings' refusal to meet and confer.

Counsel for Plaintiffs left multiple voicemails with Vullings the week of April 4, 2016 in an effort to set up a meet-and-confer phone call. On April 7, 2016 Vullings sent one of Plaintiffs' attorneys a sharp one-paragraph email, (a true and accurate copy of which is attached hereto as Exhibit 5), stating simply that "it is our position that the [sic] any attempts to conduct unreasonable discovery upon valid class members/objectors…is not consented to and if necessary will be countered with the appropriate motion(s)."[4] Vullings did not respond to Plaintiffs' subsequent email and, in any event, given the circumstances of the objection, discovery as to the Youngbloods and their objection is warranted as well.

## III. ARGUMENT

Plaintiffs should be allowed leave to take limited discovery on the objectors and the records custodians of their Professional Objector-Attorneys' law firms so they can fully and accurately document the lack of merit of the objections and the improper motivations behind

---

[4] Vullings also refused to engage in any discussion regarding the substance of the Youngbloods' objection, stating that, "[a]s for any desire to confer regarding the filed objections, they are clear, self-explanatory, and now for the Court to rule upon." (*See* Exhibit 4.)

them. In addition to the depositions of the Objectors and their counsels' records custodians, the written discovery that Plaintiffs seek, attached hereto as Exhibit 6, is procedurally proper, relevant to the Settlement, and routinely granted.

As an initial matter, it is procedurally proper to allow additional limited discovery at this time. In general, a court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[W]hether to grant a motion to reopen discovery rests within the sound discretion of the court." *APC Filtration, Inc. v. Becker*, No. 07-CV-1462, 2009 WL 187912, at *1 (N.D. Ill. Jan. 26, 2009) (citing *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007)); *see also* Fed. R. Civ. P. 6(b)(1).

Here, it is obvious that Plaintiffs could not have taken discovery before the Professional Objector-Attorneys filed their last-minute objections. The Court initially set discovery to close on February 26, 2016, (dkt. 35), although it later suspended discovery for an unspecified time to enable the parties to "focus on reducing the[ir] agreement [and] writing and drafting the preliminary-approval motion." (Dkt. 38). If the February 26th deadline is still in place, Plaintiffs could not have adhered to it with respect to the Professional Objector-Attorneys. And while absent class members are not usually subject to discovery, objecting class members are where, as here, they have voluntarily injected themselves into an action. *See Allen*, No. 13-cv-8285, Dkt. 73 (N.D. Ill. Sept. 16, 2015) (permitting discovery, including deposition, of objector represented by Vullings and professional objector-attorneys); *id.* at dkt. 79 (N.D. Ill. Oct. 1, 2015) (compelling Vullings' client to sit for deposition); *Kolinek*, No. 13-cv-4806, Dkt. 156 (N.D. Ill. Aug. 12, 2015) (denying objectors' motions to quash subpoenas); *Zouras v. Am. Registry LLC*, No. 14-cv-943, Dkt. 56 (N.D. Ill. Feb. 26, 2015) (permitting objector deposition); *see also In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 6173772, at *5 (N.D. Cal. Nov. 25, 2013)

("Objectors have voluntarily inserted themselves into this action, and as such, depositions of the Objectors are relevant and proper."); *In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13-MC-00042 AGF, 2013 WL 414476, at *2 (E.D. Mo. Feb. 1, 2013) (denying objector's attorney's motion to quash subpoena on his law firm's records custodian); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (granting motion to compel deposition of objector whose professional objector-attorney was well known for opposing class action settlements for his own financial gain); *In re Netflix Privacy Litig.*, 14-mc-36, Dkt. 11 (N.D. Tex. Apr. 15, 2014) (denying objector's motion to quash subpoena); *Kramer v. Autobytel, Inc.*, No. 10-cv-2722, Dkt. 136 (N.D. Cal. Jan 12, 2012) (granting plaintiff's motion to depose objector-attorney's records custodian); *Sullivan v. Kelly Servs., Inc.*, No. 8-cv-3893, Dkt. 121 (N.D. Cal. Aug. 10, 2011) (same).

