**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated, | Case No. 14-cv-10457 |
| | Hon. Edmond E. Chang |
| *Plaintiffs*, | |
| v. | |
| NATIONSTAR MORTGAGE LLC, a Delaware limited liability company, | |
| *Defendant*. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LIMITED DISCOVERY

Class action objectors have the power to substantially alter the terms of the settlement agreements to which absent class members are bound. As Plaintiffs acknowledged, "such objectors can—and often do—play a valuable adversarial role in helping courts and counsel assess a proposed settlement's fairness, adequacy, and reasonableness." (Mot. at 1.) But just as background, motivation, and relationship to counsel may impact a class representative's and class counsel's adequacy, these considerations are highly relevant to the propriety of class action objections, as courts throughout the country have recognized. This is especially true in a case such as this, where the four objectors from whom discovery is sought are represented by Professional Objector-Attorneys who have made careers of filing largely baseless objections to extract a ransom for themselves. The Court should resist the Professional Objector-Attorneys' urging to turn a blind eye to their checkered pasts and close family ties to their "clients," and allow Plaintiffs leave to conduct the limited discovery outlined in their Motion.

I.   **The Background, Motivation, and Relationships of Those Who Purport to Speak on Behalf of a Class Are Highly Relevant.**

The Professional Objector-Attorneys ask the Court to allow them to play by their own set of rules, in which background, motivation, and client relationships are "a matter of complete indifference to the Court." (McDonald Opp. at 13.) As the law of this Circuit and Rule 11 of the Federal Rules of Civil Procedure make clear, this is impermissible.

The Seventh Circuit has repeatedly instructed that background, motivation, and relationships are relevant, particularly to the issue of adequacy. For instance, in *Eubank v. Pella Corp.*, the Seventh Circuit reversed approval of a settlement in significant part because lead class counsel was the son-in-law of the named plaintiff, Leonard E. Saltzman, whose daughter was also a partner in class counsel's law firm. 753 F.3d 718, 721–22 (7th Cir. 2014). The Court found that close family relationships "created a grave conflict of interest; for the larger the fee award to class counsel, the better off Saltzman's daughter and son-in-law would be financially." *Id.* at 724. In *Redman v. RadioShack Corp.*, a case in which the named plaintiff was employed by class counsel's former law firm, the court reiterated the importance of insisting that named plaintiffs be "uninfluenced by family ties . . . or friendships." 768 F.3d 622, 638 (7th Cir. 2014), *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015). Again, in *In re Southwest Airlines Voucher Litigation*, the Seventh Circuit admonished class counsel for failing to disclose that he and the named plaintiff in the case were serving as co-counsel in a separate class action pending in California. 799 F.3d 701, 714–15 (7th Cir. 2015).

Though these cases involved the adequacy of class representatives and class counsel, the principle that emerges—that background, motivation, and relationships matter in the class action context—is equally applicable to objectors who purport to be acting for the benefit of the class and can persuade a court to scrap or substantially alter a class action settlement. For this reason,

and as explained fully in Plaintiffs' Motion, these factors cannot be a "matter of complete indifference to the Court." Courts in this District and elsewhere have emphasized that self-interest, suspect attorney-client relationships, and personal histories are relevant to the propriety of a class action objection. *See, e.g.*, *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 514 (D. Del. 2003) (rejecting canned objection driven by Pentz's self-interest); *Kolinek v. Walgreen Co.*, No. 13-cv-4806, Dkt. 157 (N.D. Ill. Aug. 12, 2015) (noting the relevancy of McDonald's and other attorneys' retainer agreements with their objector clients)[1]; *In re Enfamil LIPIL Mktg. & Sales Practices Litig. MDL 2222*, No. 11-MD-02222, 2012 WL 1189763, at *4 (S.D. Fla. Apr. 9, 2012) (finding evidence of bad faith on the part of McDonald's objector-client and sister, Sandra M. Pack because she was "represented by her brother's law firm," "did not sign a retainer agreement," and "had never read any documents concerning this litigation"). To fully evaluate the lack of opposition to the instant settlement, Plaintiffs and the Court have a right to know the basis for and motivations behind the objections that have been filed to determine if the requested changes are really for the benefit of the class as the Professional Objector-Attorneys claim.

*In re Netflix Privacy Litigation* illustrates why motives matter. There, the court ordered additional discovery "regarding the merits and motivations behind the Objectors' appeals as well as their relationships with Counsel." No. 5:11-cv-00379, 2013 WL 6173772, at *5 (N.D. Cal. Nov. 25, 2013). The deposition of McDonald's client revealed that she knew virtually nothing about the litigation or her appeal, and had not even spoken with her attorneys until the day of her deposition. (*See id.* at dkt. 99-3.) The deposition of Mr. Pentz's client in another case was just as telling. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 7-md-1827, Dkt. 7414-2, at 38:10–12

---

[1]     The fact that discovery did not proceed to depositions in the *Kolinek* matter is immaterial. What matters is Judge Kennelly's recognition that attorney-client relationships are relevant to the propriety of class action objections.

