UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER WRIGHT, CAROLE STEWART, JEANETTE CHILDRESS, ROBERT JORDAN SEAN HALBERT, DANA SKELTON VANESSA RUGGLES and ROSE SOMERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC,<br>Defendant. | Case No. 14-cv-10457<br><br>Hon. Edmond E. Chang |

## REPLY OF CLASS MEMBER CONNIE PENTZ

Class member Connie Pentz hereby files this Reply to Class Counsel's request for attorneys' fees, pursuant to the schedule established by this Court.

**I.  The Paradis Law Group PLLC Detail of Hours Worked is Woefully Inadequate.**

First, it bears mentioning that the Seventh Circuit has expressly disapproved of the practice of filing time records under seal.

> [W]e disapprove the practice ... of encouraging or permitting the submission of fee applications in camera. In the unlikely event that some confidential information is contained in the applications, that information can be whited out. To conceal the applications and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge.

*Reynolds v. Beneficial National Bank*, 288 F.3d 277, 286 (7th Cir. 2002). After Class Counsel initially filed their time records under seal, this Court required them to publicly file redacted versions. One firm, however, redacted all relevant information out of their

records, leaving only the general category for each block billing entry. This is inadequate and improper, especially when it was filed by a firm that claims a lodestar that is almost 70% higher than the Edelson firm's lodestar.

For example, Gina Tufaro, who claims the highest lodestar of any attorney in this case, and whose individual lodestar is almost 75% of the total lodestar for the Edelson firm, ran up huge chunks of time in blocks of up to 8 hours per day doing something called "Pre-Complaint Investigation/Complaint." No further detail is provided. Moreover, Ms. Tufaro, who bills at a rate of $825/hour, spent more than 50 hours doing pre-complaint investigation. In contrast, Christopher Dore of Edelson PC was able to complete the same investigation and draft a complaint in fewer than 20 hours, at the rate of $500/hour.

The lack of detail in the Paradis time records prevents the class members and this Court from determining why it took Ms. Tufaro so much longer to complete the same work accomplished by Mr. Dore in less than half the time. The excessive block-billing during the pre-filing stage of the case raises red flags, as such time is not subject to any judicial oversight or scrutiny since it occurred prior to the filing of the lawsuit.

Objector Pentz suggests that, as a sanction for its failure to file detailed contemporaneous time entries like every other Plaintiffs' firm in this case, the Court limit the Paradis firm lodestar to no more than the $457,000 billed by Edelson PC. To do otherwise would reward the Paradis firm's inefficiency, at best, or lodestar padding, at worst. It would also penalize the class for the excessive involvement of law firms in this case. Edelson PC could have achieved this same settlement by itself. The piling on by other firms simply harms the class by creating a higher demand for fees. The Third

Circuit has warned courts about the feeding frenzy of plaintiffs firms all drawn to the same chum pool. "Only work that actually confers a benefit on the class will be compensable; in the ordinary case, simply filing a complaint that is substantially identical to other complaints will not by itself warrant compensation." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 195 (3rd Cir. 2005).

It is not apparent from the record how the class was benefited by the filing of a complaint by the Paradis firm, especially in light of the inordinate amount of time it took them to draft the complaint compared to other firms. After all, the Wick Phillips firm was able to investigate and draft its complaint, all within a total lodestar of $5757. The Paradis firm has yet to identify what benefits were created by the inordinate amount of time block billed to this matter, or why the class would not have been just as well served by the complaints and research performed by the other 7 firms, at much greater efficiency and lower rates.

### III. Professor Henderson's Report Recommends A Fee of $1.6 Million.

If the Paradis firm is limited to the lodestar billed by the Edelson firm, or $457,000, as a sanction for inefficiency, block billing with no detail, and overuse of partners, then the total lodestar in this case is $1,081,000. Multiplying that figure by the 1.6 multiplier that Professor Henderson concludes is the market rate for these low-risk TCPA cases leads to a fee of $1.73 million, or 16.6% of the net settlement fund.

While this is less than the percentage awarded in *Gehrich v. Chase*, it provides an adequate return on Class Counsel's investment of time in this case, especially if the award is compared to Edelson PC's lodestar. A fee of $1.73 million is 3.78 times Edelson's lodestar. Because the Edelson firm's lodestar alone was sufficient to adequately litigate

this case from investigation through settlement, the other firm's lodestars are surplusage unnecessary to achievement of the result in this case. Therefore, it would have been reasonable for a fully informed plaintiff to negotiate a fee of 16% with his counsel, since no plaintiff would deem it necessary to negotiate a fee that provides for redundant, duplicative work performed by other firms. While Edelson PC claims that its clients agreed to a fee of 34% in their retainer agreements, that number is far in excess of the market rate for an individual firm in these cases, since a 34% fee would provide Edelson PC with a lodestar multiplier of 8! That is not the market rate in these low risk TCPA cases, as *Gehrich* recognized.

      Edelson's clients could not possibly have foreseen that the Paradis firm would pile onto this litigation and seek an excessive fee for a padded lodestar, and therefore a 16% market rate fee is more than adequate in this case. It is absurd to assert that Edelson's clients negotiated a fee rate that provides a return of 800% in order to provide a cushion for other law firms that might file copycat actions. The class should not be forced to pay an above market rate fee simply to accommodate the numerous firms in this case filing copycat actions, none of which added anything to the first-filed complaint.

## CONCLUSION

For the foregoing reasons, this Court should award a fee to Class Counsel of no more than 16% of the net Settlement Fund, which is the market rate for this low-risk, short-duration action, and which amply rewards the reasonable lodestar of the firms that performed work in this Illinois action.

Respectfully submitted,
Connie Pentz, by her attorneys,

*/s/ Arthur J. Howe*
Arthur J. Howe
Howe Law LLC
155 N Wacker Dr Ste 4250
Chicago, IL 60606
Phone: (312) 600-8336
howe@howe-llc.com

*/s/ John J Pentz*
John J. Pentz, *pro hac vice*
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
jjpentz3@gmail.com

## CERTIFICATE OF SERVICE

I certify that on May 16, 2016, I electronically filed a true copy of the foregoing document with the Clerk of the Court by using the CM/ECF system and that the foregoing document is being served this day, via transmission of Notices of Electronic Filing generated by CM/ECF, upon all counsel who are registered CM/ECF users.

*/s/ John J Pentz*