The discovery sought is relevant to the Settlement approval process because it will determine whether the objectors have involved themselves in this action for their personal gain (or that of the Professional Objector-Attorneys) or for the actual benefit of the Class. Courts throughout the country have recognized that the motivations of objectors and their counsel are highly relevant to assessing the propriety of an objection to a class action settlement. *See In re Netflix*, 2013 WL 6173772, at *5 (permitting discovery "regarding the merits and motivations behind the Objectors' appeals as well as their relationships with Counsel"); *In re CRT*, 281 F.R.D. at 533 (permitting discovery as to objector's "relationship with [his attorney] and his practices with regard to asserting settlement objections."); *Spark*, 289 F. Supp. 2d at 514 (rejecting Pentz's client's objection, indicating that it was driven by Pentz's own hunger for attorney's fees); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n.30 (S.D. Fla. 2011) (rejecting objections to fee award, noting that "they have been brought by professional

objectors and others whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto"); *see also* Rothstein & Willging, Managing Class Action Litigation: A Pocket Guide for Judges, at 17, 36.[5]

Finally, the discovery Plaintiffs seek is reasonable in scope in that it is limited to (1) depositions of the objectors, (2) depositions of the records custodians of the Professional Objector-Attorneys' law firms, and (3) a small number of documents concerning the relationship between the objectors and the Professional Objector-Attorneys, as well as the objectors' membership in the Settlement Class. As noted above, courts within this District and elsewhere have regularly permitted this type of discovery, including depositions. *See, e.g*, *Kolinek*, No. 13-cv-4806, Dkts. 156, 157 (N.D. Ill. Aug. 12, 2015) (denying motion to quash discovery requests seeking retainer agreements and other documents exploring relationship between objectors and their attorneys, and noting on record, at Hr'g Tr. 20:24–21:3, attached hereto as Exhibit 7, "I think the requests for retainer agreements are relevant, I think the requests for documents that show whether the person is actually a class member is relevant, and the rest of it I think directly relates to matters that are potentially an issue in the case."); *Allen*, 13-cv-8285, Dkts. 73, 79 (N.D. Ill. Sept. 16, 2015, Oct. 1, 2015); *Zouras*, No. 14-cv-943, Dkt. 56 (N.D. Ill. Feb. 26, 2015).

## IV. CONCLUSION

At this stage of the proceedings, only additional limited discovery will bear out the objectors' true motivations and the ultimate propriety of their objections. For the reasons stated above, Plaintiffs respectfully request that the Court grant them leave to serve limited written discovery on, and take the depositions of, objectors Connie Pentz, Amy Jo Mitchell, and William

---

[5] The Professional Objector-Attorneys repeated puppeteering of family members as "clients" is another reason to doubt their motives here. *See Eubank v. Pella Corp.*, 753 F.3d 718, 721 (7th Cir. 2014) (noting that personal relationship between attorney and client created "grave conflict of interest"); *accord Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 581 (N.D. Ill. 2014).

11

and Kerry Youngblood, as well as the records custodians of the Professional Objector-Attorneys' law firms, and order the objectors and records custodians to comply with discovery by May 6, 2016, so that the final fairness hearing set for May 19, 2016 can proceed on schedule.

Respectfully submitted,

**HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, VANESSA RUGGLES** and **ROSE SOMERS**, on behalf of all others similarly situated,

Dated: April 22, 2016

By: /s/ Rafey S. Balabanian
      One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Paul O. Paradis (Admitted *pro hac vice*)
Gina M. Tufaro (Admitted *pro hac vice*)
PARADIS LAW GROUP, PLLC
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tel: 212.986.4500
Fax: 212.986.4501

Jack Landskroner (Admitted *pro hac vice*)
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Tel: 216.522.9000
Fax: 216.522.9007

Brant C. Martin (Admitted *pro hac vice*)
WICK PHILLIPS GOULD & MARTIN, LLP
100 Throckmorton Street, Suite 500
Fort Worth, Texas 76102
Tel: 817.332.7788
Fax: 817.332.7789

Michael P. Sousa (Admitted *pro hac vice*)
sousam@sbcglobal.net
LAW OFFICES OF MICHAEL P. SOUSA, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
Tel: 858.453.6122, ext. 15

Douglas J. Campion (Admitted *pro hac vice*)
doug@djcampion.com
Law Offices of Douglas J. Campion, APC
17150 Via Del Campo, Suite 1000
San Diego, CA 92127
Tel: 619.299.2901
Fax: 619.858.0034

## **CERTIFICATE OF SERVICE**

       I hereby certify that on April 22, 2016, I served the above and foregoing by causing a true and accurate copy of such paper to filed and served via the Court's CM/ECF electronic filing system, which provides electronic notice to all registered users, and by transmitting it to the person shown below via electronic mail.

John J. Pentz
jjpentz3@gmail.com
LAW OFFICES OF JOHN J. PENTZ
19 Widow Rites Lane
Sudbury, MA 01776

                                          /s/ Rafey S. Balabanian