(N.D. Cal. Dec. 12, 2012) ("[Q:] Do you know what it means to object to a settlement? [A:] No."). As *In re Netflix* and *In re TFT* demonstrate, Plaintiffs are entitled to discovery as to whether the objections are being brought by actual class members with a genuine interest in the fairness of the settlement, or by Professional Objector-Attorneys who puppeteer objectors simply to extract fees.

The Federal Rules of Civil Procedure also recognize the importance of motive. Rule 11 imposes an independent duty on attorneys "to ensure that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose," such as harassment or delay. *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 721 (7th Cir. 2002). Clearly then, motivation—the reason for an individual's presence in a case—matters greatly. Pentz claims that his mother "does not seek to prevent or delay the settlement in any way," and only wants to ensure that the "Class will be substantially better off." (Pentz Opp. at 3 n.2.) Not only will Pentz's inevitable appeal purposefully cause the very delay he claims to not want, but there are too many red flags in this case to take Pentz and the other Professional Objector-Attorneys at their word. (Mot. at 3–8.)[2] Consistent with Rule 11, the discovery sought tests the objectors' purpose for involving themselves in this action and is certainly relevant. (Mot. at 10.)

In asking the Court to disregard the reasons for his presence in this case, McDonald relies heavily on an unpublished March 10, 2016 hearing transcript from *Douglas v. The Western Union Co.*, No. 14-cv-1741 (N.D. Ill.), in which Judge Feinerman gave class counsel's stand-in a

---

[2]     Plaintiffs seek no discovery from the two *pro se* objectors in this action, where such warning signs are notably absent. (*See* Pls.' Mem. in Support of Final Approval, Dkt. 105-1, at 31–32.) Thus, the Professional Objector-Attorneys' argument that Plaintiffs are using discovery to impose a "tax" on objectors, (McDonald Opp. at 7–8), or reduce the total number of objections, (*id.* at 8), is not only ironic, *see Barnes v. Fleetboston Fin. Corp.*, No. CA 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006) (noting, in a case involving Pentz, that "professional objectors can levy what is effectively a tax on class action settlements .  . that has no benefit to anyone other than to the objectors"), it is also wholly meritless.

"pop quiz" on the need for additional discovery. (Dkt 111-1 at 18:13–19.)[3] Unfortunately for class members, the attorney speaking on their behalf that day admitted that he was filling in for another attorney who had a medical emergency, and was unprepared to answer Judge Feinerman's questions. (*Id.* at 5:20–25.) The transcript reveals a misplaced focus on the objector's alleged prior criminal convictions and her potential ability to post an appeal bond, even though final approval was at that time weeks away. Though defense counsel tried to help at one point (despite having taken no position on the discovery issue), it was too little, too late. (*Id.* at 15:18–16:11.) Significantly, class counsel there did not make the argument being made here: that additional discovery "will determine whether the objectors have involved themselves in this action for their personal gain (or that of the Professional Objector-Attorneys) or for the actual benefit of the Class." (Mot. at 10.) As the cases cited above and in Plaintiffs' Motion establish, motives clearly impact the propriety of objectors' involvement in a case—that is, whether they are present to "ensur[e] an adequate settlement for the class" or simply "garner a windfall" for their attorneys. *In re Enfamil*, 2012 WL 1189763, at *4 (ordering McDonald's client—his sister—to pay an appeal bond).

This Court need not rely on unpublished hearing transcripts to reach its conclusion. Instead, both the well-settled principles of law governing adequacy and Rule 11 demonstrate why background, motivation, and relationships are relevant concerns, and why so many courts have permitted objector discovery in cases like this one.

## II. The Discovery Plaintiffs Seek is Both Relevant and Proportional.

Turning to the specific discovery requested here, Plaintiffs seek only a handful of

---

[3]     Because class counsel had not yet been given an opportunity to file a reply, Judge Feinerman did not actually resolve the issue of whether additional discovery was appropriate during the hearing. (*Id.* at 18:7–19:2.)

documents relating to three topics: (1) the attorney-client relationship between the objectors and
their Professional Objector-Attorneys, (2) the basis for the objectors' claims and whether the
Professional Objector-Attorneys performed a reasonable investigation, and (3) the involvement
of the objectors and the Professional Objector-Attorneys in other class action settlements.
Plaintiffs also seek depositions—which they have offered to limit to one hour and take at a date
and location chosen by the objectors and their counsel—that, among other things, will allow the
objectors to state in their own words the purpose of their objections. These materials and
information are both relevant and proportional to the needs of the case.

As explained above, both the Seventh Circuit and Rule 11 make clear that an objector's
background, motives, and relationships to counsel are relevant to the question of why that person
chose to involve him or herself in a class action. Was it to voice legitimate concerns about the
fairness and reasonableness of the Settlement and secure a benefit for the class, as the
Professional Objector-Attorneys claim? Or to file baseless objections in order to generate fees, as
the Professional Objector-Attorneys' histories suggest? (*See* Mot. at 3–8.) Regardless of the legal
substance of the objections—which Plaintiffs have tackled head-on in their Motion for Final
Approval—only additional discovery is capable of answering these questions.[4]

Pentz also spends almost two pages specifically challenging the relevancy of his mother's
loan origination documents. (Pentz Opp. at 2–4.) Although class members are not required to
produce these documents to submit a valid claim, Pentz's history as a serial objector demands a
closer look. Moreover, when the Parties met-and-conferred almost a month ago, he agreed "to
check with her to see what she has and produce any such documents." (April 12 Letter, Dkt. 99-2

---

[4]        While these questions are obviously relevant now, they will also need to be answered
should this case proceed on appeal, which the Professional Objector-Attorneys' histories suggest
is a near certainty. *See, e.g.*, *In re Netflix*, 2013 WL 6173772, at *5.

at 4.) But Plaintiffs have not received a single document or further communication from Pentz (or any of the other Professional Objector-Attorneys, for that matter).

Further, the proportionality factors that have been restored "to their original place in defining the scope of discovery" in Rule 26(b) only underscore the need for discovery here. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note. These factors include: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As to the first and second factors, all parties agree that the issues at stake are of great importance to consumers' privacy, and that the amount in controversy—a $12.1 million fund that promises immediate cash relief to class members—is significant. As to the third factor, Plaintiffs obviously do not have access to the bulk of documents that they seek, and even Pentz agreed that he would provide Plaintiffs with a list of hard-to-find objections that his mother had filed in state courts. (*See* April 12 Letter, Dkt. 99-2 at 5.) With respect to the fourth factor, resources, McDonald contends that his law firm is unable to "search through the firm files and prepare a log of all communications since the law firm was engaged by Ms. Mitchell," (McDonald Opp. at 11), failing to mention his original (and unfulfilled) promise that such a log would be produced. (*See* April 11 Letter, Dkt. 99-4 at 4.)

The fifth factor, burden, also weighs in favor of discovery. The Professional Objector-Attorneys cannot reasonably argue that a one-hour deposition of their client at a time and place of their choosing is unduly burdensome. As to the burden of deposing their law firms' records custodians, Pentz and Vullings (who by and large parrots his contemporaries' arguments verbatim) urge the Court to apply a 30-year-old case from the Eighth Circuit, *Shelton v. Am.*

*Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). *Shelton* took into account whether the information sought (1) can only be obtained through deposition, (2) is relevant and non-privileged, and (3) is crucial to the preparation of the case. *Id.* at 1327. Pentz and Vullings both argue—using identical words—that *Shelton*'s three-factor test "has been adopted by most other circuits, including the Seventh." (Pentz Opp. at 5; Vullings Opp. at 5.) However, they plainly misread the law. In the single Northern District of Illinois case applying *Shelton* that both Pentz and Vullings cite, the Honorable Virginia M. Kendall was careful to note that "the Seventh Circuit has not ruled definitively on the factors to consider when a party wants to depose opposing counsel." *Lincoln Nat'l Life Ins. v. TCF Nat'l Bank*, No. 10-cv-6142, 2011 U.S. Dist. LEXIS 142371, at *4 (N.D. Ill. Dec. 12, 2011); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71 (2d Cir. 2003) ("Indeed, only the Sixth Circuit has followed the Eighth in adopting the *Shelton* rule.").

Moreover, many courts within this Circuit have rejected *Shelton*, choosing instead to "employ a more flexible approach that looks at all the circumstances of the particular case." *Espejo v. Santander Consumer USA, Inc.*, No. 11 CV 8987, 2014 WL 6704382, at *2 (N.D. Ill. Nov. 25, 2014) (Schenkier, J.); *see also qad.inc v. ALN Assocs., Inc.*, 132 F.R.D. 492, 495 (N.D. Ill. 1990) (Shadur, J.) ("*Shelton* . . . may fairly (and properly) reflect an attitude of protecting our brethren at the bar, all other things being equal. But stated as a rule of law it must be viewed as wrong . . . ."). As Magistrate Judge Cole explained, "the better, more incisive, and more accurate reading of *Shelton* . . . 'is to allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary.'" *Armada (Singapore) Pte Ltd v. Amcol Int'l Corp.*, No. 13 C 3455, 2016 WL 612852, at *2 (N.D. Ill. Feb. 16, 2016) (quoting *Hunt Int'l Resources Corp. v. Binstein*, 98 F.R.D. 689, 691 (N.D. Ill. 1983)) (emphasis omitted).

The Professional Objector-Attorneys cannot skip ahead to the conclusion that the

deposition of their records custodians is burdensome at the outset, assuming that every question they will be asked will demand privileged information. Nor can they argue that depositions are unnecessary at this juncture, when they have not yet produced a single document that would make that determination possible. Finally, their failure to understand "what relevance any settlement reached on behalf of an unrelated client . . . could possibly have," (Pentz. Opp. at 5), ignores the many cases permitting discovery on this very issue. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (ordering objector to sit for deposition so plaintiffs could assess "not only the bases for [his] objections," but also "his relationship with [his attorney] and his practices with regard to asserting settlement objections."). Though depositions of opposing counsel may be rare, Courts will order them where, as here, the presence of professional objectors has called into question the reasons for their clients' objections. *See, e.g.*, *Kramer v. Autobytel, Inc.*, No. 10-cv-2722, Dkt. 136 (N.D. Cal. Jan. 12, 2012); *Sullivan v. Kelly Servs. Inc.*, No. 8-cv-3893, Dkt. 121 (N.D. Cal. Aug. 10, 2011).

The final factor, "the importance of the discovery in resolving the issues," further supports discovery. Relying on *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984) and its progeny, McDonald and Vullings argue that objector motivations are inconsequential, but they know better from experience. The truth is, at one time or another, all three of the Professional Objector-Attorneys have been subject to court-ordered discovery identical to the kind that Plaintiffs seek. *See, e.g.*, *Lockwood v. Certegy Check Servs., Inc.*, No. 7-cv-1434, Dkt. 89 (M.D. Fla. Aug. 18, 2008) (ordering Pentz's client to produce documents and sit for deposition); *In re Netflix*, 2013 WL 6173772, at *5 (ordering McDonald's client to sit for deposition); *Allen v. JP Morgan Chase Bank, N.A.*, No. 13-cv-8285, Dkt. 79 (N.D. Ill. Oct. 1, 2015) (granting motion to compel discovery on Vullings' client). Accordingly, and for all the

9

reasons stated above, this Court should join these and other courts in permitting reasonable, limited discovery into objectors' backgrounds, motivations, and relationships.

<u>**CONCLUSION**</u>

Although the Professional Objector-Attorneys have spilled much ink opposing Plaintiffs' Motion, they have still not produced a single document or deponent. Given their collective failure to make good on their promises, (and Vullings' continued refusal to even respond to Class Counsel's emails), Plaintiffs had little choice but to file their Motion. Plaintiffs therefore respectfully request that the Court grant them leave to conduct limited discovery on objectors Connie Pentz, Amy Jo Mitchell, and William and Kerry Youngblood, as well as the records custodians of the Professional Objector-Attorneys' law firms, and order that such discovery take place prior to the final fairness hearing on May 19, 2016.

Respectfully submitted,

**HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, VANESSA RUGGLES** and **ROSE SOMERS**, individually and on behalf all others similarly situated,

Dated: May 5, 2016

By: s/ Rafey S. Balabanian

One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Paul O. Paradis (Admitted *pro hac vice*)
Gina M. Tufaro (Admitted *pro hac vice*)
PARADIS LAW GROUP, PLLC
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tel: 212.986.4500
Fax: 212.986.4501


Jack Landskroner (Admitted *pro hac vice*)
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Tel: 216.522.9000
Fax: 216.522.9007

Brant C. Martin (Admitted *pro hac vice*)
WICK PHILLIPS GOULD & MARTIN, LLP
100 Throckmorton Street, Suite 500
Fort Worth, Texas 76102
Tel: 817.332.7788
Fax: 817.332.7789

Michael P. Sousa (Admitted *pro hac vice*)
sousam@sbcglobal.net
LAW OFFICES OF MICHAEL P. SOUSA, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
Tel: 858.453.6122, ext. 15

Douglas J. Campion (Admitted *pro hac vice*)
doug@djcampion.com
Law Offices of Douglas J. Campion, APC
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Tel: 619.299.2901
Fax: 619.858.0034

### CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2016, I served the above and foregoing by causing a true and accurate copy of such paper to be filed with the Court via the Court's CM/ECF electronic filing system, which provides electronic notification to all registered users.

/s/ Rafey S. Balabanian